# EXHIBIT A

## Plaintiff's Complaint filed in the Third Judicial District Court

Chad Pehrson (Bar No. 12622)
Bryan B. Todd (Bar No. 19099)
**KBA**
50 W. Broadway 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@kba.law
btodd@kba.law

*Attorneys for Plaintiffs*

_____

# IN THE THIRD DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., | **COMPLAINT** |
| Plaintiff, | |
| v. | Case No. _____ |
| BMW FINANCIAL SERVICES NA, LLC; FINANCIAL SERVICES VEHICLE TRUST, | Judge: _____ |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Gauge Automotive, Inc. ("**Gauge**"), by and through its undersigned counsel, complains of Defendants and alleges as follows:

## PARTIES

1. Gauge Automotive, Inc. is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah. Gauge is in the business of buying and selling automobiles, including high-end luxury vehicles. Gauge currently owns and possesses a certain 2023 Rolls-Royce Cullinan motor vehicle, VIN SLATV8C0XPU216487 (the "**Vehicle**").

1

2. Defendant BMW Financial Services NA, LLC ("**BMW FS**") is a Delaware limited liability company authorized to do business in Utah, and it regularly conducts business in Utah by financing and leasing vehicles to Utah consumers. Upon information and belief, BMW FS acts as servicer for Defendant Financial Services Vehicle Trust (the "**Trust**"), a statutory trust which is the titled owner/lessor of vehicles leased through BMW FS's programs. BMW FS and/or the Trust claim an adverse interest in the Vehicle, as described below. BMW FS and/or the Trust also had a direct relationship with an individual associated with what they assert to be fraud in connection with the Vehicle.

3. This Court has subject-matter jurisdiction over this action under Utah Code § 78A-5-102, which grants Utah district courts general jurisdiction in civil matters. The Court also has authority to grant the declaratory and equitable relief sought herein pursuant to Utah Code §§ 78B-6-401 et seq. (Declaratory Judgments Act) and 78B-6-1301 et seq. (Quiet Title Act).

4. This Court has personal jurisdiction over BMW FS because BMW FS regularly conducts business in the State of Utah and has purposefully availed itself of the Utah market. BMW FS finances and leases vehicles in Utah and derives economic benefit from its activities in Utah. Moreover, this action concerns a Utah plaintiff and a vehicle now situated in Utah, and BMW FS has asserted claims to that vehicle and directed conduct toward Utah to enforce those claims. Exercise of jurisdiction over the Defendants is thus consistent with due process and Utah's long-arm statute.

5. Venue is proper in the Third Judicial District (Salt Lake County) under Utah Code § 78B-3-307, because the subject of the action is situated in this county and a substantial part of the events or omissions giving rise to the claim occurred in this county. Gauge's principal place

of business is in Salt Lake County, the Vehicle is or will be located in Salt Lake County, and Defendants' interference with Gauge's rights has caused harm in Salt Lake County.

## FACTUAL BACKGROUND

6.     In or about March 2025, Gauge purchased the 2023 Rolls-Royce Cullinan Vehicle (VIN SLATV8C0XPU216487) from an individual named Steven J. Calderon. Gauge paid full and fair market value for the Vehicle. At the time of purchase, Gauge reviewed the Vehicle's title history and documentation. Mr. Calderon furnished a New York State Certificate of Title for the Vehicle, issued in or about August 2024, which listed Mr. Calderon as the owner and showed no liens or encumbrances on the Vehicle. Relying on this clean title and the absence of any disclosed lien, Gauge purchased the Vehicle in good faith, without notice of any adverse claim. Gauge had no knowledge of any other party's ownership or security interest in the Vehicle, and in fact believed, based on official state title records, that none existed. Gauge promptly took possession of the Vehicle following the purchase.

7.     After Gauge's purchase, BMW FS contacted third parties asserting that BMW FS has an interest in or claim to the Vehicle. Specifically, BMW FS has alleged, in substance, that the Vehicle had been previously financed or leased through BMW FS and that BMW FS's interest was not reflected on the title due to a fraudulent retitling in New York. BMW FS claims that either: (a) BMW FS (through the Trust) is the true owner of the Vehicle as lessor in an unresolved lease, or (b) BMW FS holds a security interest (lien) in the Vehicle as the financer of a purchase, which lien was not properly recorded on the New York title. In either case, BMW FS contends that the New York title obtained in August 2024 was procured by fraud and that BMW FS's rights were not extinguished despite the clean title. Gauge is informed and believes that

prior to the New York title issuance, the Vehicle was subject to a BMW FS lease or loan, but the party in possession of the Vehicle (through fraud or omission) managed to obtain a new title in New York that did not list BMW FS's interest. Gauge was never aware of any such putative circumstances until notification from BMW FS.

8. To the extent BMW FS's claim is based on an alleged security interest (lien) from a prior financing, BMW FS failed to perfect or preserve that interest on the Vehicle's New York title. Under New York's Vehicle and Traffic Law and the Uniform Commercial Code, an out-of-state lienholder's security interest must be reflected on the certificate of title or otherwise re-perfected in New York within a specified period in order to remain effective. The New York Certificate of Title issued in August 2024 for the Vehicle showed no lienholder name, indicating that BMW FS's lien was not carried forward onto the new title. From the date of issuance of the New York title, any previously perfected security interest of BMW FS in another state would remain temporarily perfected for at most four months, absent further action. BMW FS did not file any New York lien notice or take other steps to re-perfect its interest within the four-month grace period after the August 2024 title issuance. Accordingly, by operation of law, any security interest BMW FS may have once had in the Vehicle became unperfected and is deemed never to have been perfected as against a purchaser of the Vehicle for value after that period elapsed. In other words, as of December 2024 (four months post-issuance of the New York title), BMW FS's alleged lien was extinguished or ineffective against innocent purchasers. Gauge's acquisition in March 2025 occurred well after this period, and Gauge acquired the Vehicle free and clear of any unperfected lien. Gauge had no knowledge of any BMW FS lien, and even if BMW FS were to claim an unperfected lien, under the Uniform Commercial Code an

unperfected security interest is subordinate to the rights of a buyer who gives value and takes delivery without knowledge of the interest

9.  Alternatively, to the extent BMW FS contends that it (or the Trust) was the true owner of the Vehicle as a lessor (for example, if the Vehicle was subject to a lease that was never paid off), BMW FS failed to act promptly or reasonably to protect its ownership interest once the Vehicle was wrongfully retitled out of its name. BMW FS and the Trust entrusted the Vehicle to their lessee or customer and allowed that person to have possession and apparent incidents of ownership (such as the vehicle itself and possibly documents) such that the person was able to obtain a new certificate of title in New York. By the time Gauge purchased the Vehicle, approximately seven months had passed since the New York title was issued. Yet BMW FS, despite presumably discovering the fraudulent retitling, did not timely reclaim the Vehicle or alert law enforcement or motor vehicle authorities in a way that would have prevented an innocent purchaser from buying it. BMW FS's inaction and delay enabled the wrongdoer to pass themselves off as the legitimate owner. Gauge, as a bona fide purchaser for value without notice, acquired superior rights in the Vehicle.  Here, any claim by BMW FS that the Vehicle was obtained through fraudulent means by the seller does not defeat Gauge's ownership, because the law protects bona fide purchasers in such circumstances. Moreover, having failed to promptly assert its ownership claim and allowing the fraud to remain undetected for an extended period, BMW FS is equitably estopped from asserting ownership against Gauge now. Between two innocent parties – BMW FS, which inadvertently allowed the Vehicle to enter the stream of commerce under false pretenses, and Gauge, which paid value in good faith – the law and equity favor protecting Gauge's ownership rights.

5

10. BMW FS's Interference and Threats: After Gauge acquired the Vehicle, BMW FS undertook self-help measures that interfered with Gauge's rights. Upon information and belief, BMW FS contacted third parties in an effort to locate and seize the Vehicle, despite Gauge's lawful ownership and possession. For example, BMW FS (directly or through agents) contacted a third-party automotive dealer, Florida Performance Cars, in or about mid-2025, and represented that BMW FS had a claim to the Vehicle. BMW FS demanded or encouraged that this third party surrender the Vehicle to BMW FS or otherwise assist in repossessing it. BMW FS made similar communications to other persons or entities it believed might have access to the Vehicle. These actions were taken without any court order and were based on BMW FS's unilateral claim of right. In doing so, BMW FS sought to induce third parties to interfere with Gauge's possession and use of the Vehicle. BMW FS's conduct created a cloud on Gauge's title and substantial concern for Gauge, as third parties (including dealers or potential buyers) were being told that the Vehicle was subject to a hidden claim. BMW FS's actions have disrupted Gauge's ability to enjoy, utilize, or resell the Vehicle and have caused reputational and business harm to Gauge. Gauge has been forced to initiate this litigation to quiet its title and protect its rights as a result of BMW FS's conduct.

11. Summary of Gauge's Position: In summary, Gauge is an innocent purchaser who obtained the Vehicle free and clear of any BMW FS interest because: (a) any security interest BMW FS once held was lost or extinguished by BMW FS's failure to perfect or re-perfect it in a timely manner, and/or (b) any ownership interest BMW FS had as lessor cannot now be asserted against Gauge due to BMW FS's own lack of diligence and the protection afforded to good faith purchasers. Gauge's ownership is evidenced by a valid Title (the New York certificate of title

naming Gauge's predecessor with no liens, which title is in the process of being updated to reflect Gauge's name or has been submitted to Utah DMV for a Utah title). Gauge therefore seeks relief from this Court to declare and quiet title in its favor, and to stop BMW FS from any further interference with Gauge's rights.

## FIRST CAUSE OF ACTION

### Declaratory Judgment (Rightful Ownership of Vehicle)

12. Gauge re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

13. An actual, present and justiciable controversy has arisen between Gauge and Defendants regarding the ownership of and title to the Vehicle. Gauge contends that it is the sole rightful owner of the Vehicle, free and clear of any interest, lien, or claim of BMW FS or the Trust. Defendants, on the other hand, assert that they have a continuing interest in or right to the Vehicle (either as a secured creditor or as the lessor/owner). These conflicting claims present a concrete dispute appropriate for declaratory relief.

14. Gauge's Rightful Ownership – No Valid Lien: To the extent BMW FS claims a security interest, Gauge seeks a declaration that no valid or enforceable security interest of BMW FS encumbers the Vehicle. Under the Uniform Commercial Code and New York law, BMW FS's failure to timely re-perfect any prior lien on the Vehicle after the issuance of the New York title in August 2024 resulted in the lapse and termination of any such lien as against purchasers for value  As a purchaser for value without notice, Gauge takes the Vehicle free of any unperfected or lapsed security interest. Accordingly, BMW FS has no enforceable lien or security interest on the Vehicle, and any purported lien is extinguished by operation of law.

7

15. Gauge's Rightful Ownership – No Superior Title: To the extent BMW FS or the Trust claims ownership or title by virtue of being the Vehicle's lessor or titled owner prior to the fraudulent retitling, Gauge seeks a declaration that BMW FS/Trust's title or ownership interest is subordinate to – and cut off by – Gauge's ownership. Gauge is a bona fide purchaser for value who acquired the Vehicle in good faith and without notice of any adverse claim. Even if the Vehicle was wrongfully obtained or sold by someone who was not true owner, that person at least had voidable title and thus the power to transfer good title to Gauge, a good faith purchaser.

Furthermore, by allowing its lessee or agent to possess the Vehicle and failing to prevent the fraudulent change of title, BMW FS effectively enabled the transfer of apparent ownership to innocent third parties; BMW FS is now estopped from asserting a superior claim against Gauge. Equity and Utah law do not permit BMW FS to reclaim the Vehicle from an innocent buyer under these circumstances.

16. Declaratory Relief: Pursuant to Utah Code § 78B-6-401 et seq., and Utah Rule of Civil Procedure 57, Gauge is entitled to a declaratory judgment determining the parties' respective rights in the Vehicle. Gauge respectfully requests a declaratory judgment that Gauge is the lawful owner of the 2023 Rolls-Royce Cullinan (VIN SLATV8C0XPU216487), and that Defendants have no right, title, lien, or interest in the Vehicle. Such a declaration will resolve the uncertainty and controversy giving rise to this action and will guide the parties' conduct moving forward.

## SECOND CAUSE OF ACTION

### Quiet Title (Utah Code § 78B-6-1301 et seq.)

17. Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth

herein.

18.     This is an action to quiet title to personal property (the Vehicle) under Utah's Quiet Title statute. Utah law permits an action against another person to determine rights, interests, or claims to or in personal or real property. Gauge asserts that it holds clear title to the Vehicle, whereas Defendants assert an adverse claim. Specifically, BMW FS/Trust claim some interest (either as lienholder or owner) adverse to Gauge's title. This adverse claim has not been reflected on any certificate of title since at least August 2024, yet BMW FS persists in asserting the claim to third parties and potentially to law enforcement.

19.     Gauge's interest in the Vehicle is superior to any interest of Defendants. Gauge acquired title from Mr. Calderon lawfully and for value, in reliance on an official title that showed no liens. Gauge's title is thus prima facie valid and superior to any hidden or unperfected interest BMW FS might claim. By contrast, Defendants' claim is based on a prior transaction that, due to Defendants' own lapses or the fraud of third parties, was not preserved in the public record or against purchasers. As detailed above, any BMW FS security interest was extinguished by law when not re-perfected, and any ownership interest as lessor cannot defeat Gauge's title given the protections for good faith purchasers.

20.     Gauge therefore seeks to quiet title to the Vehicle in its name. Gauge requests that the Court enter judgment quieting title to the 2023 Rolls-Royce Cullinan in Gauge, and declaring that Defendants have no estate, interest, lien, or claim whatsoever in the Vehicle. This includes an order that any purported lien of BMW FS is null and void, and that any claim of ownership by BMW FS or the Trust is invalid as against Gauge. Upon entry of judgment, Gauge's title to the Vehicle should be confirmed against all adverse claims, and Defendants should be forever barred

from asserting any right, title or interest in the Vehicle.

### THIRD CAUSE OF ACTION

### Injunctive Relief (Permanent Injunction)

21. Incorporation of Allegations: Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

22. Defendants' conduct has demonstrated that they are likely to continue attempting self-help repossession or interference with the Vehicle absent court intervention. BMW FS has contacted third parties and possibly law enforcement or repossession agents in an effort to seize or encumber the Vehicle, despite the ongoing dispute over ownership. Such actions pose a significant risk of irreparable harm to Gauge. The Vehicle is a unique chattel (being a high-end Rolls-Royce with particular characteristics and value), and loss of possession cannot be fully compensated by money damages alone. Additionally, wrongful seizure of the Vehicle would harm Gauge's business reputation and customer relationships. Gauge has no adequate remedy at law to prevent these harms, as any attempt by BMW FS to unilaterally repossess the Vehicle could occur suddenly and cause damage that a later money judgment would not undo.

23. Gauge is likely to succeed on the merits of its claims. The facts, as alleged above, show that Gauge is the rightful owner and that BMW FS's contrary claims are without legal merit. Gauge has presented strong legal grounds under the UCC, Utah law, and New York law for its clear title. By contrast, Defendants have no valid perfected lien and no superior ownership right. Thus, Gauge has a high probability of prevailing in establishing its title free of Defendants' claims.

24. The balance of equities strongly favors Gauge. Absent an injunction, Gauge faces the

threat of losing possession of a vehicle it rightfully owns, or being forced into multiple jurisdictional fights if BMW FS tries to grab the car. An injunction merely preserves the status quo – with Gauge retaining possession – until the Court resolves the ownership dispute. BMW FS will not be harmed by refraining from self-help, as it can be made whole by money damages against the appropriate party if it ultimately proves some loss (e.g., against the fraudster who retitled the car) or by the return of the Vehicle if it somehow prevails here. Conversely, Gauge would suffer greatly without an injunction, as noted. The public interest favors injunction as well: Utah has a strong interest in preventing breaches of the peace and protecting property rights through proper judicial process rather than self-help. Granting an injunction prevents a potentially wrongful repossession and upholds the integrity of the legal process in resolving title disputes.

25. Accordingly, Gauge seeks a permanent injunction prohibiting Defendants (and their officers, agents, employees, attorneys, and those in active concert with them) from undertaking any actions to repossess, seize, sell, assign, or otherwise interfere with Gauge's possession, use, or title to the Vehicle during the pendency of this action, and thereafter to make such injunction permanent upon Gauge's prevailing. Gauge specifically requests that Defendants be enjoined from contacting any third parties (such as automobile dealers, auctions, storage facilities, or law enforcement) to falsely claim that Defendants have a right to the Vehicle or to induce or pressure such third parties to turn over the Vehicle. Gauge requests that, upon final judgment, the injunction be made permanent to enjoin any future interference with Gauge's quiet enjoyment and ownership of the Vehicle.

**FOURTH CAUSE OF ACTION:**

**Tortious Interference with Property Rights**

26. Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

27. Gauge has valid possessory and ownership rights in the Vehicle, including the right to exclusive use, enjoyment, and disposition of the Vehicle. Defendants were aware that Gauge claimed ownership and possessed the Vehicle (or at least that some party other than BMW FS was in possession under a claim of title), especially once Gauge purchased it and when BMW FS was informed of Gauge's purchase and the clean title issuance. BMW FS knew that Gauge and/or its agents or partners (such as dealers) were asserting rights to the Vehicle inconsistent with BMW FS's alleged interest.

28. Despite this knowledge, Defendants intentionally and improperly interfered with Gauge's property rights. BMW FS engaged in a campaign of contacting third parties, including but not limited to Florida Performance Cars (a dealership/broker that had involvement with the Vehicle), and possibly auction houses or other dealers, falsely asserting that BMW FS had the right to take or demand the Vehicle. BMW FS's representatives instructed or pressured these third parties to relinquish the Vehicle or to assist BMW FS in recovering it from Gauge's possession. This conduct was designed to disrupt Gauge's ownership and possession, by turning third parties against Gauge or inducing third parties to breach any arrangements with Gauge (for example, a consignment or sales arrangement) out of fear that the Vehicle was stolen or encumbered.

29. Defendants' interference was wrongful and without justification. BMW FS had no

12

legal right to possession at the time – no court order, no perfected lien, and no consent from Gauge. Any belief by BMW FS in its claim does not privilege the act of circumventing the judicial process and spreading false or misleading information about Gauge's title. In fact, BMW FS's claim to the Vehicle was legally untenable given the lapse of its lien and the transfer of ownership to a bona fide purchaser. Thus, BMW FS had no proper basis to involve third parties or to demand the Vehicle outside of a court adjudication. The manner of interference – contacting unrelated third parties and portraying the Vehicle as subject to BMW FS's ownership – was inherently damaging and done in bad faith, as it ignored Gauge's documented title rights.

30. As a direct and proximate result of Defendants' intentional interference, Gauge has suffered and continues to suffer harm. BMW FS's actions have clouded Gauge's title and made it more difficult for Gauge to enjoy the benefits of ownership. For instance, BMW FS's communications to Florida Performance Cars and others caused confusion and concern about the Vehicle's title, impeding Gauge's ability to market or resell the Vehicle in the ordinary course of business. Gauge has had to expend time and resources to address the allegations and to secure the Vehicle. Furthermore, Gauge's business relationships and reputation have been damaged by the implication that it dealt in a vehicle with a putatively encumbered title. Gauge has also been forced to incur legal expenses and other costs to protect its rights. The interference by BMW FS was willful and malicious, or at minimum in reckless disregard of Gauge's rights, entitling Gauge to recover all actual damages proximately caused by such conduct, in an amount to be proven at trial. Gauge also seeks any appropriate punitive or exemplary damages to deter such conduct, given the egregious nature of attempting to wrongfully dispossess an innocent owner of property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gauge Automotive, Inc. respectfully prays for judgment in its favor and against Defendants, granting the following relief:

1. A declaration that Gauge Automotive, Inc. is the lawful owner of the 2023 Rolls-Royce Cullinan, VIN SLATV8C0XPU216487, free and clear of any lien, ownership interest, or claim of the Defendants (whether BMW Financial Services NA, LLC, Financial Services Vehicle Trust, or any related entity), and that Defendants have no valid interest in or right to the Vehicle.

2. An order quieting title to the Vehicle in Gauge's name pursuant to Utah Code § 78B-6-1301, et seq., and barring Defendants and all persons acting in concert with them or claiming under them from asserting any adverse claim to the Vehicle. The Court's quiet title decree should confirm Gauge's exclusive title and ownership and direct that any Utah state title (or other state's title) be issued or updated to reflect Gauge's interest with no liens or encumbrances of Defendants.

3. A permanent injunction restraining Defendants, their agents, employees, officers, and all persons in active concert or participation with them from: (a) attempting to repossess or seize the Vehicle from Gauge's possession; (b) contacting or persuading any third party to surrender the Vehicle or to assert control over it on Defendants' behalf; (c) otherwise interfering with Gauge's quiet enjoyment, use, or disposition of the Vehicle. This injunctive relief to remain in effect during the pendency of the action (preliminary injunction), and to be made permanent upon entry of judgment in Gauge's favor.

4. An award of compensatory damages against Defendants for the tortious

interference with Gauge's possessory and ownership rights, in an amount to be determined at trial, including but not limited to losses from delayed or thwarted sales, loss of use of the Vehicle, harm to business reputation, and costs incurred in securing the Vehicle and mitigating Defendants' interference. In addition, Gauge seeks an award of punitive damages in an amount sufficient to punish Defendants and deter similar conduct, due to the willful and malicious nature of Defendants' interference.

5. An award of Gauge's costs of court and such other and further relief as the Court deems just and equitable in the circumstances.

DATED this 6th day of August, 2025.

Respectfully submitted,

**KBA**

/s/Chad S. Pehrson
Chad S. Pehrson
Bryan B. Todd

*Attorneys for Plaintiff*