William S. Helfand, #16686
Emily L. Rutter, #20000
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121-2319
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Emily.Rutter@lewisbrisbois.com

*Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | **BMW FINANCIAL SERVICES NA, LLC'S and FINANCIAL SERVICES VEHICLE TRUST'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE** <br><br> Civil No. 2:25-cv-00792-AMA <br><br> Judge Ann Marie McIff Allen |

Defendants BMW Financial Services NA, LLC ("BMW") and Financial Services Vehicle Trust ("FSVT"), moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(3) for improper venue, or in the alternative, to transfer venue to the U.S. District Court for the Southern District of Florida under 28 U.S.C. § 1404(a).

**BACKGROUND FACTS**

This is not the first suit related to the subject Vehicle, a 2023 Rolls Royce Black Badge Cullinan, bearing vehicle identification number SLATV8C0XPU216487 (the "Vehicle"); indeed,

163458900.5

it is the *third* recent lawsuit, the first lawsuit was filed in Florida (the "FPC Lawsuit")[1] and the most recent also being filed in Florida (the "BMW Lawsuit")[2]. A review of the history of the Vehicle and the resulting lawsuits related to the Vehicle in question demonstrates why Plaintiff's forum shopping is inappropriate, under both Federal Rule of Civil Procedure 12(b)(3) and certainly under 28 U.S.C. § 1404(a) and why the Court should either dismiss or transfer the case.

**Factual Background**

1.      The story of this vehicle began December 28, 2022, when a dealership in Miami, Florida (Braman Motors, Inc.) entered into a Motor Vehicle Lease Agreement (Closed End) (the "Lease") with Blackfire Transport LLC (a Florida company), whereby Blackfire Transport LLC leased the Vehicle. *See* Exhibit A. The Lease is clear that Florida law applies to the lease of the vehicle. *Id.* Braman Motors, Inc. immediately assigned the Lease to Rolls-Royce Motor Cars Financial Services, a division of BMW, which then assigned the Lease to FSVT. *Id.* FSVT is the title owner of the vehicle for the Florida Lease. *See* Exhibits B-C; Exhibit 2 at ¶ 6, Declaration of Amy Nolan.

---

[1] JR Automotive, Inc. d/b/a Florida Performance Cars, LLC ("FPC"), filed a lawsuit against Gauge Automotive, Inc. ("Gauge"), on June 23, 2025, styled JR AUTOMOTIVE, INC. d/b/a FLORIDA PERFORMANCE CARS, a Florida limited liability company, v. GAUGE AUTOMOTIVE, INC., a Utah corporation, Case no. 50-2025-CA-006161-XXXA-MB, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

[2] Defendants in this case filed a lawsuit on August 8, 2025, styled FINANCIAL SERVICES VEHICLE TRUST, by and through its servicer, ROLLS-ROYCE MOTOR CARS FINANCIAL SERVICES, NA, LLC, a division of BMW FINANCIAL SERVICES NA, LLC, v. JR AUTO COLLECTION, LLC d/b/a FLORIDA PERFORMANCE CARS, GAUGE AUTOMOTIVE, INC., BLACKFIRE TRANSPORT, LLC, ALFRED DAVIS, and FLORIDA HIGHWAY SAFETY AND MOTOR VEHICLES, Case No. 50-2025-CA-008048-xxxA-MB, also in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

   Exhibit 1, attached hereto, is the entire BMW Lawsuit complaint, with exhibits. In an effort to streamline exhibits and limit duplication, the referenced letter exhibits refer to the appropriate lettered exhibits to the BMW Lawsuit.

2. Recently, BMW discovered that fraudulent title activities occurred thereafter, resulting in Gauge believing it owned title to the vehicle in early 2025.

3. On or about March 4, 2025, JR Automotive, Inc. d/b/a Florida Performance Cars, LLC, a Florida limited liability company, purchased the Vehicle from Gauge for $314,000. *See* Exhibit F, and Exhibit I at ¶ 21. As alleged in the FPC Lawsuit, Gauge regularly solicited Florida Transactions with FPC, including selling/delivering as many as eleven (11) vehicle sales into Florida between November 2024 and June 2025 and advertising as many as fifty (50) vehicles into Florida since mid-2024. *See* Exhibit I at ¶¶ 12-13.

4. Gauge delivered the Vehicle to FPC in Palm Beach County, Florida. *Id.* at ¶ 22. Shortly thereafter, Gauge transferred and delivered to FPC a certificate of title issued by the New York State Department of Motor Vehicles (the "NY Title") under fraudulent circumstances that showed no lienholder and made no disclosure of any title defect or outstanding encumbrance. *See* ExhibitºE, the NY Title.

5. BMW and FSVT discovered in 2025 that the Vehicle's title had been fraudulently re-titled, removing FSVT as the singular owner from the title chain, despite FSVT being owed hundreds of thousands of dollars and losing the ability to repossess its own collateral. *See* Exhibit H; Exhibit 2 at ¶¶ 8-10. BMW/FSVT's investigation identified the Vehicle as being in FPC's possession.

6. Shortly thereafter, BMW, acting as servicer for FSVT—Defendants here—gave FPC formal notice that: (1) FSVT remains the lawful and record titleholder of the Vehicle, and (2) the Vehicle had been unlawfully and fraudulently retitled, such that FSVT's singular ownership was removed from the chain of title. *See* Exhibit C, FSVT's valid electronic title; Exhibit 2 at ¶ 11.

7. FPC conducted its own investigation and confirmed the fraudulent re-tiling scheme. Specifically, FPC's investigation revealed that, in December 2022, Braman Motors leased the Vehicle as a new car to Blackfire Transport LLC, with FSVT as owner/lessor and lienholder. *See* Exhibits A-B. However, sometime in or around August 2024, an individual named Steven J. Calderon presented to the New York State Department of Motor Vehicles a forged and fraudulent Florida Certificate of Title for the Vehicle, allegedly issued on January 20, 2023 (the same date the valid Florida Title was issued), and listing a Manuel Calderon as the registered owner (the "Fraud Title"). *See* Exhibit D.

8. Upon presentation of the Fraud Title to the New York State Department of Motor Vehicles, that entity issued the above-mentioned New York State Certificate of Title to Steven J. Calderon under the false veneer of being free and clear of any liens or encumbrances. *See* Exhibit E. Steven J. Calderon then sold the Vehicle to Gauge, transferring the NY Title to Gauge. *Id.* In turn Gauge transferred the fraudulent NY Title to FPC. *Id.*

9. The title and transaction history from the Florida Department of Highway Safety and Motor Vehicles confirms that no Florida Certificate of Title was ever issued to Manuel Calderon. In addition, an investigator from the Florida Department of Highway Safety and Motor Vehicles, Jessica Jimenez, confirmed the illegitimate nature of the Fraud Title, noting "Definitely a fraudulent Florida title . . . . They didn't even try to make it look legit." *See* Exhibit H, email from Florida Master Trooper/Investigator Jessica Jimenez; Exhibit 2 at ¶ 12. As a result, the Fraud Title was invalid and void as a matter of law.

10. While it is presently unclear the extent to which Gauge—Plaintiff here—was aware of the secret title-fraud activities, no one can dispute that Gauge knew of the title-fraud before July 2025,

because FPC notified Gauge of the fraud via the FPC Lawsuit in Florida. *See* Exhibit I. Stated simply, prior to Gauge taking possession of the Vehicle and filing this lawsuit, Gauge was fully informed that (1) the NY Title was fake and invalid as a matter of law; (2) that FSVT is the rightful owner of the Vehicle with FSVT/BMW holding valid title over the Vehicle; and (3) that FPC considered Gauge to have engaged in misconduct by selling the Vehicle to FPC. *Id.* at ¶¶ 34-40.

11. Regardless, it is clear that the critical activities relating to the Vehicle and the title fraud occurred in Florida: the original title was issued in Florida (Exhibit B); the Lease was entered into in Florida and subject to Florida law (Exhibit A); a fake Florida title was used to generate an invalid New York title (Exhibits D and E); the Vehicle was located in Florida when BMW/FSVT discovered the title fraud and when BMW/FSVT made demand to FPC for return of the Vehicle (Exhibit J, at ¶°6); the first-filed FPC Lawsuit was filed in Florida (Exhibit I); and the law enforcement investigation of the title fraud was performed by Florida law enforcement (Exhibit H).

**Procedural Background**

12. Plaintiff here was the Defendant in the first-filed FPC Lawsuit involving the same Vehicle and the same parties, in which Defendants here intervened. *See* Exhibit 1 at ¶¶30-34; Exhibits I-K.[3] FPC voluntarily dismissed the FPC Lawsuit on July 21, 2025, prior to the Florida court ruling on FSVT's and BMW's motion to intervene, and after Gauge agreed to "'unwind' the vehicle sale and to indemnify FPC against any future claims." *See* Exhibit 1 at ¶36; Exhibit L. Of course, the agreement between FPC and Gauge purposefully thwarted FSVT's and BMW's intervention to assert FSVT's and BMW's rights as the rightful owner of the Vehicle.

---

[3] This motion to intervene for replevin was filed the same day that FPC voluntarily dismissed its lawsuit.

163458900.5

13. As part of Plaintiff's plan, rather than continue the existing Florida litigation or awaiting BMW/FSVT's impending lawsuit against FPC and Gauge in Florida, Plaintiff rushed to file this suit in Utah state court, despite the fact *no activity* involving the Vehicle has occurred in Utah and none of the Defendants are residents of Utah.

14. Indeed, just as Gauge anticipated, FSVT and BMW filed the BMW Lawsuit on August 8, 2025, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. *See* Exhibit 1. The BMW Lawsuit is pending and FSVT's and BMW's allegations and claims are similar to those presented in this action, including claims for declaratory relief, replevin, conversion, unjust enrichment, breach of contract, and trespass of chattels in connection with the same subject Vehicle. *Id.* In short, the BMW Lawsuit in Florida will resolve the ultimate questions underlying both the instant lawsuit and the BMW Lawsuit—whether title fraud occurred relative to this Florida titled Vehicle, how it occurred, whether that Florida title remains the only valid title to the Vehicle, and whether BMW/FSVT are entitled to ownership and immediate possession of this valuable Vehicle.

15. Tellingly, Plaintiff fails to allege *facts* necessary to establish venue for this matter. Plaintiff's complaint concedes by omission that venue is not proper under 28 U.S.C. § 1391(b)(1) or 28 U.S.C. § 1391(b)(3). *See* Dkt. 2-1. Additionally, Plaintiff's complaint only conclusorily asserts that venue is proper under 28 U.S.C. § 1391(b)(2), but does not allege facts to show that "a substantial part of the events or omissions giving rise to the claim occurred in this [district]," only that the subject "vehicle is or *will be*[4] located in Salt Lake County." *Id.* at ¶5 (*emphasis added*).

---

[4] Plaintiff's statement of where the Vehicle "will be" at some time in the future is at least a tacit admission Plaintiff was uncertain as to the location of the Vehicle at the time it filed suit. Since "this court [] follow[s] those courts holding that venue must be established based on the facts

163458900.5

Plaintiff's complaint is devoid of facts evidencing that "a substantial part of the events or omissions giving rise to the claim" *actually* occurred Utah. *See* Dkt. 2-1. In fact, none did. All relevant events giving rise to these lawsuits, aside from Plaintiff's corporate presence and any conduct by Plaintiff in Utah, took place in Florida. *See* Exhibit 1; Exhibit 2 at ¶ 13.

16.  Defendants do not reside in Utah and no events giving rise to Plaintiff's claims against Defendants occurred in Utah. *See* Dkt. 2; Exhibit 2 at ¶ 5; Exhibit 3 at ¶¶5-6, Declaration of Steven Forry. The initial sale and titling of the subject vehicle took place in Florida, establishing Defendant FSVT as the owner and lienholder with a valid, perfected ownership recorded on the Vehicle's title. *See* Exhibits A-C; Exhibit 2 at ¶¶ 6-7. The Lease is expressly subject to Florida law. *See* Exhibit A. The fraudulent retitling, omitting Defendant FSVT as the singular owner of the Vehicle appears to have happened in Florida. *See* Exhibit D; Exhibit 2 at ¶10. Law enforcement investigated the fraud in Florida. *See* Exhibit H; Exhibit 2 at ¶ 12. The Vehicle was located in Florida when (1) it was originally leased (Exhibit A), (2) when BMW/FSVT discovered the title fraud (Exhibit J, at ¶°6), (3) when BMW/FSVT made demand upon FPC for return of the Vehicle (*id.*), (4) when FPC filed the FPC Lawsuit against Gauge (Exhibit I), and (5) when BMW/FSVT moved to intervene in the FPC Lawsuit pursuant to FPC's promise that it would not sell the Vehicle (Exhibits J-K). Indeed, the only relevant event that happened in *Utah* is that Utah is where Gauge was sitting when it was informed that it did not own record title to the Florida Vehicle, before

---

existing at the time the case is filed," *C.R. Bard, Inc. v. AngioDynamics, Inc.*, No. 212CV00035RJSDAO, 2020 WL 6710423, at *8 (D. Utah Nov. 16, 2020) (Shelby, C.J.), the fact the Vehicle may have been somewhere other than Utah when Plaintiff filed suit, precludes venue based on where "a substantial part of property that is the subject of the action is situated" under 28°U.S.C. § 1391(b)(2).

163458900.5

7

rewinding FPC's purchase, in essence buying back the Vehicle, and retaking possession of the Vehicle from FPC.

## ARGUMENT AND AUTHORITY

I. **Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(3).**

    A. **Standard of Review.**

17. Under Federal Rule of Civil Procedure 12(b)(3), a court may properly dismiss a complaint based on improper venue. In ruling on the motion, the court may rely on facts and documents outside the complaint. *See SME Steel Contractors, Inc. v. Dowco Consultants, Ltd.*, No. 2:22-CV-00802-TC, 2023 WL 2717273, at *1 (D. Utah Mar. 30, 2023). Plaintiff bears the burden to make a *prima facie* showing of proper venue in light of Defendants' motion to dismiss under Rule 12(b)(3). *Id*; *Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No. 2:21-CV-00698-DBB-JCB, 2022 WL 3705483, at *1 (D. Utah Aug. 26, 2022). The question of whether a litigant has brought an action in the proper venue is a question of law. *See Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir. 2006).

18. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). That is whether the action has been brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." 28 U.S.C. § 1391(b). Here, Plaintiff does not allege § 1391(b)(1) (Defendants' residence) or § 1391(b)(3) (no other district) of the statute provide a basis for venue. Therefore, Plaintiff relies solely upon the substantiality test under § 1391(b)(2) and alleges, but certainly the facts do not support, that "a substantial part of the events" giving rise to the claim occurred in Utah.

### B. Venue does not lie under § 1391(b).

19. "[T]he purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979). "[C]ongress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 185. Rather, "venue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff. *Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999) (cleaned up). None of Defendants' relevant activities support venue in Utah.

20. First, Defendants do not reside in, and at all times relevant to this lawsuit, did not reside in Utah. Rather, Defendants are residents of Delaware and New Jersey. *See* Dkt. 2; *see also* Exhibit 3 at ¶¶ 5-6. BMW is a Delaware limited liability company, with its sole member a citizen of Delaware and New Jersey. *Id.* FSVT is a Delaware statutory trust, with its beneficiary being an Indiana limited partnership with two partners being citizens of Delaware and New Jersey. *Id.* Plaintiff's complaint concedes by its omission of any factual allegation of venue based on §º1392(b)(1) that § 1392(b)(1) does not apply. Simply put, venue is not proper in Utah under §º1391(b)(1).

21. Second, despite Plaintiff's purely conclusory statements devoid of facts, no events involving Defendants, let alone a substantial part of the events or omissions giving rise to Plaintiffs claims against Defendants, occurred in Utah. *See* Exhibit 2 at ¶ 5. When a plaintiff relies upon the substantiality prong of the venue statute, courts apply a two-part inquiry. *Alfwear, Inc.*, 2022 WL 3705483 *21 (D. Utah 2022). Initially, a court should identify the nature of the claims and the acts or omissions the plaintiff alleges giving rise to those claims. *Id*; *Emplrs Mut. Cas. Co v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010). Next, "the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Id.* The requirement of "substantial events material to those claims occurred in the forum district," is satisfied only "upon a showing of acts and omissions that have a close nexus to the alleged claims." *Id.* at 1166. (cleaned up). While the *Bartile* court declined to follow other circuit courts that have held it is the locus of the conduct of the defendant, and not that of the plaintiff; here, other than Plaintiff's conclusory statement, the indisputable facts disprove the propriety of venue in this forum under §°1391(b).

22. Plaintiff bases its claims upon the assertion that Defendants have been and are allegedly interfering with Plaintiff's possession of the Vehicle *in Florida*, not Utah. Plaintiff does not allege beyond its corporate presence and its alleged possession of the subject vehicle in Utah *prior to its sale* to Florida Performance Cars, any facts to demonstrate *any* event, let alone substantial events in Utah giving rise to any claim in this case. Rather, the facts show that Plaintiff learned of the title fraud while the Vehicle was located in Florida after Plaintiff sold the Vehicle to FPC. Plaintiff was fully informed of the title fraud (via the FPC Lawsuit) at the time that Plaintiff sought to re-

take possession, after unwinding FPC purchase, of the Vehicle following BMW/FSVT move to intervene in the Florida FPC Lawsuit. Then, Plaintiff rushed to file suit in Utah.

23. Defendants have not conducted *any* business with Plaintiff in Utah relating to the Vehicle. *See* Exhibit 2 at ¶ 5. Nor were any of Defendants' actions in relation to the Vehicle conducted in Utah, other than efforts to determine the location of the Vehicle. *Id.* Simply put, Defendants have no connection with Utah as it relates to the events giving rise to Plaintiff's claims, which occurred in Florida. *Id.* Because there is no nexus between Utah jurisdiction and any party's acts, let alone Defendants' acts to protect their property in Florida, venue is not proper under § 1391(b)(2).

24. Lastly, Plaintiff concedes § 1391(b)(3) of the statute does not apply here. To the contrary, because a substantial part of the underlying events giving rise to Plaintiff's claims—indeed everything other than Plaintiff's corporate presence in Utah—occurred in Florida, where both Plaintiff and Defendants conducted all business related to the Vehicle, including Plaintiff's sale and delivery of the Vehicle to FPC in Florida, there *is* a proper district in which Plaintiff may bring suit – the United States District Court for the Southern District of Florida.

25. As the Supreme Court has made clear because this case clearly does not fall within one of the categories of cases listed in § 1391(b), "the case must be dismissed or transferred under §°1406(a)." *Atl. Marine Constr. Co.,* 571 U.S. at 56. The Court should dismiss Plaintiff's complaint, after which Plaintiff may address its claims in the pending Florida BMW Lawsuit, where Plaintiff will have full opportunity to litigate the same issues with all parties who have an interest in the Vehicle—in the venue into which Plaintiff reached to sell the Vehicle to FPC, to negotiate some sort of indemnity and dismissal of the FPC Lawsuit, and to re-take possession of the Vehicle *from* Florida.

26.     Alternatively, as explained below, if the Court is not inclined to dismiss this action, the Court should transfer this suit to the United States District Court for the Southern District of Florida under § 1404(a).

## II.     Transfer of Venue is Appropriate Under 28 U.S.C. § 1404(a).

27.     Even if the Court does not find dismissal or transfer mandatory for lack of proper venue, the Court should exercise its discretion to transfer venue of this matter to the United States District Court for the Southern District of Florida under 28 U.S.C. § 1404(a) which allows "'transfer to a more convenient forum, even though venue is proper' in the transferor court." *R. v. United Health Insurance Co.*, No. 2:24-CV-00033-HCN-CMR, 2025 WL 833041, at *1 (D. Utah Mar. 17, 2025). Under § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Stated another way, "[t]o satisfy section 1404(a), 'the moving party must clearly establish that: (1) the transferee court is a proper forum in which the action could have been brought originally; and (2) the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice.'" *Id.*; *RES-NV, LLC v. Rosenberg*, No. 2:13-cv-00115-DAK, 2013 WL 3548697, at *2 (D. Utah July 11, 2013).

28.     Section 1404(a) is "a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co.*, 571 U.S. at 60. "Though § 1404(a) [] derive[s] from the common law doctrine of forum non conveniens, the moving party under § 1404(a) has a lesser burden of showing inconvenience than is required under the common law doctrine." *Habitat Wallpaper & Blinds v. K.T. Scott Ltd.*, 807 F.Supp. 470, 474 (N.D. Ill. 1992) (citation omitted). "Moreover, because § 1404(a) does not specify the weight

to be accorded each factor, it is left to the discretion of the court." *Id.* (citation omitted). "Forum non conveniens is a discretionary common law doctrine under which "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *DIRTT Environmental Solutions, Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 552 (10th Cir. 2023); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). "'At bottom, the doctrine of forum non conveniens is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Id.*; *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)). "Those 'conditions' are 'central[ly] focus[ed]' on the convenience of the forum as compared to foreign alternatives." *Id.*; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248-249 (1981)).

29. Courts have long recognized the universal policy that "[l]itigation of related claims in the same tribunal is favored in order to avoid duplicitous litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants , and inconsistent results." *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp 1308, 1310 (D. Nev. 1982). "Accordingly, dismissal under a forum non conveniens theory 'will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice.'" *DIRTT Environmental*, 65 F.4th at 552; *Piper Aircraft*, 454 U.S. at 249.

30. Here, it is beyond reasonable dispute that Florida provides an adequate forum to hear this matter. Indeed, before making a deal with FPC, Gauge already was a defendant in the FPC Lawsuit over the very issues presented in this case. *See* Exhibit I. To be sure, Gauge could have continued to defend the FPC Lawsuit, in which Defendants here already had sought intervention to address the

very same issues presented in this case. Therefore, Gauge certainly could have brought this action in Florida because all the evidence pertaining to the Vehicle, the initial sale, and titling of the Vehicle took place in Florida, establishing FSVT as the singular owner on title for the Vehicle. *See* Exhibits A-C. The fraudulent retitling, omitting Defendant FSVT as the valid owner, appears to have originated in Florida, then transferred to New York, and then attempted to transfer back to Florida with FPC's purchase and possession of the Vehicle, not Utah. *See* Exhibits D-E; Exhibit 2 at ¶¶°10-13. All relevant witnesses except those employed by Gauge to establish the true title-owner of the Vehicle are located *outside* of Utah—witnesses to the original Lease, to the original title application and issuance, to the title fraud investigations, to the discovery of the title fraud, to the demands upon FPC, to the procedural effort to intervene in the FPC Lawsuit—and (other than Defendants' employees and possibly the Calderon witness(es)) almost uniformly within the State of Florida. *See* Exhibit 1 at ¶°28; Exhibit H; Exhibit 2. Additionally, FPC, the company which purchased the subject vehicle from Plaintiff, and who filed a Florida lawsuit against Plaintiff is located in Florida. *Id.* at ¶ 30; Exhibit I. Finally, the Florida Action involving *all* relevant parties, not just Plaintiff and Defendants to this action, is currently pending in the Florida judicial system. *Id.*

31. Second, Utah is an inconvenient forum to all except Plaintiff, and in the interest of justice the Court should transfer this matter to the Southern District of Florida. "When evaluating the convenience of a forum, the court's analysis is informed by, but not limited to, consideration of the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial;

       difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical."

*R.*, 2025 WL 833041, at *2 (D. Utah Mar. 17, 2025); *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). "The convenience of witnesses is the most important factor in deciding a motion [to transfer] under § 1404(a)." *Bartile Roofs, Inc.*, 618 F.3d at 1169. However, "[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

32.    Other than Plaintiff, the relevant witnesses, documentation, and "other sources of proof," are primarily located in Florida. *See* Exhibit 2. Defendants are already engaged in Florida investigations and litigation relating to the Vehicle. *See* Exhibit 1. It stands to be more economical for Plaintiff and Defendants to travel to Florida, than it would be to have all other witnesses travel to Utah from Florida. Additionally, with the pending Florida BMW Lawsuit taking place alongside this Utah Action, these sister-actions will undoubtedly result in duplicative discovery efforts and costs. Witnesses will have to be deposed twice and adjudication of a claim in one matter is likely to affect the adjudication of claims in the other matter; thereby essentially bottle-necking what could otherwise be an expeditious trial process. Thus, transferring this action to Florida is not only convenient to the parties, but is in the interest of justice to allow the parties to streamline the life-cycle of the two actions for better economy.

## **CONCLUSION**

       The ultimate question in the instant action is the same question that was posed in the previously-filed Florida FPC Lawsuit and is also posed in the pending Florida BMW Lawsuit, namely, who has valid title ownership of the Vehicle. That question should be resolved in the

163458900.5

jurisdiction where this dispute originated, where the facts and evidence are reposed, and pursuant to the law set forth in the Lease—Florida. For the foregoing reasons, the Court should dismiss this case under Rules 12(b)(3) or transfer to the United States District Court for the Southern District of Florida.

DATED: September 30, 2025                LEWIS BRISBOIS BISGAARD & SMITH LLP

                                         By:  */s/ William S. Helfand*
                                              William S. Helfand
                                              Emily L. Rutter
                                              *Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September, 2025, I caused a true and correct copy of the foregoing **BMW FINANCIAL SERVICES NA, LLC'S and FINANCIAL SERVICES VEHICLE TRUST'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE** to be electronically filed through the Court's CM/ECF system, which will send notification of such filing to the following:

Chad Pehrson
KBA
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
cpehrson@kba.law
*Attorneys for Plaintiff*

                                              */s/ William S. Helfand*

163458900.5