William S. Helfand, #16686
Emily L. Rutter, #20000
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121-2319
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Emily.Rutter@lewisbrisbois.com

*Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | **COUNTERCLAIM** <br><br> Civil No. 2:25-cv-00792-AMA-JCB <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Jared C. Bennett |
| BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST, <br><br> Counterclaimant, <br><br> v. <br><br> GAUGE AUTOMOTIVE, INC., <br><br> Counter-Defendant. | |

164682929.2

Counterclaimants BMW Financial Services NA, LLC and Financial Services Vehicle Trust, by and through their undersigned counsel, files this Counterclaim and complains against Counter-Defendant Gauge Automotive, Inc. and alleges as follows:

## FACTUAL ALLEGATIONS

1. The story of this vehicle began December 28, 2022, when a dealership in Miami, Florida (Braman Motors, Inc.) entered into a Motor Vehicle Lease Agreement (Closed End) (the "Lease") with Blackfire Transport LLC (a Florida company), whereby Blackfire Transport LLC leased the Vehicle.[1] The Lease is clear that Florida law applies to the lease of the vehicle.[2] Braman Motors, Inc. immediately assigned the Lease to Rolls-Royce Motor Cars Financial Services, a division of BMW, which then assigned the Lease to FSVT.[3] FSVT is the title owner of the vehicle for the Florida Lease.[4]

2. On or about April 2025, BMW discovered that fraudulent title activities occurred thereafter, resulting in Gauge believing it owned title to the vehicle in early 2025.

3. On or about March 4, 2025, JR Automotive, Inc. d/b/a Florida Performance Cars, LLC, a Florida limited liability company, purchased the Vehicle from Gauge for $314,000.[5] As alleged in the FPC Lawsuit, Gauge regularly solicited Florida Transactions with FPC, including

---

[1] *See* Dkt. 11-1 at PageID.82.

[2] *Id.*

[3] *Id.*

[4] *See Id.* at PageID.89-90; Dkt. 11-2 at PageID.187 at ¶ 6.

[5] *See* Dkt 11-1 at PageID 100; PageID 114 at ¶ 21.

164682929.2

2

selling/delivering as many as eleven (11) vehicle sales into Florida between November 2024 and June 2025 and advertising as many as fifty (50) vehicles into Florida since mid-2024.[6]

4. Gauge delivered the Vehicle to FPC in Palm Beach County, Florida.[7] Shortly thereafter, Gauge transferred and delivered to FPC a certificate of title issued by the New York State Department of Motor Vehicles (the "NY Title") under fraudulent circumstances that showed no lienholder and made no disclosure of any title defect or outstanding encumbrance.[8]

5. BMW and FSVT discovered in 2025 that the Vehicle's title had been fraudulently re-titled, removing FSVT as the singular owner from the title chain, despite FSVT being owed hundreds of thousands of dollars and losing the ability to repossess its own collateral.[9] BMW/FSVT's investigation identified the Vehicle as being in FPC's possession.

6. Shortly thereafter, BMW, acting as servicer for FSVT—Counterclaimants here—gave FPC formal notice that: (1) FSVT remains the lawful and record titleholder of the Vehicle, and (2) the Vehicle had been unlawfully and fraudulently retitled, such that FSVT's singular ownership was removed from the chain of title.[10]

7. FPC conducted its own investigation and confirmed the fraudulent re-tiling scheme. Specifically, FPC's investigation revealed that, in December 2022, Braman Motors leased the Vehicle as a new car to Blackfire Transport LLC, with FSVT as owner/lessor and lienholder.[11]

---

[6] *Id.* at PageID 113 at ¶¶ 12-13.

[7] *Id.* at PageID 114 at ¶ 22.

[8] *Id.* at PageID 98.

[9] *Id.* at PageID 109; *see also* Dkt. 11-2 at PageID 187-188 at ¶¶ 8-10.

[10] *See* Dkt. 11-1 at PageID 93; *see also* Dkt. 11-2 at PageID 188 at ¶ 11.

[11] *See* Dkt. 11-1 at PageID 81-91.

164682929.2

3

However, sometime in or around August 2024, an individual named Steven J. Calderon presented to the New York State Department of Motor Vehicles a forged and fraudulent Florida Certificate of Title for the Vehicle, allegedly issued on January 20, 2023 (the same date the valid Florida Title was issued), and listing a Manuel Calderon as the registered owner (the "Fraud Title").[12]

8. Upon presentation of the Fraud Title to the New York State Department of Motor Vehicles, that entity issued the above-mentioned New York State Certificate of Title to Steven J. Calderon under the false veneer of being free and clear of any liens or encumbrances.[13] Steven J. Calderon then sold the Vehicle to Gauge, transferring the NY Title to Gauge.[14] In turn Gauge transferred the fraudulent NY Title to FPC.[15]

9. On October 3, 2025, Plaintiff's counsel informed this Court that Gauge purchased the Vehicle from Mr. Calderon for $310,000 and sold it to FPC for $314,000—only a $4,000 profit on such a unique and valuable vehicle.

10. The title and transaction history from the Florida Department of Highway Safety and Motor Vehicles confirms that no Florida Certificate of Title was ever issued to Manuel Calderon. In addition, an investigator from the Florida Department of Highway Safety and Motor Vehicles, Jessica Jimenez, confirmed the illegitimate nature of the Fraud Title, noting "Definitely a fraudulent Florida title . . . . They didn't even try to make it look legit."[16] As a result, the Fraud Title was invalid and void as a matter of law.

---

[12] *Id.* at PageID 95-96.

[13] *Id.* at PageID 98-99.

[14] *Id.*

[15] *Id.*

[16] *Id.* at PageID 109; *see also* Dkt. 11-2 at PageID 188 at ¶ 12.

164682929.2

11. While it is presently unclear the extent to which Gauge—Counter-Defendant here—was aware of the secret title-fraud activities, no one can dispute that Gauge knew of the title-fraud before July 2025, because FPC notified Gauge of the fraud via the FPC Lawsuit in Florida.[17] Stated simply, prior to Gauge taking possession of the Vehicle and filing this lawsuit, Gauge was fully informed that (1) the NY Title was fake and invalid as a matter of law; (2) that FSVT is the rightful owner of the Vehicle with FSVT/BMW holding valid title over the Vehicle; and (3) that FPC considered Gauge to have engaged in misconduct by selling the Vehicle to FPC.[18]

12. Gauge was the Defendant in the first-filed FPC Lawsuit involving the same Vehicle and the same parties, in which Counterclaimants here intervened.[19] FPC voluntarily dismissed the FPC Lawsuit on July 21, 2025, prior to the Florida court ruling on FSVT's and BMW's motion to intervene, and after Gauge agreed to re-purchase, to essentially "'unwind' the vehicle sale and to indemnify FPC against any future claims."[20] Of course, the agreement between FPC and Gauge purposefully thwarted FSVT's and BMW's intervention to assert FSVT's and BMW's rights as the rightful owner of the Vehicle.

13. On or about July 25, 2025, BMW/FSVT again noticed Gauge of its interest in the Vehicle, in an effort to prevent a sale to an unwitting third-party purchaser.[21]

14. As part of Gauge's plan, rather than continue the existing Florida litigation or awaiting BMW/FSVT's impending lawsuit against FPC and Gauge in Florida, Gauge rushed to file this suit

---

[17] *See* Dkt. 11-1 at PageID 110-129.

[18] *Id.* at PageID 116 at ¶¶ 34-40.

[19] *Id.* at PageID 76 at ¶¶30-34; PageID 110-157.

[20] *Id.* at PageID 75 at ¶36; PageID 159.

[21] *Id.* at PageID 161

164682929.2

in Utah state court, despite the fact *no activity* involving the Vehicle has occurred in Utah and none of the Defendants are residents of Utah.

15. Indeed, just as Gauge anticipated, FSVT and BMW filed the BMW Lawsuit on August 8, 2025, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.[22] The BMW Lawsuit is pending and FSVT's and BMW's allegations and claims are similar to those presented in this action, including claims for declaratory relief, replevin, conversion, unjust enrichment, breach of contract, and trespass of chattels in connection with the same subject Vehicle.[23] In short, the BMW Lawsuit in Florida will resolve the ultimate questions underlying both the instant lawsuit and the BMW Lawsuit—whether title fraud occurred relative to this Florida titled Vehicle, how it occurred, whether that Florida title remains the only valid title to the Vehicle, and whether BMW/FSVT are entitled to ownership and immediate possession of this valuable Vehicle.

16. On October 3, 2025, this Court held a pretrial conference to discuss the parties working together to come up with a procedure whereby the Vehicle could be sold in order to (1) preserve the present value of the Vehicle; (2) avoid depreciation of the Vehicle during the pendency of this and the Florida matter; and (3) deposit the sale funds with the court for preservation through the final adjudication.

17. Following the pretrial conference, Counterclaimants learned that Guage is determined to sell the Vehicle without Counterclaimants' input and that Gauge already has a potential buyer.

---

[22] *Id* at PageID 69-80.

[23] *Id.*

18. Upon learning of a potential sale, Counterclaimants sent a letter to Gauge's counsel informing Gauge that it believed the parties could "come to a mutual agreement for a commercially reasonable sale of the vehicle [and] deposit of the proceeds with the court pending resolution of all claims," but if Gauge "continues down this path to sell the subject vehicle without prior agreement and input from BMW, Gauge must notify the potential purchaser that (1) there is a clouded title with BMW asserting claim to the vehicle as the actual owner; (2) they will be subject to a lawsuit; and (3) the vehicle is subject to repossession by BMW under the valid lease agreement. Moreover, if Gauge sells the subject vehicle without Counterclaimants' approval, Gauge may be subject to sanctions for spoliation of the evidence."[24]

19. Counterclaimants further informed Gauge that it would have no choice but to file a request for temporary restraining order if Gauge was unwilling to cooperate.[25]

20. Gauge is unwilling to cooperate with Counterclaimants to address Counterclaimants' ownership of the Vehicle.[26]

21. Upon information and belief, Gauge's intention is to re-sell the Vehicle.

22. On Saturday, October 4, 2025, the subject Vehicle was listed for sale by Secured Auto Group ("SAG") for $337,980, and was still listed as available on Monday, October 6, 2025.[27] The

---

[24] *See* Exhibit A, Letter to Chad Pehrson

[25] *Id.*

[26] *See* Exhibit B, October 3, 2025, emails between counsel

[27] *See* Exhibit C, Secured Auto Group Listing. Counterclaimants are not sure as to the relationship between Gauge and Secured Auto Group.

Vehicle was no longer available on SAG's website as of Tuesday, October 7, 2025, and was listed as "Sold" on October 8, 2025.[28]

**FIRST CAUSE OF ACTION**
**(Declaratory Relief)**

23. Specifically, Counterclaimants allege:

   a. There exists a bona fide dispute with respect to the ownership interests asserted by various parties with respect to the Vehicle and the conduct of Gauge in taking actions inconsistent with Counterclaimants' rights of ownership and possession;

   b. There exists a justiciable question because Gauge's conduct is in violation of Counterclaimants' interest and subsequent demands, despite Counterclaimants' status as the Vehicle's owner and lienholder;

   c. There exists uncertainty regarding Counterclaimants' status as the Vehicle's owner and lienholder, apropos the NY Title, i.e., despite the fraudulent procurement of the NY Title through furnishing of the Fraudulent Florida Title, Gauge feels enabled to act in ways that challenge Counterclaimants' status as the Vehicle's owner and lienholder; and

   d. There exists a practical need for a declaration in this respect because pending a declaration that it has the right to exercise control over the Vehicle, Counterclaimants have been and will continue to be economically harmed because it is unable to sell or otherwise dispose of the Vehicle.

---

[28] *Id.*

164682929.2

## SECOND CAUSE OF ACTION
### (Replevin)

32. Counterclaimants' interest in the Vehicle was first perfected.

33. Counterclaimants have an immediate right to possess the Vehicle by reason of its possessory interest.

34. Counterclaimants' right to possession of the Vehicle is superior because it holds the Vehicle's only valid certificate of title.

## THIRD CAUSE OF ACTION
### (Conversion)

35. Gauge re-purchased and took possession of the Vehicle from FPC despite timely and abundant notice by BMW/FSVT of the fraudulent title scheme, thereby violating BMW/FSVT's rights and causing it economic harm.

36. Gauge has maintained possession over the Vehicle despite repeated notices from multiple parties of the fraudulent title scheme, i.e., that Gauge did not and does not have valid title.

37. Upon information and belief, Gauge is soliciting new purchasers for the Vehicle, despite said notices.

38. Upon information and belief, Gauge may have re-sold the Vehicle, despite said notices, and against the admonition of this Court.

39. As a direct and proximate result of Gauge's conduct, Counterclaimants have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

40. Counterclaimants pleads this Action in the alternative to the Third Cause of Action.

41. Gauge was fully aware, through pre- and post-litigation notices, that Counterclaimants were and continue to be the Vehicle's legal owner and titleholder.

42. Despite its knowledge, Gauge proceeded to re-purchase and take possession of the Vehicle, presumably to disrupt Counterclaimants' efforts to locate the Vehicle.

43. Given that Counterclaimant FSVT is the Vehicle's legal owner and titleholder, i.e., that Gauge does not have valid title to the Vehicle, it would be inequitable for Gauge to continue profiting from its possession over and transactions in connection with the Vehicle.

## FIFTH CAUSE OF ACTION
### (Trespass to Chattels)

44. Upon information and belief, Gauge knowingly and intentionally caused physical interference and dispossession with the use and enjoyment of Counterclaimants' property.

45. Upon information and belief, Gauge, without justification or consent, caused physical interference and dispossession with the use of Counterclaimants' property.

46. Upon information and belief, Gauge knew that such physical interference and dispossession would result in harm to Counterclaimants.

47. As a result, Counterclaimants have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Tortious Interference)

48. Gauge has tortiously interfered with the Lease Agreement between Counterclaimant FSVT and Lessee Blackfire Transport, LLC and Alfred Davis.

49. Gauge has tortiously interfered with the verbal contract between Counterclaimant FSVT and FPC by interfering with FPC's surrender and return of the Vehicle to its rightful owner, FVST.

**WHEREFORE**, having set out its causes of action, Counterclaimants pray for relief as follows:

1. A declaration that (i) the fraudulent title is invalid and void as a matter of law; (ii) the New York Title is invalid and void as a matter of law; and (iii) Counterclaimant FSVT is the Vehicle's rightful owner and lienholder.

2. Judgment in its favor for compensatory and consequential damages, pre and post judgment interest, and such other and further relief as this Court deems just and proper.

DATED: October 8, 2025           LEWIS BRISBOIS BISGAARD & SMITH LLP

                                 By:  /s/ Emily L. Rutter
                                      William S. Helfand
                                      Emily L. Rutter
                                      *Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2025, I caused a true and correct copy of the foregoing **COUNTERCLAIM** to be electronically filed through the Court's CM/ECF system, which will send notification of such filing to the following:

Chad Pehrson
KBA
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
cpehrson@kba.law
*Attorneys for Plaintiff*

                                      /s/ Emily L. Rutter

164682929.2

11