CHAD PEHRSON (12622)
**KBA**
50 West Broadway
Salt Lake City, UT 84101
(801) 994-4646
CPEHRSON@KBA.LAW

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
UTAH NORTHERN DIVISION

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and <br><br> FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | OPPOSITION TO DEFENDANTS' MOTION TO DISMISS <br><br> Case No. 2:25-cv-00792 <br><br> Judge Ann Marie McIff Allen <br><br> Jury Demanded |

    Plaintiff Gauge Automotive, Inc. ("Gauge") respectfully opposes Defendants' motion to dismiss this action for improper venue or to transfer it to Florida. Defendants BMW Financial Services NA, LLC and Financial Services Vehicle Trust ("BMW") have actively and aggressively litigated this case in the Utah forum – including filing an Answer with counterclaims and seeking a Temporary Restraining Order ("TRO") and other relief from this Court – thereby waiving or forfeiting any objection to venue and confirming that Utah is a proper and convenient forum. In any event, venue is plainly proper in the District of Utah under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Gauge's claims occurred in Utah and the property at the center of this dispute – a 2023 Rolls-Royce Cullinan vehicle (the

"Vehicle") – was situated in Utah as of the date of filing. Finally, the discretionary transfer factors under 28 U.S.C. § 1404(a) weigh decisively against disturbing Gauge's choice to litigate in its home forum. Utah is Gauge's home, and BMW has already invoked this Court's jurisdiction and resources to press its counterclaims; transferring or dismissing now would waste judicial resources and reward BMW's forum-shopping. Gauge therefore urges the Court to deny BMW's motion and retain the case in Utah.

## BACKGROUND

Gauge is a Utah corporation headquartered in Salt Lake City. In mid-2025, Gauge came into possession of the Vehicle, obtained a certificate of title, and later sold the Vehicle to a Florida dealership, Florida Performance Cars ("FPC"). When a dispute arose over the Vehicle's title, Gauge took steps to unwind that sale – regaining possession of the Vehicle and seeking declaratory relief in Utah state court. Subsequently, on August 8, 2025, BMW (through FSVT) filed a lawsuit in Florida state court against Gauge and others (including FPC and the original lessee of the Vehicle) seeking to adjudicate rights to the Vehicle. In this litigation, BMW responded on September 30, 2025 by filing the present motion under Rule 12(b)(3) or § 1404, but at the same time BMW also chose to litigate on the merits in Utah: on October 8, 2025, BMW filed an Answer and Counterclaims against Gauge in this Court (Dkt. 16) and soon after moved this Court for a TRO and preliminary injunction (Dkt. 19) to seize or encumber the Vehicle.

BMW's counterclaims assert, inter alia, that BMW/FSVT are the rightful owners of the Vehicle and seek affirmative relief against Gauge – precisely the issues at the core of this case. The Court held a hearing on October 3, 2025 (prior to BMW's TRO motion) where it acknowledged the parties' dispute over the Vehicle and urged the parties to cooperate on

protecting the Vehicle's value. In subsequent negotiations, Gauge's counsel made clear that Gauge would not stipulate to BMW's demands, and BMW promptly pressed this Court for emergency relief. In short, BMW has availed itself of the Utah forum's jurisdiction to pursue its claims and remedies, even as its motion asks to exit this forum. Additional background relevant to venue and transfer is discussed in context below.

## ARGUMENT

## I.  BMW WAIVED ANY CHALLENGE TO VENUE BY SEEKING RELIEF AND LITIGATING ON THE MERITS IN THIS COURT.

Venue objections, unlike subject-matter jurisdiction, can be waived by a defendant's conduct.  Even though BMW initially raised improper venue in its [Rule 12(b)(3)](#) motion, this Court retains authority to find that BMW forfeited its venue challenge through its subsequent litigation actions in this forum. BMW's conduct in this case has been fundamentally inconsistent with an intention to insist on a different venue. By affirmatively invoking the jurisdiction of this Court to obtain urgent equitable relief and by filing counterclaims seeking this Court's adjudication of new claims, BMW has voluntarily elected to proceed in Utah. It cannot now retreat to its earlier venue objection.

In determining whether a defendant has waived a venue defense by conduct, courts consider whether the defendant's actions amount to seeking substantial relief or otherwise yielding to the court's authority in a way that is unfair to reverse. Here, BMW's actions check every box:

- **Seeking a Temporary Restraining Order from this Court:** BMW asked this Court to enter a TRO and preliminary injunction to prevent sale of the Vehicle and even to attach the Vehicle or proceeds. This is quintessential affirmative relief. A TRO is not a mere

defensive maneuver; it is an extraordinary equitable remedy that a party must affirmatively request and the court issues at its discretion. By doing so, BMW invoked the power of this Court to preserve the status quo and protect BMW's interests pending resolution of the case. Courts have recognized that when a party seeks such emergency relief from a court, it manifests consent to the court's authority over the dispute – a stance incompatible with later claiming the forum is improper. BMW did not limit its TRO request to some ancillary or temporary purpose unrelated to the merits; to the contrary, BMW urged that "irreparable harm" would result absent this Court's intervention, and it requested the Court to hold a prompt hearing and then issue a preliminary injunction or other orders to secure the Vehicle. By aggressively pursuing injunctive relief here (all while its venue motion was pending in the background), BMW waived its venue objection. One cannot, in good faith, ask a court to grant affirmative equitable relief in a case and simultaneously maintain that the court is not the right forum to hear the case.

- **Filing Counterclaims for Affirmative Relief:** BMW's litigation conduct went beyond simply resisting Gauge's claims – BMW went on the offensive by filing its own Counterclaim in this action. In that Counterclaim, BMW/FSVT assert claims for declaratory judgment (to declare the Florida title fraudulent and BMW the true owner), replevin (seeking return of the Vehicle), and other causes of action mirroring those in the Florida suit. By filing these counterclaims, BMW chose to seek relief from this Court against Gauge. The Counterclaim asks this Court to adjudicate new claims and award relief in BMW's favor (e.g. an order granting BMW immediate possession of the Vehicle, damages for Gauge's sales, etc.). This act of filing a counterclaim is a voluntary invocation of the Court's jurisdiction that is inconsistent with an argument that the Court

lacks proper venue. While a defendant is generally permitted to assert counterclaims without automatically waiving a preserved venue objection in some jurisdictions, here the counterclaims underscore BMW's *full engagement* in litigating the dispute in Utah. BMW did not hold its counterclaims in abeyance or hold itself to the role of challenging jurisdiction; instead it actively sought this Court's judgment on the merits of additional claims. Such conduct weighs heavily in favor of finding waiver, especially combined with the other factors present.

- **Substantive Participation in Pretrial Proceedings:** BMW has substantially participated in the litigation in this District in a manner that goes far beyond what is necessary to preserve a venue objection. At the October 3, 2025 hearing before Judge Allen, BMW's counsel discussed the merits of the ownership dispute and potential solutions. BMW then sent a detailed letter the same day memorializing a proposal for selling the car, including using the court to hold sale proceeds. In doing so, BMW affirmatively acknowledged this Court's role in resolving the dispute. BMW's letter explicitly stated it would, if necessary, "file a request for a temporary restraining order in one or both lawsuits" to protect its rights – again demonstrating BMW was content to proceed in Utah to obtain relief. In short, BMW has acted as a party fully litigating on the merits in Utah. To allow BMW now to reverse course and escape this forum would prejudice Gauge and reward BMW for what amounts to a tactical about-face after testing the waters of litigation here.

In light of these facts, the Court should exercise its authority to deem the venue objection waived or forfeited. BMW's course of conduct – seeking urgent injunctive relief and asserting counterclaims – is fundamentally at odds with a genuine belief that this Court is an improper venue. If BMW truly believed venue in Utah was wrong, the proper course would have been to

stand on its Rule 12 motion and refrain from seeking the Court's assistance on the merits (except perhaps to prevent immediate irreparable harm while expressly preserving its objection). Here, BMW did the opposite: it ran to this Court for a TRO as soon as Gauge called its bluff. BMW cannot have it both ways. Having invoked the benefits of this Court, BMW must accept the burdens as well, including continuing in this forum.

In short, BMW's conduct in this case speaks louder than its motion. By filing counterclaims and seeking a TRO and preliminary injunction from this Court, BMW has effectively consented to the Utah venue and waived its right to object that this forum is "improper" or inconvenient. It is well-established that a defendant may waive a venue defense by engaging in affirmative litigation conduct inconsistent with an intent to insist on a different forum. For example, if a defendant files a motion going to the merits – such as a motion for summary judgment – before raising or pursuing a venue objection, that conduct constitutes a tacit admission that venue is proper, and the venue objection is deemed waived. The Tenth Circuit has embraced this principle. In *Thompson v. United States*, the court held that a defendant who chose to seek summary judgment on the merits conceded the question of venue. See *Thompson v. United States*, 312 F.2d 516, 519 (10th Cir. 1962) (a party that litigates a case on the merits implicitly admits that venue is properly laid and "the court should dispose of the case on its merits").

Here, although BMW included a venue defense in its initial motion, it thereafter actively pursued the merits in this Court before its venue motion was decided. By answering the Complaint, asserting counterclaims for affirmative relief, and invoking the Court's power to obtain a TRO and attachment, BMW has actively litigated the suit and thereby waived any right to complain about venue. See *Misch v. Zee Enters., Inc.*, 879 F.2d 628, 631–32 (9th Cir. 1989) (defendant waived improper venue defense by "previously filing a motion for summary

**Opposition to BMW's Motion to Dismiss.**                                                                                                   Page 6

judgment" on the merits, which is conduct incompatible with insisting on improper venue).

BMW cannot have it both ways – it cannot ask this Court to grant it urgent equitable relief and adjudicate its counterclaims, yet simultaneously contend that this Court is an improper or unfair place to litigate. Its litigation conduct is a clear "indication of a willingness to litigate in [this] forum," amounting to waiver or forfeiture of any venue objection.

At a minimum, even if the Court were to consider the venue defense technically preserved, BMW's actions strongly favor estoppel and weigh against dismissal or transfer in the interests of justice. BMW's active participation in this forum demonstrates that proceeding in Utah causes it no cognizable prejudice. Indeed, BMW chose to file here what it could have filed in Florida – if Florida were truly the clearly superior forum BMW now portrays, one would expect BMW to refrain from litigating in Utah. Instead, BMW has shown full confidence in this Court's ability to resolve the dispute. It has retained Utah counsel (who have already appeared and argued here), filed multiple substantive motions, and obtained the Court's attention on the merits of the case. Judicial economy strongly supports keeping the case in Utah. The Court and the parties have already invested time and resources here; the Utah action is moving forward expeditiously (with Gauge ready to proceed on the merits and the Vehicle secured in Utah). Dismissing or transferring at this stage would squander those efforts and reward BMW's procedural gamesmanship.

Furthermore, allowing BMW to escape Utah after using this Court to obtain interim relief would be fundamentally unfair. BMW's emergency TRO application asked this Court to enjoin Gauge's sale of the Vehicle or attach the Vehicle, implicitly acknowledging that this Court has the power to adjudicate the parties' rights in the Vehicle. Gauge has justifiably relied on BMW's invocation of the Utah forum – for example, Gauge has defended against the TRO here and

complied with Utah court procedures – and Gauge would be prejudiced if forced to start over elsewhere. BMW's course of conduct amounts to an implied waiver of its venue objection and a submission to this Court's authority. For these reasons, BMW's motion to dismiss for improper venue should be denied on the basis of waiver alone.

**II. THE FIRST-TO-FILE RULE DICTATES THAT THIS CASE SHOULD PROCEED.**

The "first-to-file rule" is a well-established principle of federal comity designed to avoid duplicative litigation and conflicting judgments. When two substantially identical actions involving the same parties and issues are pending in different federal districts, the court in which the first action was filed ordinarily has priority. The rule "encourages sound judicial administration and promotes efficiency" by preventing "the waste of duplication, the possibility of conflicting judgments, and piecemeal resolution of disputes." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, 189 F.3d 477 (10th Cir. 1999) (unpublished); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). Exceptions are rare and arise only where the first-filed case was anticipatory or filed in bad faith, or where the balance of convenience or special circumstances favors the second forum.

Here, BMW's own pleadings show that Gauge's Utah case was filed before the Florida "BMW Lawsuit" and that both cases concern the same 2023 Rolls-Royce Cullinan, and the same issues of ownership and title validity. BMW concedes that Gauge filed this Utah action and that only *afterward*—on August 8, 2025—it filed its overlapping Florida suit raising the same claims for declaratory relief, replevin, conversion, and unjust enrichment. Gauge's Utah case was pending before BMW initiated its Florida action.

Under the first-to-file rule, this Court should retain jurisdiction because the Utah action is the first-filed federal case involving these parties and issues. BMW's subsequent filing in Florida

is precisely the type of duplicative, forum-shopping conduct the rule forbids. The Tenth Circuit has consistently held that "absent compelling circumstances, the court which first obtains jurisdiction should be allowed to proceed with the case." *Keymark Enters., LLC v. Lindsey & Associates, Inc.*, 113 F. Supp. 2d 1146, 1148 (D. Kan. 2000) (quoting *Hospah Coal*, 673 F.2d at 1163). Where, as here, the later-filed case appears designed to wrest control of the dispute from the original forum, deference to the first-filed case is especially warranted.

BMW cannot invoke any exception. Gauge's Utah filing was not anticipatory; it arose only after BMW and its servicer repeatedly interfered with Gauge's lawful title and possession of the Vehicle, threatening legal action. Nor can BMW show inconvenience, since BMW itself invoked this Court's jurisdiction when it filed counterclaims and a motion for temporary restraining order. Having chosen to litigate here, BMW cannot later argue that the same controversy should proceed in Florida instead.

In sum, the first-to-file doctrine mandates that this Utah Court, as the forum of the first-filed action, retain and resolve the dispute. BMW's duplicative Florida filing should be disregarded or stayed, and its motion to dismiss or transfer should be denied accordingly.

**III. VENUE IS PROPER IN THE DISTRICT OF UTAH UNDER 28 U.S.C. § 1391 BECAUSE A SUBSTANTIAL PART OF THE EVENTS OCCURRED IN UTAH AND THE SUBJECT PROPERTY IS SITUATED HERE.**

Even putting waiver aside, BMW's motion fails on the merits: venue in the District of Utah is proper under the general venue statute. This case may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2) (emphasis added). Gauge easily satisfies this standard. The Vehicle – which is indisputably the central subject of the claims – is currently located in Utah at Gauge's premises. Venue is proper

in a district where the subject property is found, and here the Vehicle (a "substantial part of property" in dispute) is in Utah. Indeed, BMW's own filings acknowledge that as of September–October 2025, the last known location of the Vehicle was a Salt Lake City dealership and that Gauge was attempting to sell it from Utah. By the time Gauge filed this suit, Gauge had possession of the Vehicle in Utah and was facing interference with its property rights in Utah. This alone establishes venue under § 1391(b)(2)'s property-situs prong.

Moreover, a substantial portion of the events giving rise to Gauge's claims occurred in Utah. Gauge's claims against BMW sound in wrongful interference with Gauge's business and cloud on Gauge's title to the Vehicle. Those injuries manifested in Utah, where Gauge is headquartered and where it holds and attempts to dispose of the Vehicle. Gauge's complaint alleges that BMW's actions – including asserting adverse claims to the Vehicle and involving law enforcement or others – interfered with Gauge's possession and use of the Vehicle in Utah and hampered Gauge's sales efforts in Utah. The harm to Gauge is felt in Utah, and that is a relevant part of the "events" for venue purposes. See [Myers v. Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir. 2001)](#) (in tort cases, the locus of injury is a relevant factor in determining where "events giving rise to the claim" occurred). Here, BMW's alleged interference caused Gauge to suffer financial losses and business disruption at its Salt Lake City operation – a substantial event connecting this dispute to Utah.

Additionally, significant conduct by Gauge related to the Vehicle occurred in Utah. Gauge's decision-making regarding the Vehicle's title and sale took place at its Utah offices. After the Florida transaction fell apart, Gauge retrieved the Vehicle and returned it to Utah for safekeeping and resale. All subsequent dealings concerning the Vehicle (marketing it for resale, responding to BMW's demands, etc.) have taken place from Utah. To the extent Gauge's claims

include declaratory relief to quiet title, the "res" (the Vehicle) is in Utah, and Gauge seeks relief in Utah to clear title to property now situated here. This forum therefore has a substantial connection to the controversy.

BMW's motion ignores these critical Utah contacts and instead focuses on the earlier chapters of the Vehicle's saga in Florida. It is true that some events underlying the broader dispute transpired in Florida – e.g. Gauge's March 2025 sale of the Vehicle to FPC and the Vehicle's delivery to Florida at that time. But venue can be proper in more than one district; the statute does not require that the chosen venue be the most substantial location, only that substantial events occurred there. See Nat'l Cable TV Ass'n v. Fla. Programming Co., Civ. No. 89-1486, 1990 WL 115611, at *2 (D.D.C. July 25, 1990) ("Section 1391(b)(2) does not require that the district where the suit is filed be the district where the most substantial events took place, only that it be one of the districts in which a substantial part of the events occurred."). Multiple federal courts have recognized that where a claim arises from a series of events spanning different locales, venue may lie in any district with a meaningful connection to those events, even if another district has more events. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("there may be more than one district in which a substantial part of the events giving rise to the claim occurred"). Here, while the initial sale and lease of the Vehicle involved Florida, the later events giving rise to Gauge's claims against BMW have a substantial Utah nexus: Gauge's reacquisition and possession of the Vehicle in Utah, BMW's refusal to recognize Gauge's Utah-obtained title, and BMW's attempts to enjoin Gauge's Utah-based sale all form the basis of this lawsuit.

BMW's argument relies heavily on the notion that all relevant activities of the defendant occurred in Florida. But this misreads the law. The 1990 amendments to § 1391 specifically

**Opposition to BMW's Motion to Dismiss.**                                                                                                          **Page 11**

added the "substantial part" test to broaden venue beyond the strict focus on the defendant's residence or locus of acts, recognizing that modern transactions often have multiple loci. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (§ 1391(b)(2) was intended to "broaden the number of permissible venue locations in federal court"). In this case, BMW's wrongful acts include its interference with Gauge's Utah ownership and planned sale of the Vehicle from Utah. BMW has been reaching into Utah (by sending demands to Gauge in Utah, by threatening third parties with repossession if the Vehicle is sold in Utah, and by invoking Utah court process) in order to assert its claim. Those acts are "relevant activities of the defendant" connected to Utah.

In sum, Gauge has made at least a prima facie showing that a substantial part of the events or omissions underlying its claims occurred in Utah and that the core property is located here. This is enough to sustain venue under § 1391(b)(2). BMW's motion essentially asks the Court to pick apart the controversy and identify Florida as the best venue. But the statute does not call for selecting a single "best" venue; it only asks whether the chosen forum has a substantial connection to the claim. Given the Utah-based events described above, Utah plainly meets that test. Accordingly, the Court should hold that venue is proper in this District. (Notably, BMW tacitly conceded as much by asserting counterclaims here; had BMW truly believed venue was improper, it would not have been permissible to seek affirmative relief without waiving the objection. BMW's own actions thus reflect that Utah is a viable venue for resolving this dispute.)

### III. THE COURT SHOULD DENY TRANSFER TO FLORIDA UNDER 28 U.S.C. § 1404(a) IN THE INTEREST OF JUSTICE AND CONVENIENCE.

Finally, Defendants ask, in the alternative, that the case be transferred to the Southern District of Florida under 28 U.S.C. § 1404(a). The Court should decline that invitation. Because venue in Utah is proper, BMW bears a heavy burden to demonstrate that the convenience of

parties and witnesses and the interests of justice strongly favor a transfer. *Scheidt v. Klein* teaches that "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." 956 F.2d 963, 965 (10th Cir. 1992) (internal quotation omitted). This principle reflects the substantial deference due to a plaintiff's chosen forum, particularly when the plaintiff is litigating at home. See *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) ("courts accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the chosen forum.'"). Here, however, Gauge *has* significant connections to Utah – it is its home forum and, as discussed, many operative facts (current possession of the Vehicle, efforts to sell, etc.) center on Utah. Thus, Gauge's choice of the District of Utah is entitled to considerable deference. BMW must make a clear showing that the relevant factors tip decisively in favor of Florida. BMW cannot meet this burden.

The statute (§ 1404(a)) allows transfer only "[f]or the convenience of parties and witnesses, in the interest of justice." The Court considers a number of case-specific factors, including: (1) the plaintiff's choice of forum; (2) the convenience and accessibility of witnesses; (3) the convenience of the parties (relative financial and physical ability to litigate in the forum); (4) the location of relevant evidence; (5) the relative cost of producing proof; (6) the enforceability of any judgment; (7) difficulties that may arise from congested dockets; (8) the potential conflict of laws and advantage of having local courts determine questions of local law; (9) the local interest in having localized controversies decided at home; and (10) any other practical considerations making trial easy, expeditious, and economical. See *Emp'rs Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d at 1167–68 (listing factors). An analysis of these factors demonstrates that keeping the case in Utah best serves the convenience of all involved and the interests of justice.

**1. Plaintiff's Forum Choice:** Gauge is a Utah corporation based in this District. *Bartile Roofs*, 618 F.3d at 1168 ("courts accord substantial deference to the plaintiff's choice if the plaintiff resides in the [chosen] district"). That choice should not be disturbed lightly. In truth, both parties have filed suits in forums they perceive as favorable. Gauge's forum selection, however, is presumptively valid and reasonable.

**2. Convenience of Witnesses:** Gauge's principal witnesses are in Utah – including Gauge's owner and employees who handled the transaction and title paperwork, and who communicated with BMW. They will testify to Gauge's acquisition of the Vehicle, its understanding of the title status, and the interference and damages Gauge experienced. Additionally, BMW's own key witnesses are not necessarily limited to Florida. BMW Financial Services NA, LLC is a Delaware company with a principal place of business in another state (not Utah or Florida, according to BMW it is a Delaware/New Jersey citizen). BMW has not shown that its employee witnesses would find Florida clearly more convenient than Utah. In fact, BMW's corporate representative who verified its counterclaim does not state he is in Florida.

**3. Convenience and Relative Means of the Parties:** This factor strongly favors Utah. Gauge is a Utah small business; litigating in Florida (2,000 miles away) would impose significant financial and logistical strain on it. Gauge would have to retain separate Florida local counsel for federal court, incur travel costs for its Utah witnesses and counsel, and navigate a distant court system. BMW, by contrast, is a large corporate entity (or entities) with nationwide operations and ample resources. BMW is already availing itself of Utah counsel (from a national law firm) and has demonstrated no difficulty litigating here. Indeed, BMW chose to file a sprawling lawsuit in Florida state court and simultaneously litigate here, signaling it can litigate in multiple forums at once. BMW's size and presence (Delaware/New Jersey-based, with

operations in many states including Utah) means traveling to Utah is not a hardship. Meanwhile, requiring Gauge to fight on BMW's home turf would effectively increase the litigation burden on the party least able to afford it.

 **4. Location of Events and Access to Proof:** BMW repeats that Florida is where the "real" events happened and where evidence is. This is factually incorrect. The most important events happened in New York and Utah. A Utah business relied upon a New York title to purchase and convey a vehicle. Then a multinational corporation intervened in and disrupted that business. In point of fact, the only conduct focused on Florida is BMW's tortious conduct; the primary gravamen of this case is to resolve the dispute over the validity of New York and Utah vehicle titles.

 **5. Enforcement of Judgment:** There is no indication that either forum poses any issue with enforcing a judgment. If Gauge prevails in Utah, it can enforce any judgment against BMW (which operates nationally) just as easily as if in Florida. If BMW prevails, similarly it can enforce against Gauge's assets which are primarily in Utah – in fact, a Utah judgment would more directly attach to Gauge's Utah assets (including the Vehicle) without need for domestication. This factor is neutral.

 **6. Fair Trial Concerns:** Neither side has identified any concern that one forum or the other would pose difficulties in obtaining a fair trial. Both the District of Utah and the Southern District of Florida are capable federal courts. H

 **7. Court Congestion:** According to the most recent federal judicial statistics, the relative congestion between the District of Utah and the Southern District of Florida is comparable. More importantly, this case is already moving forward in Utah – the Court has held hearings and is familiar with the dispute's outline. Transferring now would only introduce delay as a new court

in Florida becomes acquainted with the matter. The interest of a speedy resolution favors staying in Utah. This factor weighs against transfer or is at least neutral.

**8. Conflict of Laws / Application of Local Law:** BMW argues that Florida law governs some issues. But Gauge believes that New York law will be applicable to the dispositive issues. What law applies is only one factor, and not a strongly weighted one here given the mix of claims. Moreover, any Florida-law issues in this case relate to established statutes and fraud principles that a Utah court can adeptly handle. This factor is at most neutral.

**9. Interests of Justice / Judicial Economy:** This catch-all factor strongly favors keeping the case in Utah. As emphasized earlier, judicial economy would be disserved by a transfer. The case in Utah is already well underway, with a counterclaim and TRO motion on file and substantive issues joined. Judge Allen has familiarized herself with the context at the October 3, 2025 hearing. Transferring to a new court would duplicate efforts and potentially conflict with the interim relief issues addressed here. Meanwhile, there is no pending *federal* case in Florida to consolidate with – the only other pending case is BMW's Florida state court action. Transferring this case to the Southern District of Florida would not automatically streamline things because BMW's case is in state court (which cannot be merged with a federal case). In fact, BMW notably did *not* file any federal action in Florida; thus, the supposed efficiency of having everything in one court is illusory. There would still be parallel proceedings – one in Florida state and one in Florida federal – unless one or the other were stayed or dismissed. By contrast, maintaining the case in Utah allows at least the Gauge-BMW dispute to be resolved in one forum without interfering with or waiting on the Florida state case. Gauge has moved to dismiss the Florida state action on the basis that the core dispute can be resolved here between the principal adversaries (BMW and Gauge) without dragging in peripheral parties. It promotes judicial

economy and fairness for this Court to proceed to adjudicate the core ownership and contract issues between Gauge and BMW. A judgment from this Court on those issues could, if appropriate, be pleaded as res judicata or collateral estoppel in the Florida state court, potentially simplifying or resolving that case as well. In contrast, if this case were transferred to Florida federal court, Gauge would likely have to ask the federal court to abstain or stay due to the parallel state proceeding (or vice versa), leading to procedural morass and delay.

In addition, the interest of justice considers the parties' conduct. BMW's tactical behavior (filing in state court, then attempting to foreclose Gauge's federal forum, all while seeking relief in the very forum it challenges) should not be rewarded. Gauge filed in federal court to obtain a neutral, efficient resolution. There is a strong federal interest in honoring a plaintiff's choice to avail itself of a federal forum, especially where diversity jurisdiction exists and the plaintiff is trying to avoid potential local bias or multi-party complications in state court. BMW's transfer request essentially asks this Court to force Gauge back into a litigation that includes numerous other parties and claims (in Florida state court) where Gauge would be one defendant among many. But here, in Utah, Gauge can obtain focused relief on its claims directly against BMW, and BMW can obtain relief on its counterclaims – without the noise of other parties. This is a more efficient and just way to proceed.

Considering all the factors, BMW has not met the burden of showing that the Southern District of Florida is "clearly more convenient" or that transfer would serve the interest of justice. Here, the scales tip in favor of staying in Utah when giving appropriate weight to Gauge's forum choice, BMW's waiver by conduct, and the practical realities of the case. At best, BMW has shown that Florida might be a convenient forum for some witnesses and that the origin of the dispute was there – but that falls far short of the compelling circumstances needed

to override Gauge's choice.

### IV. UTAH IS THE APPROPRIATE FORUM TO PRESERVE GAUGE'S RIGHTS.

BMW's motion repeatedly insinuates that Gauge's lawsuit is an improper attempt to escape the "real" forum in Florida and that it would be more efficient to have everything in Florida. Gauge respectfully disagrees. Gauge filed in Utah to protect its rights under the law, and doing so was neither improper nor inefficient. Gauge is entitled to seek relief in federal court in its home state for the wrongs it alleges. The pendency of a related state case in Florida does not negate Gauge's right to a federal forum – if anything, it underscores why Gauge turned to this Court (to avoid being swept into a litigation with additional parties and potential biases). The law does not punish a party for choosing a lawful forum, even if parallel proceedings result. Notably, BMW did not invoke the "first-to-file" rule or any federal abstention doctrine in its motion, likely because the first-filed rule typically applies between two federal cases (not a federal and a state case), and abstention (e.g. *Colorado River* abstention) is discretionary and requires exceptional circumstances that BMW has not tried to demonstrate. Absent such arguments, there is no legal basis to refuse jurisdiction simply because Florida state litigation exists. On the contrary, the "virtually unflagging obligation" of a federal court to exercise jurisdiction counsels against a transfer or stay merely due to parallel state proceedings. See [Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)](#).

Moreover, BMW's own litigation conduct in Florida reveals that the Florida case might not be as superior a vehicle for justice as BMW suggests. Gauge's Motion to Dismiss in the Florida state action (filed October 14, 2025) highlights that Florida lacks a substantial interest in dragging a Utah company into court for a dispute that can be resolved between Gauge and BMW

elsewhere. Gauge has pointed out to the Florida court that Florida is an inconvenient forum for Gauge and that the Florida lawsuit is largely duplicative of issues now teed up in this federal case. It would be ironic for this Court to transfer the case to Florida at BMW's request while Gauge is actively seeking to be dismissed from the Florida proceeding. The better course is to let Gauge's chosen case go forward here, where jurisdiction and venue are proper and where BMW has already submitted itself to the Court's authority. This will ensure Gauge gets its day in court in its home state, and BMW will suffer no legitimate prejudice – it will be able to fully litigate its claims and defenses here (as it is already doing).

## CONCLUSION

BMW and FSVT chose to invoke this Court's jurisdiction and resources to seek affirmative relief; they cannot now repudiate the forum when it suits them. Gauge respectfully requests that the Court deny Defendants' Motion to Dismiss or, in the alternative, Transfer Venue. The record demonstrates that venue in Utah is proper and, in any event, that Defendants have waived any venue objection by their litigation conduct. This case should proceed in the District of Utah, and the parties should continue to litigate all claims and counterclaims before this Court.

Dated: October 14, 2025

Respectfully Submitted,

By: */s/ Chad S. Pehrson*

Chad S. Pehrson Esq.
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

     I hereby certify that on October 14, 2025, I electronically filed and served a true and correct copy of the foregoing **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** upon counsel of record via the Court's CM/ECF system.

                                                      */s/Andrea Coats*
                                                      Andrea Coats