William S. Helfand, #16686
Emily L. Rutter, #20000
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121-2319
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Emily.Rutter@lewisbrisbois.com

*Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC.,<br>　　　　Plaintiff,<br><br>v.<br><br>BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST,<br>　　　　Defendants.<br><br><br>BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST,<br>　　　Counterclaimant,<br><br>v.<br><br>GAUGE AUTOMOTIVE, INC.,<br><br>　　　Counter-Defendant. | **SUPPLEMENT TO COUNTERCLAIMANT'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE RULE 64 MOTION FOR ATTACHMENT REQUESTING EX PARTE ENTRY OF TEMPORARY RESTRAINING ORDER OR ATTACHMENT OR EXPEDITED CONSIDERATION OF SAME**<br><br>**(IMMEDIATE HEARING REQUESTED)**<br><br>Civil No. 2:25-cv-00792-AMA-JCB<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Jared C. Bennett |

Consistent with Federal Rules of Civil Procedure 65(a) and (b), BMW Financial Services NA, LLC ("BMW") and Financial Services Vehicle Trust ("FSVT"), respectfully request the Court grant the temporary restraining order or attachment under Rule 64 which Counterclaimants sought on October 10, 2025, (Dkt. 19) either ex parte or on an expedited schedule based on the following additional facts and law:

## SUPPLEMENTAL FACTS

In addition to the facts and memorandum in support of Dkt. 19, Counterclaimants show the urgent need for an ex parte or alternatively expedited basis for a TRO, preliminary injunction, or attachment based upon and incorporating the additional events and reasons as follows:

1. On October 3, 2025, the Court held a pretrial conference during which the Court acknowledged the disputed claims of ownership of the Vehicle and encouraged the parties to work together to provide a procedure under which the value of the Vehicle could be maintained during this litigation, including the possibility of sale of the Vehicle and securing the proceeds of sale for resolution of the disputed claims. Both during the hearing and then more emphatically afterward, Gauge's counsel made clear that Gauge planned to disregard this Court's suggestions and that Gauge would not even attempt an agreement with Counterclaimants.[1] To the contrary, and contrary to the Court's suggestion, Gauge advised, just hours after the Rule 16 conference, that Gauge intended to sell the Vehicle and keep, or more likely dispose of, the proceeds of the sale without regard to Counterclaimants' claim of a right to the Vehicle or, alternatively, the proceeds of any

---

[1] We are in the process of requesting the transcripts from the hearings on October 3, 2025 and October 16, 2025, but do not yet have them.

165254689.5

sale. Gauge's counsel stated Gauge had a potential buyer for the Vehicle at $325,000, but did not disclose the identity of the purported buyer.

2. On October 8, 2025, the Court ordered the parties to submit status reports within two days to report on the parties' efforts to make an agreement to preserve the value of the Vehicle during the pendency of the various lawsuits.

3. On October 10, 2025, in accordance with the Court's mandate, Counterclaimants filed their status report (Dkt. 20) prior to the noon deadline and incorporate it herewith.

4. Gauge, in another display of the flagrant disregard for this Court's orders, and suggestions, did not file their status report until nearly seven o'clock in the evening on October 10, 2025 (Dkt. 21). It was in this status report that Gauge notified Counterclaimants and the Court that the subject Vehicle had been sold and the proceeds were not escrowed. *Id.* at ¶ 5. At no time has Gauge disclosed the Vehicle buyer.

5. As Gauge's counsel admitted in open court on October 16, 2025, counsel for Counterclaimants has repeatedly requested the name and address of the purchaser of the Vehicle, **including during that hearing**. Even after the Court encouraged the parties, during the October 16, 2025 hearing, to work together and recessed the hearing to provide ample time for Gauge's counsel to obtain that information and provide it to Counterclaimants during the hearing, Gauge has refused to supply that essential information to Counterclaimants.

Counterclaimants request the Court enter (1) either an *ex parte* or expedited temporary restraining order preventing Gauge from secreting the Vehicle sale proceeds, and an order for Gauge to immediately deposit the full proceeds from the sale of the Vehicle into the registry of the Court; (2) expedited discovery and a hearing for a preliminary injunction to protect and establish

the same until this matter is resolved; or (3) a writ of attachment, if the Court finds that a more appropriate manner to effect the same relief. The record, including that presented with Movant's opening brief and admissions by Gauge's counsel in two hearings before the Court, demonstrate that, without prompt intervention by the Court, the Vehicle may be lost to FSVT, its actual owner, and Gauge may dispose of the proceeds of the sale of the Vehicle, putting any relief for Movants beyond their reach.

Indeed, based upon Gauge's actions in interceding in FPC's agreement to return the Vehicle to FSVT, Gauge's actions to sell the Vehicle without an agreement as to the protection of the proceeds of such sale, and Gauge's efforts to hide the identity and location of the most recent purchaser of the Vehicle from FSVT and BMW, it appears clear that Gauge will continue to attempt to actively interfere with FSVT's efforts to secure return of the Vehicle or the proceeds of Gauge's sale unless and until the Court grants injunctive relief or an attachment.

## ARGUMENT

### I.  Standard for an Ex Parte Temporary Restraining Order and Preliminary Injunction.

In addition to the standards for obtaining a temporary restraining order or preliminary injunction as set forth in Counterclaimants' initial motion for TRO (Dkt. 19), and in accordance with Fed. R. Civ. P. 65(b), Counterclaimants incorporate the additional facts set forth above to show that Counterclaimants face immediate and irreparable injury, loss or damage without the Court's intervention. "[T]he very purpose of an injunction . . . is to give temporary relief based on a preliminary estimate of the strength of the plaintiff's suit, prior to the resolution at trial of the

factual disputes and difficulties presented by the case".[2] Therefore, a movant "must present a prima facie case but need not show a certainty of winning."[3] "The purpose of a preliminary injunction is not to remedy past harm but to protect movants from irreparable injury that will surely result without their issuance."[4]

## II. Counterclaimants Will Suffer Irreparable Harm if Proceeds from the Sale of the Vehicle are not Deposited in the Court as Substitution for the Vehicle.

Counterclaimants seek an *ex parte* or expedited preliminary injunction to have the proceeds of the Vehicle sale secured in the registry of the Court, as a substitute for the Vehicle, pending resolution of all claims.

Gauge sold the Vehicle without Counterclaimants' agreement or a court order protecting the proceeds of the sale. Without the Court's intervention ordering Gauge to deposit with the Court the proceeds of the sale—as a substitute for the Vehicle—Counterclaimants will suffer a significant loss. The price of this unique Vehicle is more than three-times Gauge's reported annual sales.[5] Based on that indisputable fact alone, there is a strong likelihood that Counterclaimants will not be able to collect on a judgment against Gauge. Additionally, Gauge's sale of the Vehicle changes purported ownership of the Vehicle which now requires Counterclaimants to bring yet another party into the various lawsuits already underway. If the new purchaser resells again—which frequently occurs in instances of fraudulent title transfers—the knot becomes bigger and bigger and more difficult and costly to unwind.

---

[2] *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1273 (10th Cir. 2018) (internal quotation marks and citation omitted).

[3] *Id.* (internal quotation marks and citation omitted).

[4] *Id.* at 1270 (internal quotation marks and citation omitted).

[5] *See* Dkt. 19-1

165254689.5

Furthermore, the sale of the Vehicle now impairs Counterclaimants' efforts to seek damages from Blackfire under the Florida Lease Agreement, which requires any sale to be commercially reasonable in order to recover damages. Since Gauge unilaterally sold the Vehicle without working with Counterclaimants, or a court order requiring all proceeds be deposited with the Court, there is nothing stopping Gauge from disposing of or even squandering those funds to prevent Counterclaimants' ability to collect any judgment, thereby thwarting all of Counterclaimants' efforts to not only recover money damages from Gauge, and likely Blackfire, but Counterclaimants have also lost the unique Black Badge collateral which would have provided means to mitigating Counterclaimants' damages.

Moreover, despite repeated requests, including in open court, Gauge has repeatedly refused to identify the purchaser of the Vehicle to Movants despite the fact such information is clearly discoverable and, as Gauge's counsel stated, Gauge will **eventually** provide. Gauge's efforts to keep the identity of the Vehicle's purchaser secret from Movants only further demonstrates Gauge's apparent complicity in the acts of fraud that place the Vehicle beyond the reach of its rightful owner, FSVT.

As it relates to the likelihood that Movants will prevail on their counterclaims, while Gauge claims to have purchased based on a valid title, the undisputed record shows Gauge did so fully aware the title to which Gauge refers was fraudulently obtained and Gauge does not, and cannot, claim it purchased the Vehicle from its actual owner. Furthermore, Gauge does not, and cannot, deny that Gauge interfered with FPC's agreement to return the Vehicle to FSVT/BMW.

**III.    The Threatened Injury Outweighs the Harm an Injunction or Attachment may Cause Gauge.**

Because Gauge sold the Vehicle, as a substitute for the Vehicle, Gauge should submit the sale proceeds into the registry of the Court. Gauge will suffer either minimal or no harm if the Court grants the requested injunctive relief, compared to injury Counterclaimants face. Gauge will still have the opportunity to recover damages, if any, to which Gauge may be adjudged entitled after adjudication of the parties' respective claims. Moreover, if Gauge deposits the sale proceeds with the Court pending resolution of this matter, Gauge's collateral will not be impaired, it will simply be preserved for use at a later date. Simply put, Gauge does not face any immediate harm due to the temporary restraining order. However, as discussed here, if the Court does not restrain and enjoin Gauge, according to Gauge, the proceeds of sale will likely be lost to execution. Furthermore, Counterclaimants' efforts to recover damages from Blackfire in accordance with the original Florida Lease are now impaired because the purported ownership of Counterclaimants' property has allegedly changed, and Counterclaimants have no choice but expend time and money to locate and join yet another party to the two pending lawsuits.

**IV.    A Temporary Restraining Order and Subsequent Preliminary Injunction Will Not Adversely Affect the Public Interest.**

An *ex parte* or expedited TRO or injunction, if issued, will not adversely affect the public interest. The parties dispute who rightfully holds valid title to the Vehicle and thereby has a right to benefit from the Vehicle and the sales proceeds. Additionally, it is unlikely that Gauge notified the subsequent purchaser of the clouded title, that the subsequent purchaser will now be subject to the lawsuit(s) currently pending, and that the Vehicle is also subject to repossession by BMW under the valid lease agreement.

### V.    Counterclaimants' Counsel Provided Notice to Gauge's Counsel Regarding the Rightful Ownership of the Vehicle.

As required under Fed. R. Civ. P. 65(b)(1)(B) for ex parte motions, Movant's counsel certifies its efforts made to give notice, and the reasons why it should not be required.[6]

On October 3, 2025, Defense counsel sent Gauge correspondence stating why the sale of the subject vehicle was improper and requested that Gauge halt any pending sale, or requesting that Gauge notify any potential purchaser that (1) there is a clouded title with BMW asserting claim to the vehicle as the actual owner; (2) they will be subject to a lawsuit; and (3) the vehicle is subject to repossession by BMW under the valid lease agreement.[7] Gauge made it abundantly clear that Gauge would not cooperate and indeed has sold the Vehicle without regard to Counterclaimants' claim of ownership. *Id.*[8]

### PRAYER FOR RELIEF

Counterclaimants respectfully request that this Court (i) grant their ex parte motion for temporary restraining order or alternatively shorten the time for the Court's consideration of a temporary restraining order, (ii) order expedited discovery so the parties may prepare for a prompt hearing on preliminary injunction, or (iii) in the alternative, grant a prejudgment writ of attachment and attach, as substitute for the Vehicle, the proceeds from the sale of the Vehicle pending the adjudication of this matter by depositing the sales proceeds with the court. Counterclaimants further pray that the Court grant them such other and further relief, at law or in equity, to which they may be justly entitled. A proposed order is attached hereto as Exhibit A.

---

[6] Fed. R. Civ. P. 65(b)(1)(B).

[7] *See also* Dkt. 16-1 at PageID.207-209.

[8] *See* Dkt. 16-2 at PageID.210-212; Dkt. 16-3 at PageID.213-219; *see also* Dkt. 21 at PageID 253

165254689.5

DATED: October 20, 2025  LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   */s/ William S. Helfand*
William S. Helfand
Emily L. Rutter
*Attorneys for BMW Financial Services NA, LLC and Financial Services Vehicle Trust*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of October, 2025, I caused a true and correct copy of the foregoing **SUPPLEMENT TO COUNTERCLAIMANT'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE RULE 64 MOTION FOR ATTACHMENT REQUESTING EX PARTE ENTRY OF TEMPORARY RESTRAINING ORDER OR ATTACHMENT OR EXPEDITED CONSIDERATION OF SAME** to be electronically filed through the Court's CM/ECF system, which will send notification of such filing to the following:

Chad Pehrson
KBA
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
cpehrson@kba.law
*Attorneys for Plaintiff*
*and Counter-Defendant*

    */s/ William S. Helfand*

165254689.5

9