# EXHIBIT A

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

FINANCIAL SERVICES VEHICLE TRUST,
by and through its servicer, ROLLS-ROYCE
MOTOR CARS FINANCIAL SERVICES, NA,
LLC, a division of BMW FINANCIAL SERVICES
NA, LLC,

        Plaintiff,

v.

JR AUTO COLLECTION, LLC d/b/a FLORIDA
PERFORMANCE CARS, GAUGE
AUTOMOTIVE, INC., BLACKFIRE
TRANSPORT, LLC, ALFRED DAVIS, and
FLORIDA HIGHWAY SAFETY AND MOTOR
VEHICLES,

        Defendants.

Case No. 50-2025-CA-008048-XXXAMB

## MOTION TO DISMISS AND MOTION TO STAY

Defendants, JR Auto Collection, LLC, d/b/a Florida Performance Cars ("**JR**") and Gauge

Automotive, Inc., ("**Gauge**," and, collectively, with JR, "**Defendants**"), by and through their

undersigned counsel, hereby move to dismiss the complaint (the "**Complaint**") filed by Plaintiff

Financial Services Vehicle Trust, by and through its servicer, Rolls-Royce Motor Cars Financial

Services, NA, LLC, a division of BMW Financial Services NA, LLC ("**FSVT**" or "**Plaintiff**")

pursuant to Fla. R. Civ. P. 1.140(b)(2), and Fla. R. Civ. P. 1.061(a). Additionally, Defendants move

to stay this case. In support thereof, Defendants state as follows:

## INTRODUCTION

FVST chose to acquire a lease of an expensive Rolls-Royce to Blackfire Transport, LLC

("**Blackfire**") and Alfred Davis ("**Davis**"), persons FVST now claims are fraudsters. According to

1

FSVT, Blackfire and Davis forged a fraudulent title for the vehicle, allowing a suspected accomplice, Steven Calderon, to obtain clean New York title free of any liens or encumbrances. Compounding FVST's initial error in accepting the lease, FVST exacerbated its due diligence failures by failing to detect the fraud for months.

Gauge, a Utah corporation, subsequently purchased the vehicle in New York for full and fair value of over $300,000, from New York seller Steven Calderon, taking possession of the vehicle in New York. In purchasing the vehicle, Gauge relied on the title issued by the State of New York presented by Calderon, free of any encumbrances or liens. Not only did Gauge have no knowledge of the alleged fraudulent concealment of valid liens on the vehicle, Gauge had no reason whatsoever to suspect the same. Indeed, the New York-issued title had absolutely no indica of fraud that might alert Gauge to any alleged title issues.

After Gauge purchased the vehicle, FSVT finally awoke from its negligent slumber to demand that Gauge and others gift the vehicle to FSVT for nothing. Apparently, it is FSVT's position that subsequent good-faith purchasers for value have the obligation to indemnify FSVT for its due diligence failures. Indeed, according to FSVT, it (somehow) still fully owns the vehicle despite the fact that the vehicle has been sold multiple times to subsequent good-faith purchaser for value.

Knowing FSVT's claims to be unsupported by law, but wanting to clear up any clouds to title, Gauge brought suit against FSVT in its home state of Utah, seeking, *inter alia,* a claim for declaratory judgment and quiet title. Not content to let the competent Utah courts decide the matter, FSVT opted to forum-shop, filing a subsequent action against Gauge and others in Florida concerning substantially the same issues; namely, the same single overriding issue that will determine the outcome of this litigation: who owns the vehicle? Moreover, FSVT sued Gauge in

Florida, even though Gauge has virtually no contacts in the state and the transaction that forms the basis of all of FSVT's claims against Gauge took place entirely in New York.

Gauge moves to dismiss this case for lack of personal jurisdiction as to Gauge. Defendants additionally move to stay this case until the conclusion of the pending Utah litigation. Alternatively, Defendants move to dismiss on grounds of forum non conveniens.

## FACTUAL BACKGROUND

On or about March 4, 2025 Gauge purchased a 2023 Rolls-Royce Cullinan vehicle (VIN SLATV8C0XPU216487) (the "Vehicle") from Steven J. Calderon, paying the full and fair market price of over $300,000. *See* Declaration of Josh Hirahara, attached hereto as Ex. A ("**Hirahara Decl.**") at ¶ 3. Upon consummating the transaction, Gauge obtained Calderon's New York Title for the Vehicle that was issued by the State of New York on or about August, 2024. Gauge had no reason to believe the title issued by the State of New York was not valid title free and clear of any encumbrances. *Id.* at ¶ 6.

Indeed, before purchasing the Vehicle, Gauge carefully analyzed the Vehicle's title history and documentation, which listed Mr. Calderon as the owner and showed no clouds on the title. *Id.* at ¶ 7. Moreover, the New York title and documentation had every indicia of constituting legitimate, New York-issued title (as opposed to fraudulently printed or forged New York title) and no one has disputed that said title was in fact issued by New York authorities (i.e., was not a forgery). *Id.* at ¶ 8.

Relying on Calderon's clean title bearing all the indicia of legitimacy, and having no knowledge of (or any reason to suspect) any clouds to said title, Gauge, a Utah corporation, purchased the New York-registered Vehicle form Calderon, in New York. *Id.* at ¶ 9. In

consummating the transaction, Gauge obtained Calderon's New York-issued title to the Vehicle and took possession of the Vehicle in New York. *Id.* at ¶ 10.

Gauge subsequently sold the Vehicle to JR, transferring the New York title to the Vehicle to JR.[1] *Id.* at ¶ 11. Subsequently, FSVT emerged from its months-long slumber to assert that it, not Gauge or JR, owned the Vehicle. According to FSVT, it had acquired a lease of the Vehicle to Blackfire and Davis, who subsequently obtained fraudulent title in the name of Manual Calderon. This allegedly fraudulent title was then purportedly used to obtain "clean" New York title in the name of Steven J. Calderon, free from listed liens or encumbrances.

FSVT maintains that, despite the fact that it was the party who: (1) decided to acquire the lease of the Vehicle; (2) failed to detect the allegedly fraudulent title for months; (3) continued to sit on its hands months after the title was allegedly fraudulently transferred to Steven Calderon, Gauge, a good-faith purchaser for value, has no rights to the Vehicle, and FSVT's ownership of the Vehicle remains absolute.

While FSVT's assertions of full ownership are highly doubtful, FSVT was entitled to request a competent court to examine the matter and declare the supposed supremacy of FSVT's title. But FSVT did not do so. Instead, FSVT simply assumed it had superior title, and, upon information and belief, attempted to employ extrajudicial self-help remedies to reacquire the Vehicle, including by attempting to unilaterally locate and repossess the Vehicle.

Wanting to remove the cloud of title over the Vehicle it purchased in good-faith (and without fault), Gauge decided to allow a competent court to ultimately determine ownership of the Vehicle. *Id.* at ¶ 17. Towards that end, Gauge brought an action against FSVT in the Third District

---

[1] Gauge subsequently agreed to rescind the sale of the Vehicle to JR, and to take back possession and title to the Vehicle from JR. *Id.* at ¶ 13. JR has no current ownership interest therein. *Id.* at ¶ 14.

Court of Salt Lake County, Utah, bringing claims for declaratory judgment, quiet title, injunctive relief, and tortious interference with property rights (the "**First-Filed Action**"). *Id.* at ¶ 18; *see also* Utah Third District Court Complaint, attached hereto as Ex. B. FSVT subsequently removed the case to federal court for the District of Utah, where it remains pending. The case style of the federal case is: *Gauge Auto, Inc. v. BMW Fin. Servs. NA, LLC,* Case No. 2:25-cv-00792-AMA-JCB.

*After* Gauge filed this suit, FSVT subsequently brought the instant case (the "**Second-Filed Action**") in a clear case of forum shopping. Notably, both suits involve FSVT and Gauge as parties, and both suits involve the same or similar subject matter: specifically, each suit centers round a single dispositive question: who owns the Vehicle? *Compare* Ex. B, Utah Third District Court Complaint, Ex. B, *with* the instant Complaint.

Gauge now moves to dismiss this action against it for lack of personal jurisdiction, given that it has virtually no contacts in Florida, and that the transaction at issue wholly took place within the state of New York. Defendants additionally move to stay this case until the conclusion of the First-Filed Suit, currently pending in Utah. Alternatively, Defendants move to dismiss this case on grounds of forum non conveniens.

## **LEGAL ARGUMENT**

### I. **This Action Must Be Dismissed Against Gauge As Plaintiffs Have Not, And Cannot, Demonstrate Personal Jurisdiction Over Gauge**

"To acquire personal jurisdiction over a non-resident defendant within the scope of Florida's long-arm statute requires a two step process…First, the plaintiff must allege sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute….Second, if the long arm statute applies, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." *Astro Aluminum Treating Co., Inc. v. Inter*

5

*Contal, Inc.,* 296 So.3d 462, 464 (Fla. 4th DCA 2020) (internal citations and quotations omitted); *see also Southern Wall Products, Inc. v. Bolin,* 251 So.3d 935,  938 (Fla. 4th DCA 2018) (same).

Personal jurisdiction may be established by demonstrating either "general" or "specific" personal jurisdiction over the party defendant. *See, e.g., White v. Pepsico, Inc.,* 568 So. 2d 886, 888, n. 3 (Fla. 1990) ("General jurisdiction is to be distinguished from "specific jurisdiction," which occurs "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.") (internal citations and quotations omitted).

The plaintiff has the burden of alleging facts adequate to demonstrate personal jurisdiction. If the plaintiff's allegations are sufficient, the defendant may then make an evidentiary challenge rebutting those allegations, at which point the burden shifts back to the plaintiff to provide an evidentiary case supporting the exercise of jurisdiction. *See Astro Aluminum Treating Co.,* 296 So.3d at 464 ("If the complaint contains sufficient allegations to establish long-arm jurisdiction, and the defendant wishes to challenge that jurisdiction, then the defendant must file an affidavit rebutting the allegations that support jurisdiction…Then the burden shifts back to the plaintiff to file an affidavit in support of personal jurisdiction….If the facts contained within the affidavits can be harmonized, the trial court can render a decision based on the affidavits….If the facts within the affidavits conflict, then the trial court must conduct an evidentiary hearing to resolve the issue.") (internal citations and quotations omitted); *see also Southern Wall Products, Inc.,* 251 So.3d at 938-39 (same).

Here, Plaintiff alleges only conclusory, bare-bones allegations of jurisdiction with respect to Gauge. While not entirely clear, it appears that Plaintiff contends jurisdiction is purportedly grounded on Gauge's alleged business activities in the state of Florida. Specifically, Plaintiff alleges: (1) "[t]his Court has personal jurisdiction over Gauge pursuant to Florida's long-arm

6

statute, § 48.193, Fla. Stat. and the exercise of jurisdiction comports with due process" (Complaint, ¶ 12); and (2) "Upon information and belief, Gauge purposefully conducted business in Florida by soliciting FPC for the sale and subsequent re-purchase of the subject Vehicle, and a substantial part of the events or omissions giving rise to the claim occurred in the State of Florida." (Complaint, ¶ 13).

These allegations are insufficient to ground personal jurisdiction over Gauge in Florida. As an initial matter, it is clear Plaintiff failed to allege (let alone prove) any cognizable basis for general jurisdiction over Gauge based upon its alleged business activities in Florida as Plaintiff failed to sufficiently allege facts demonstrating Gauge's "continuous and systematic general business contacts" in the state. *See JG Contracting Co., Inc. v. Tower Innovations Distribution, LLC,* 333 So.3d 1139, 1142 (Fla. 4th DCA 2022) ("General jurisdiction requires sufficient facts showing substantial and non-isolated activity within the State as established by section 48.193(2)…The standard for an exercise of general personal jurisdiction is a much higher standard [than for specific jurisdiction]….The court must find that the defendant's contacts with the forum represent continuous and systematic general business contacts.") (internal citations and quotations omitted).

And even if Plaintiff had alleged such "continuous and systematic [general business] contacts" (it has not), the evidentiary record demonstrates that, in fact, Gauge has no such contacts. Indeed, the declaration of Gauge principal Josh Hirahara, attached hereto, demonstrates, *inter alia,* that Gauge: (1) has exceptionally limited ties to the state of Florida; (2) has no office in Florida; (3) has no employees in Florida; (4) has no agents in Florida; (5) has no Florida business license; (6) has less than one percent (1%) of its revenue generated from Florida clients; and (7) has the vast majority of its business take place in Utah. *See* Hirahara Decl., at ¶¶ 19-25. Plainly, Gauge

lacks the "continuous and systematic general business contacts" required to demonstrate general jurisdiction over Gauge in Florida. *See JG Contracting Co., Inc.,* 333 So.3d at 1142 ("continuous and systematic general business contacts" required). This Court lacks general personal jurisdiction over Gauge.

Nor does this Court possess specific personal jurisdiction over Gauge under the business activity prong of the Florida Long-Arm Statute. Pursuant to Section 48.193(1)(a)(1), Florida has jurisdiction over a person "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Crucially, however, jurisdiction under this prong attaches if, and only if, the specific cause of action **arises from** the specified business activity. Fla. Stat. § 48.193(1)(a); *see also Wells Fargo Equipment Finance, Inc. v. Bacjet, LLC,* 221 So. 3d 671, 675 (Fla. 4th DCA 2017) ("The non-resident defendant's actions fall within the statute if it does one of the enumerated acts and **the plaintiff's claim 'arose from' that act**….") (emphasis added). Here, none of Plaintiff's claims against Gauge "arise from" any activity that **Gauge** undertook in Florida.

Plaintiff brings the following claims against Gauge: (1) Declaratory Relief (Count I); (2) Replevin (Count II); (3) Conversion (Count III); (4) Unjust Enrichment (Count IV); and (5) Trespass of Chattels (Count VI). All of these claims require proof that Gauge somehow wrongfully acquired and possessed the Vehicle. Indeed, a claim for replevin requires that plaintiff demonstrate that "the property is wrongfully detained by the defendant…" Fla. Stat. § 78.055(3); conversion requires "an unauthorized  act which deprives another of his property permanently or for an indefinite time" *Bland v. United States,* Case No. 6:18-cv-1912-Orl-40LRH, 2019 WL 13215052, *3 (M.D. Fla. June 14, 2019) (internal citations and quotations omitted); unjust enrichment requires that "defendant voluntarily accepts and retains the benefit conferred" on the defendant

(*Hillman Const. Corp. v. Wainer,* 636 So.2d 576, 577 (Fla. 4th DCA 1994); and trespass to chattels requires "the intentional use of, or interference with, a chattel…" *Bland,* 2019 WL 13215052, at *3. Plaintiff's "declaratory relief" claim is similarly premised on Gauge's alleged wrongful acquisition of title and possession of the Vehicle (*see* Complaint, ¶ 42).

In sum, all of Plaintiff's claims are based upon Gauge's alleged acts of wrongfully "detaining," "possessing," "retaining," or "interfering" with the Vehicle. But **all of Gauge's actions in acquiring and possessing the Vehicle took place outside of Florida**. Indeed, Gauge, a Utah corporation, purchased the New York-registered Vehicle in New York, obtained New York title to the Vehicle, and took possession of the Vehicle in New York. *See* Hirahara Decl., at ¶ 9. Consequently, any of Gauge's actions that could possibly make it liable on any of Plaintiff's claims occurred in New York, not Florida. Stated differently, none of Plaintiff's claims "arose from" Gauge's actions in Florida. *See Wells Fargo Equipment Finance, Inc.,* 221 So. 3d at 675 ("For a plaintiff's claim to arise from the defendant's actions, there must be a 'direct affiliation, nexus, or substantial connection' between the basis for the plaintiff's claim and the defendant's activity in the state.") (internal citations and quotations omitted). As a result, this Court lacks specific personal jurisdiction over Gauge in Florida. *Wells Fargo Equipment Finance,* 221 So. 3d at 675 (Plaintiff's claims must "arise from" defendant's actions in Florida).[2]

Indeed, exercising jurisdiction over Gauge in this case would violate Gauge's due process rights, as Gauge could not possibly "reasonably anticipate" that purchasing and taking possession of a New York-registered vehicle in New York would cause it to be "haled into court" in Florida. *See, e.g., Corporacion Aero Angeles, S.A. v. Fernandez,* 69 So.3d 295, 299 (Fla. 4th DCA 2011)

---

[2] It is wholly irrelevant that Gauge subsequently sold the Vehicle to a Florida company (and later reacquired the same), as Gauge's sale to a third-party fails to give rise to any of Plaintiff's enumerated claims against Gauge.

("to satisfy the minimum contacts requirement for purposes of personal jurisdiction a defendant's contacts (1) must be related to the plaintiff's cause of action or have given rise to it, (2) must involve some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum, and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.") (emphasis added). This Court lacks personal jurisdiction over Gauge.

## II.    This Second-Filed Action Should Be Stayed Until The Conclusion Of The First-Filed Utah Litigation

"As a matter of comity, a Florida court has discretion to stay a proceeding pending before it on the grounds that a case involving the same subject matter and parties is pending in the court of another state."[3] *Toth v. Toth,* 359 So. 3d 352, 353 (Fla. 4th DCA 2023) (internal citations and quotations omitted). Crucially, the court ***must*** stay the second-field action absent "extraordinary circumstances." *Toth,* 359 So. 3d at 353 ("Absent extraordinary circumstances, a trial court abuses its discretion when it fails to respect the principle of priority," and stay a pending proceeding before it in favor of an earlier-filed action.) (internal citations and quotations omitted).

Here, it is not, and cannot be, disputed that the instant case filed on August 8, 2025—**after** the case filed by Gauge in Utah on August 6, 2025, rendering this case the Second-Filed Action. Consequently, the only remaining question is "whether the second-filed action is sufficiently similar in parties and issues as to be unnecessarily duplicative of the prior-filed proceeding." *Toth,* 359 So. 3d at 354.

Here, the answer to that question is a resounding "yes." Both cases deal with a single, identical, overarching question: who owns the Vehicle? Indeed, Gauge explicitly asks the Utah

---

[3] The same rule applies to cases "pending concurrently in a federal court and a state court…." *Inphynet Contracting Servs., Inc. v. R.V. Matthews III,* 196 So.3d 449, 464 (Fla. 4th DCA 2016) (internal citations and quotations omitted).

court to answer that question in its claims for declaratory judgment and quiet title.[4] And deciding that question will not only resolve Gauge's declaratory judgment and quiet title claims (as well as Gauge's remaining claims premised on Gauge's rightful ownership of the Vehicle), but will resolve Plaintiff's claims in the instant suit for declaratory relief.

Indeed, Plaintiff's declaratory relief claim seeks a declaration that "Plaintiff is the Vehicle's rightful owner and lienholder"[5]—asking the very same question Gauge raises in the Utah Action, i.e., who owns the Vehicle? Moreover, all of Plaintiff's claims against Gauge and JR in this action—for replevin, conversion, unjust enrichment and trespass of chattels—turn on whether Gauge or JR wrongfully "detained," "possessed," "retained," or "interfered" with the Vehicle,[6] which ultimately depends upon whether Gauge's purchase of the Vehicle vested legitimate title to the Rolls-Royce in Gauge.

Plaintiff also invoked the Utah Court's jurisdiction, filing a counterclaim therein asserting essentially the same causes of action against Gauge as its Complaint in the instant action. Moreover, Plaintiff seeks preliminary relief in the Utah Court. Plaintiff filed a motion for a temporary restraining order, a preliminary injunction, and for expedited discovery. Plaintiff also sought the alternative relief of attachment. In that motion, Plaintiff asked that the proceeds of any sale of the Vehicle be deposited in a Utah bank account.

---

[4] *See* Ex. B., ¶¶ 12-20.
[5] Complaint, p. 8.
[6] A claim for replevin requires that plaintiff demonstrate that "the property is wrongfully detained by the defendant…" Fla. Stat. § 78.055(3); conversion requires "an unauthorized  act which deprives another of his property permanently or for an indefinite time" *Bland,* 2019 WL 13215052, at *3 (internal citations and quotations omitted); unjust enrichment requires that "defendant voluntarily accepts and retains the benefit conferred" on the defendant (*Hillman Const. Corp.,* 636 So.2d at 577; and trespass to chattels requires "the intentional use of, or interference with, a chattel…" *Bland,* 2019 WL 13215052, at *3.

11

In sum, "the two actions involve a single set of facts [the particulars of Gauge's purchase of the Vehicle] and…resolution of the [earlier-filed, Utah] case will resolve many of the issues involved in the subsequently filed case." *Toth,* 359 So. 3d at 354. For this reason, the Second-Filed Action should be stayed pending resolution of the First-Filed Utah Action. *See Toth,* 359 So. 3d at 354) ("to justify a stay of the second-filed action…it is sufficient that the two actions involve a single set of facts and that resolution of the [earlier-filed] case will resolve many of the issues involved in the subsequently filed case," such causes of action need not be identical) (internal citations and quotations omitted); *see also Inphynet Contracting Servs., Inc.,* 196 So.3d at 464 ("Florida law is clear that "the causes of action do not have to be identical" to require a stay of the second-filed action.").

As discussed above, the primary issue in this case is who owns the Vehicle? Thus, Gauge and FSVT are the two essential parties in this litigation and both are already in each of the two actions. In the instant case, FSVT is the Plaintiff with Gauge a party defendant. In the Utah case, Gauge serves as the Plaintiff, with FSVT as a party defendant.[7]

While the Second-Filed Action contains additional party defendants not present in the First-Filed Action, lack of complete identity fails to justify denying a stay. *See Toth,* 359 So. 3d at 354 ("the principle of priority does not 'require an absolute identity of parties between the two actions' to justify entering a stay….."). On the contrary, in seeking a stay, "it is sufficient that the two actions involve a single set of facts and that resolution of the [earlier-filed] case will resolve many of the issues involved in the subsequently filed case.") (internal citations and quotations omitted); *see also Sorena v. Gerald J. Tobin, P.A.,* 47 So.3d 875, 878 (Fla. 3d DCA 2010) ("Complete identity of the parties and claims is not required [in applying the principle of priority to a motion

---

[7] *See generally,* Ex. B.

to stay].”); *see also Ricigliano v. Peat, Marwick, Main & Co*., 585 So.2d 387, 387 (Fla. 4th DCA 1991) (holding that it is within a trial court's discretion to grant stay in subsequently filed state action where the allegations in previously filed federal action are the same, notwithstanding a disparity in the parties to the two actions).

As discussed above, resolution for the First-Filed Action would be dispositive of many of the issues of the instant, Second-Filed Action. Consequently, this action should be stayed despite the lack of complete identity between the parties. *See REWJB Gas Invests. V. Land O'Sun Realty, Ltd.,* 645 So. 2d 1055, 1056 (Fla. 4th DCA 1994) (reversing the denial of a stay despite the fact there was not a "complete identity of parties," where there was a "common contract interpretation issue" that would be dispositive of both related actions and "it would not be in the interest of judicial economy to have more than one court make the same decision").

Moreover, a stay of the Second-Filed Action is urgently needed to both avoid duplicative proceedings, and—more importantly—to avoid the risk of inconsistent judgments. *See Inphynet Contracting Servs.,* 196 So. 3d at 464 ("The rationale for the application of the principle of priority, as a matter of comity, is the avoidance of wasting judicial resources in duplicative and unnecessary proceedings and the risk of inconsistent judgments regarding the application of law to the same factual dispute.").

Here, the risk of inconsistent judgment is especially acute as both actions center around the same, single, dispositive issue: who owns the Vehicle? If the Utah Court holds that Gauge possesses superior title and this Court holds the opposite (or vice-versa), the result would be two court rulings in direct opposition to each other. This is yet another reason to order the Second-Filed Action stayed pending resolution of the Utah litigation. In fact, staying the Second-Filed Action is ***required*** where, as here, opting not to stay the later-filed action could result in two

competing judgments. *See, e.g., Robeson v. Melton,* 52 So. 3d 676, 679 (Fla. 4th DCA 2009) (holding that the trial court abused its discretion in not granting a stay where two duplicative proceedings could result in the possibility of inconsistent results).

### III.    Alternatively, The Court Should Dismiss This Action On Grounds Of Forum Non Conveniens

Under Fla. R. Civ. P. 1.061(a), "[a]n action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when: (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties; (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice; (3) if the balance of private interest is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and (4) the trial judge ensure that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice." Fla. R. Civ. P. 1.061(a); *see also Kinney System, Inc. v. Continental Ins. Co.,* 674 So.2d 86, 90 (Fla. 1996) (same). "The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court." Fla. R. Civ. P. 1.061(a). An order dismissing a case on forum non conveniens grounds must be supported by record evidence. *Poliandro v. Springer,* 899 So.2d 441, 444 (Fla. 4th DCA 2005).

In the instant case, the four factors favor dismissal. The first factor is generally satisfied "when the defendant is 'amenable to process' in the other jurisdiction." *Kinney,* 674 So.2d at 90. Here, the primary defendant in this litigation—Gauge—has already brought an action in Utah, leaving no doubt that it is subject to process in the alternative forum (Utah). Similarly, FSVT is

already a defendant in the Utah action.[8] In sum, the primary parties are subject to jurisdiction in the alternative forum (Utah).

The second, "private interest" factor "concerns: adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation." *Kinney,* 674 So. 2d at 90. Here, Gauge's business records and witnesses relevant to the case all reside or are located in Utah, making it considerably more convenient for Gauge to litigate in Utah. *See* Hirahara Decl., ¶¶ 26-27. While FSVT is a Florida company, it is already engaged in the Utah litigation. If this case is dismissed, FSVT would have to litigate only in Utah. But if this case is not dismissed, FSVT would have to continue litigating on two fronts. Consequently, it would be less costly, and hence more convenient for FSVT if this Court were to dismiss this case, obligating FSVT to litigate only the single Utah action.[9] The "private interest" factor favors dismissal.

The third factor only comes into play where the private interests are "near equipoise" and "focuses on 'whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.'" *Kinney,* 674 So. 2d at 92 (internal quotations and citations omitted). Here, the private interests overwhelmingly favor Utah, so this factor does not come into play; however; Utah certainly has an interest adjudicating a case involving a Utah-based corporation.

"The fourth and final level of analysis is designed to ensure that when a forum non conveniens dismissal is granted, the remedy potentially available in the alternative forum does not

---

[8] *See generally,* Ex. B.
[9] "While choice of venue is an important consideration, the trial court must balance this choice against the convenience of all the parties and the witnesses…." *E.I. DuPont De Nemours & Co. v. Fuzzell,* 681 So. 2d 1195, 1197 (Fla. 2nd DCA 1996).

become illusory." *Kinney,* 674 So. 2d at 92. Here, there is no argument that the federal district court of Utah is not competent, or not capable of fashioning a legitimate remedy. In sum, all of the factors favor Gauge, and this case should be dismissed on grounds of forum non conveniens.

## CONCLUSION

For all of the above-stated reasons, Defendants respectfully request that this Court GRANT Defendants' motion to (1) dismiss Gauge as a party defendant for lack of personal jurisdiction; (2) stay this case until the conclusion of the First-Filed Utah Action; or (3) in the alternative, dismiss this case on grounds of forum non conveniens.

DATED: October 14, 2025.

By*: /s/ Alexander A. Salinas*
Alexander A. Salinas

**TA PLLC**
1001 Brickell Bay Drive, Suite 1812
Miami, Florida 33131
Telephone: (305) 400-7995
asalinas@tapllc.com

*Attorneys for Defendants JR Auto Collection, LLC, d/b/a Florida Performance Cars, and Gauge Automotive, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I caused a true and correct copy of the foregoing to be served upon all parties who have appeared in this case through the Courts' electronic filing system.

*/s/ Alexander A. Salinas*
Alexander A. Salinas

# EXHIBIT A

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

| | |
|---|---|
| FINANCIAL SERVICES VEHICLE TRUST, by and through its servicer, ROLLS-ROYCE MOTOR CARS FINANCIAL SERVICES, NA, LLC, a division of BMW FINANCIAL SERVICES NA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JR AUTO COLLECTION, LLC d/b/a FLORIDA PERFORMANCE CARS, GAUGE AUTOMOTIVE, INC., BLACKFIRE TRANSPORT, LLC, ALFRED DAVIS, and FLORIDA HIGHWAY SAFETY AND MOTOR VEHICLES,<br><br>Defendants. | Case No. 50-2025-CA-008048-XXXAMB |

<u>**DECLARATION OF JOSH HIRAHARA**</u>

I, Josh Hirahara, declare as follows:

1.   I am over 18 years of age. Unless otherwise stated, I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify competently to these facts.

2.   I am the founder and CEO of Gauge Automotive, Inc. ("Gauge").

3.   On or about March 4, 2025, Gauge purchased a 2023 Rolls-Royce Cullinan Vehicle (VIN SLATV8C0XPU216487) (the "Vehicle") from Steven J. Calderon, paying the full and fair market price for the Vehicle of over $300,000.

4.   Gauge purchased the Vehicle in New York.

1

5.      Gauge had no contact with FSVT in Florida or elsewhere regarding the purchase of the Vehicle.

6.      Upon consummating the transaction, Gauge obtained Calderon's New York Title for the Vehicle—issued on or about August, 2024—which Gauge had every reason to believe constituted valid title free and clear of any encumbrances whatsoever.

7.      Indeed, before purchasing the Vehicle, Gauge carefully analyzed the Vehicle's title history and documentation, which listed Mr. Calderon as the owner and showed no liens or encumbrances whatsoever.

8.      Moreover, the New York title and documentation had every indicia of constituting legitimate, New York-issued title (as opposed to fraudulently printed or forged New York title).

9.      Relying on Calderon's clean title bearing all indicia of legitimacy, and having no knowledge of (or any reason to suspect) any clouds to said title, Gauge purchased the Vehicle from Calderon. Gauge, a Utah Corporation, purchased the New York-registered Vehicle form Calderon in New York.

10.     In consummating the transaction, Gauge obtained Calderon's New York-issued title to the Vehicle and took possession of the Vehicle in New York.

11.     Gauge subsequently sold the Vehicle to JR Auto Collection, LLC, d/b/a Florida Performance Cars ("JR"), providing its (apparently) clean New York title to the Vehicle to JR.

12.     JR took possession of the Vehicle in New York.

13.     Gauge subsequently agreed to rescind the sale of the Vehicle to JR, to take back possession and title to the Vehicle from JR.

14.     JR has no current ownership interest therein.

15.     Gauge subsequently became aware of allegations that Steven Calderon obtained clean New York title by fraud.

16.     Wanting to remove the cloud of title over the Vehicle it purchased in good faith (and without fault), Gauge decided to allow a competent court to ultimately determine ownership of the Vehicle.

17.     Towards that end, on August 6, 2025 Gauge brought an action against FSVT in the Third District Court of Salt Lake County, in Utah, bringing claims for declaratory judgment, quiet title, injunctive relief, and tortious interference with property rights (the "First-Filed Action").

18.     *After* Gauge filed this suit, FSVT subsequently brought the instant case (the "Second-Filed Action") in the state of Florida.

19.     Gauge has exceptionally limited ties to the state of Florida.

20.     Gauge has no office in Florida.

21.     Gauge has no employees in Florida.

22.     Gauge has no agents in Florida.

23.     Gauge does not possess a Florida business license.

24.     Less than one percent (1%) of Gauge's overall revenue is generated from Florida clients.

25.     The vast majority of Gauge's business takes place in Utah.

26.     Gauge's business records related to the sale of the Vehicle are located in Utah.

27.    Gauge's employees with knowledge of the dispute are located in Utah.

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.

DATED this ___14th___ day of October 2025.

_____
Josh Hirahara

# EXHIBIT B

Chad Pehrson (Bar No. 12622)
Bryan B. Todd (Bar No. 19099)
**KBA**
50 W. Broadway 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@kba.law
btodd@kba.law

*Attorneys for Plaintiffs*

---

## IN THE THIRD DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC; FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. _____ <br><br> Judge: _____ <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Gauge Automotive, Inc. ("**Gauge**"), by and through its undersigned counsel, complains of Defendants and alleges as follows:

### PARTIES

1.      Gauge Automotive, Inc. is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah. Gauge is in the business of buying and selling automobiles, including high-end luxury vehicles. Gauge currently owns and possesses a certain 2023 Rolls-Royce Cullinan motor vehicle, VIN SLATV8C0XPU216487 (the "**Vehicle**").

1

2.      Defendant BMW Financial Services NA, LLC ("**BMW FS**") is a Delaware limited liability company authorized to do business in Utah, and it regularly conducts business in Utah by financing and leasing vehicles to Utah consumers. Upon information and belief, BMW FS acts as servicer for Defendant Financial Services Vehicle Trust (the "**Trust**"), a statutory trust which is the titled owner/lessor of vehicles leased through BMW FS's programs. BMW FS and/or the Trust claim an adverse interest in the Vehicle, as described below. BMW FS and/or the Trust also had a direct relationship with an individual associated with what they assert to be fraud in connection with the Vehicle.

3.      This Court has subject-matter jurisdiction over this action under Utah Code § 78A-5-102, which grants Utah district courts general jurisdiction in civil matters. The Court also has authority to grant the declaratory and equitable relief sought herein pursuant to Utah Code §§ 78B-6-401 et seq. (Declaratory Judgments Act) and 78B-6-1301 et seq. (Quiet Title Act).

4.      This Court has personal jurisdiction over BMW FS because BMW FS regularly conducts business in the State of Utah and has purposefully availed itself of the Utah market. BMW FS finances and leases vehicles in Utah and derives economic benefit from its activities in Utah. Moreover, this action concerns a Utah plaintiff and a vehicle now situated in Utah, and BMW FS has asserted claims to that vehicle and directed conduct toward Utah to enforce those claims. Exercise of jurisdiction over the Defendants is thus consistent with due process and Utah's long-arm statute.

5.      Venue is proper in the Third Judicial District (Salt Lake County) under Utah Code § 78B-3-307, because the subject of the action is situated in this county and a substantial part of the events or omissions giving rise to the claim occurred in this county. Gauge's principal place

2

of business is in Salt Lake County, the Vehicle is or will be located in Salt Lake County, and Defendants' interference with Gauge's rights has caused harm in Salt Lake County.

## FACTUAL BACKGROUND

6. In or about March 2025, Gauge purchased the 2023 Rolls-Royce Cullinan Vehicle (VIN SLATV8C0XPU216487) from an individual named Steven J. Calderon. Gauge paid full and fair market value for the Vehicle. At the time of purchase, Gauge reviewed the Vehicle's title history and documentation. Mr. Calderon furnished a New York State Certificate of Title for the Vehicle, issued in or about August 2024, which listed Mr. Calderon as the owner and showed no liens or encumbrances on the Vehicle. Relying on this clean title and the absence of any disclosed lien, Gauge purchased the Vehicle in good faith, without notice of any adverse claim. Gauge had no knowledge of any other party's ownership or security interest in the Vehicle, and in fact believed, based on official state title records, that none existed. Gauge promptly took possession of the Vehicle following the purchase.

7. After Gauge's purchase, BMW FS contacted third parties asserting that BMW FS has an interest in or claim to the Vehicle. Specifically, BMW FS has alleged, in substance, that the Vehicle had been previously financed or leased through BMW FS and that BMW FS's interest was not reflected on the title due to a fraudulent retitling in New York. BMW FS claims that either: (a) BMW FS (through the Trust) is the true owner of the Vehicle as lessor in an unresolved lease, or (b) BMW FS holds a security interest (lien) in the Vehicle as the financer of a purchase, which lien was not properly recorded on the New York title. In either case, BMW FS contends that the New York title obtained in August 2024 was procured by fraud and that BMW FS's rights were not extinguished despite the clean title. Gauge is informed and believes that

prior to the New York title issuance, the Vehicle was subject to a BMW FS lease or loan, but the

party in possession of the Vehicle (through fraud or omission) managed to obtain a new title in

New York that did not list BMW FS's interest. Gauge was never aware of any such putative

circumstances until notification from BMW FS.

8.    To the extent BMW FS's claim is based on an alleged security interest (lien) from

a prior financing, BMW FS failed to perfect or preserve that interest on the Vehicle's New York

title. Under New York's Vehicle and Traffic Law and the Uniform Commercial Code, an out-of-

state lienholder's security interest must be reflected on the certificate of title or otherwise re-

perfected in New York within a specified period in order to remain effective. The New York

Certificate of Title issued in August 2024 for the Vehicle showed no lienholder name, indicating

that BMW FS's lien was not carried forward onto the new title. From the date of issuance of the

New York title, any previously perfected security interest of BMW FS in another state would

remain temporarily perfected for at most four months, absent further action. BMW FS did not

file any New York lien notice or take other steps to re-perfect its interest within the four-month

grace period after the August 2024 title issuance. Accordingly, by operation of law, any security

interest BMW FS may have once had in the Vehicle became unperfected and is deemed never to

have been perfected as against a purchaser of the Vehicle for value after that period elapsed. In

other words, as of December 2024 (four months post-issuance of the New York title), BMW

FS's alleged lien was extinguished or ineffective against innocent purchasers. Gauge's

acquisition in March 2025 occurred well after this period, and Gauge acquired the Vehicle free

and clear of any unperfected lien. Gauge had no knowledge of any BMW FS lien, and even if

BMW FS were to claim an unperfected lien, under the Uniform Commercial Code an

unperfected security interest is subordinate to the rights of a buyer who gives value and takes

delivery without knowledge of the interest

9.      Alternatively, to the extent BMW FS contends that it (or the Trust) was the true

owner of the Vehicle as a lessor (for example, if the Vehicle was subject to a lease that was never

paid off), BMW FS failed to act promptly or reasonably to protect its ownership interest once the

Vehicle was wrongfully retitled out of its name. BMW FS and the Trust entrusted the Vehicle to

their lessee or customer and allowed that person to have possession and apparent incidents of

ownership (such as the vehicle itself and possibly documents) such that the person was able to

obtain a new certificate of title in New York. By the time Gauge purchased the Vehicle,

approximately seven months had passed since the New York title was issued. Yet BMW FS,

despite presumably discovering the fraudulent retitling, did not timely reclaim the Vehicle or

alert law enforcement or motor vehicle authorities in a way that would have prevented an

innocent purchaser from buying it. BMW FS's inaction and delay enabled the wrongdoer to pass

themselves off as the legitimate owner. Gauge, as a bona fide purchaser for value without notice,

acquired superior rights in the Vehicle.  Here, any claim by BMW FS that the Vehicle was

obtained through fraudulent means by the seller does not defeat Gauge's ownership, because the

law protects bona fide purchasers in such circumstances. Moreover, having failed to promptly

assert its ownership claim and allowing the fraud to remain undetected for an extended period,

BMW FS is equitably estopped from asserting ownership against Gauge now. Between two

innocent parties – BMW FS, which inadvertently allowed the Vehicle to enter the stream of

commerce under false pretenses, and Gauge, which paid value in good faith – the law and equity

favor protecting Gauge's ownership rights.

10.    BMW FS's Interference and Threats: After Gauge acquired the Vehicle, BMW FS undertook self-help measures that interfered with Gauge's rights. Upon information and belief, BMW FS contacted third parties in an effort to locate and seize the Vehicle, despite Gauge's lawful ownership and possession. For example, BMW FS (directly or through agents) contacted a third-party automotive dealer, Florida Performance Cars, in or about mid-2025, and represented that BMW FS had a claim to the Vehicle. BMW FS demanded or encouraged that this third party surrender the Vehicle to BMW FS or otherwise assist in repossessing it. BMW FS made similar communications to other persons or entities it believed might have access to the Vehicle. These actions were taken without any court order and were based on BMW FS's unilateral claim of right. In doing so, BMW FS sought to induce third parties to interfere with Gauge's possession and use of the Vehicle. BMW FS's conduct created a cloud on Gauge's title and substantial concern for Gauge, as third parties (including dealers or potential buyers) were being told that the Vehicle was subject to a hidden claim. BMW FS's actions have disrupted Gauge's ability to enjoy, utilize, or resell the Vehicle and have caused reputational and business harm to Gauge. Gauge has been forced to initiate this litigation to quiet its title and protect its rights as a result of BMW FS's conduct.

11.    Summary of Gauge's Position: In summary, Gauge is an innocent purchaser who obtained the Vehicle free and clear of any BMW FS interest because: (a) any security interest BMW FS once held was lost or extinguished by BMW FS's failure to perfect or re-perfect it in a timely manner, and/or (b) any ownership interest BMW FS had as lessor cannot now be asserted against Gauge due to BMW FS's own lack of diligence and the protection afforded to good faith purchasers. Gauge's ownership is evidenced by a valid Title (the New York certificate of title

naming Gauge's predecessor with no liens, which title is in the process of being updated to
reflect Gauge's name or has been submitted to Utah DMV for a Utah title). Gauge therefore
seeks relief from this Court to declare and quiet title in its favor, and to stop BMW FS from any
further interference with Gauge's rights.

## FIRST CAUSE OF ACTION

### Declaratory Judgment (Rightful Ownership of Vehicle)

12.    Gauge re-alleges and incorporates by reference all preceding paragraphs as
though fully set forth herein.

13.    An actual, present and justiciable controversy has arisen between Gauge and
Defendants regarding the ownership of and title to the Vehicle. Gauge contends that it is the sole
rightful owner of the Vehicle, free and clear of any interest, lien, or claim of BMW FS or the
Trust. Defendants, on the other hand, assert that they have a continuing interest in or right to the
Vehicle (either as a secured creditor or as the lessor/owner). These conflicting claims present a
concrete dispute appropriate for declaratory relief.

14.    Gauge's Rightful Ownership – No Valid Lien: To the extent BMW FS claims a
security interest, Gauge seeks a declaration that no valid or enforceable security interest of BMW
FS encumbers the Vehicle. Under the Uniform Commercial Code and New York law, BMW
FS's failure to timely re-perfect any prior lien on the Vehicle after the issuance of the New York
title in August 2024 resulted in the lapse and termination of any such lien as against purchasers
for value  As a purchaser for value without notice, Gauge takes the Vehicle free of any
unperfected or lapsed security interest. Accordingly, BMW FS has no enforceable lien or
security interest on the Vehicle, and any purported lien is extinguished by operation of law.

15.     Gauge's Rightful Ownership – No Superior Title: To the extent BMW FS or the Trust claims ownership or title by virtue of being the Vehicle's lessor or titled owner prior to the fraudulent retitling, Gauge seeks a declaration that BMW FS/Trust's title or ownership interest is subordinate to – and cut off by – Gauge's ownership. Gauge is a bona fide purchaser for value who acquired the Vehicle in good faith and without notice of any adverse claim. Even if the Vehicle was wrongfully obtained or sold by someone who was not true owner, that person at least had voidable title and thus the power to transfer good title to Gauge, a good faith purchaser.

Furthermore, by allowing its lessee or agent to possess the Vehicle and failing to prevent the fraudulent change of title, BMW FS effectively enabled the transfer of apparent ownership to innocent third parties; BMW FS is now estopped from asserting a superior claim against Gauge. Equity and Utah law do not permit BMW FS to reclaim the Vehicle from an innocent buyer under these circumstances.

16.     Declaratory Relief: Pursuant to Utah Code § 78B-6-401 et seq., and Utah Rule of Civil Procedure 57, Gauge is entitled to a declaratory judgment determining the parties' respective rights in the Vehicle. Gauge respectfully requests a declaratory judgment that Gauge is the lawful owner of the 2023 Rolls-Royce Cullinan (VIN SLATV8C0XPU216487), and that Defendants have no right, title, lien, or interest in the Vehicle. Such a declaration will resolve the uncertainty and controversy giving rise to this action and will guide the parties' conduct moving forward.

## SECOND CAUSE OF ACTION

### Quiet Title (Utah Code § 78B-6-1301 et seq.)

17. Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth

herein.

18.     This is an action to quiet title to personal property (the Vehicle) under Utah's Quiet Title statute. Utah law permits an action against another person to determine rights, interests, or claims to or in personal or real property. Gauge asserts that it holds clear title to the Vehicle, whereas Defendants assert an adverse claim. Specifically, BMW FS/Trust claim some interest (either as lienholder or owner) adverse to Gauge's title. This adverse claim has not been reflected on any certificate of title since at least August 2024, yet BMW FS persists in asserting the claim to third parties and potentially to law enforcement.

19.     Gauge's interest in the Vehicle is superior to any interest of Defendants. Gauge acquired title from Mr. Calderon lawfully and for value, in reliance on an official title that showed no liens. Gauge's title is thus prima facie valid and superior to any hidden or unperfected interest BMW FS might claim. By contrast, Defendants' claim is based on a prior transaction that, due to Defendants' own lapses or the fraud of third parties, was not preserved in the public record or against purchasers. As detailed above, any BMW FS security interest was extinguished by law when not re-perfected, and any ownership interest as lessor cannot defeat Gauge's title given the protections for good faith purchasers.

20.     Gauge therefore seeks to quiet title to the Vehicle in its name. Gauge requests that the Court enter judgment quieting title to the 2023 Rolls-Royce Cullinan in Gauge, and declaring that Defendants have no estate, interest, lien, or claim whatsoever in the Vehicle. This includes an order that any purported lien of BMW FS is null and void, and that any claim of ownership by BMW FS or the Trust is invalid as against Gauge. Upon entry of judgment, Gauge's title to the Vehicle should be confirmed against all adverse claims, and Defendants should be forever barred

from asserting any right, title or interest in the Vehicle.

## THIRD CAUSE OF ACTION

### Injunctive Relief (Permanent Injunction)

21.      Incorporation of Allegations: Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

22.      Defendants' conduct has demonstrated that they are likely to continue attempting self-help repossession or interference with the Vehicle absent court intervention. BMW FS has contacted third parties and possibly law enforcement or repossession agents in an effort to seize or encumber the Vehicle, despite the ongoing dispute over ownership. Such actions pose a significant risk of irreparable harm to Gauge. The Vehicle is a unique chattel (being a high-end Rolls-Royce with particular characteristics and value), and loss of possession cannot be fully compensated by money damages alone. Additionally, wrongful seizure of the Vehicle would harm Gauge's business reputation and customer relationships. Gauge has no adequate remedy at law to prevent these harms, as any attempt by BMW FS to unilaterally repossess the Vehicle could occur suddenly and cause damage that a later money judgment would not undo.

23.      Gauge is likely to succeed on the merits of its claims. The facts, as alleged above, show that Gauge is the rightful owner and that BMW FS's contrary claims are without legal merit. Gauge has presented strong legal grounds under the UCC, Utah law, and New York law for its clear title. By contrast, Defendants have no valid perfected lien and no superior ownership right. Thus, Gauge has a high probability of prevailing in establishing its title free of Defendants' claims.

24. The balance of equities strongly favors Gauge. Absent an injunction, Gauge faces the

threat of losing possession of a vehicle it rightfully owns, or being forced into multiple jurisdictional fights if BMW FS tries to grab the car. An injunction merely preserves the status quo – with Gauge retaining possession – until the Court resolves the ownership dispute. BMW FS will not be harmed by refraining from self-help, as it can be made whole by money damages against the appropriate party if it ultimately proves some loss (e.g., against the fraudster who retitled the car) or by the return of the Vehicle if it somehow prevails here. Conversely, Gauge would suffer greatly without an injunction, as noted. The public interest favors injunction as well: Utah has a strong interest in preventing breaches of the peace and protecting property rights through proper judicial process rather than self-help. Granting an injunction prevents a potentially wrongful repossession and upholds the integrity of the legal process in resolving title disputes.

25.     Accordingly, Gauge seeks a permanent injunction prohibiting Defendants (and their officers, agents, employees, attorneys, and those in active concert with them) from undertaking any actions to repossess, seize, sell, assign, or otherwise interfere with Gauge's possession, use, or title to the Vehicle during the pendency of this action, and thereafter to make such injunction permanent upon Gauge's prevailing. Gauge specifically requests that Defendants be enjoined from contacting any third parties (such as automobile dealers, auctions, storage facilities, or law enforcement) to falsely claim that Defendants have a right to the Vehicle or to induce or pressure such third parties to turn over the Vehicle. Gauge requests that, upon final judgment, the injunction be made permanent to enjoin any future interference with Gauge's quiet enjoyment and ownership of the Vehicle.

## FOURTH CAUSE OF ACTION:

### Tortious Interference with Property Rights

26.     Gauge re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

27.     Gauge has valid possessory and ownership rights in the Vehicle, including the right to exclusive use, enjoyment, and disposition of the Vehicle. Defendants were aware that Gauge claimed ownership and possessed the Vehicle (or at least that some party other than BMW FS was in possession under a claim of title), especially once Gauge purchased it and when BMW FS was informed of Gauge's purchase and the clean title issuance. BMW FS knew that Gauge and/or its agents or partners (such as dealers) were asserting rights to the Vehicle inconsistent with BMW FS's alleged interest.

28.     Despite this knowledge, Defendants intentionally and improperly interfered with Gauge's property rights. BMW FS engaged in a campaign of contacting third parties, including but not limited to Florida Performance Cars (a dealership/broker that had involvement with the Vehicle), and possibly auction houses or other dealers, falsely asserting that BMW FS had the right to take or demand the Vehicle. BMW FS's representatives instructed or pressured these third parties to relinquish the Vehicle or to assist BMW FS in recovering it from Gauge's possession. This conduct was designed to disrupt Gauge's ownership and possession, by turning third parties against Gauge or inducing third parties to breach any arrangements with Gauge (for example, a consignment or sales arrangement) out of fear that the Vehicle was stolen or encumbered.

29.     Defendants' interference was wrongful and without justification. BMW FS had no

legal right to possession at the time – no court order, no perfected lien, and no consent from Gauge. Any belief by BMW FS in its claim does not privilege the act of circumventing the judicial process and spreading false or misleading information about Gauge's title. In fact, BMW FS's claim to the Vehicle was legally untenable given the lapse of its lien and the transfer of ownership to a bona fide purchaser. Thus, BMW FS had no proper basis to involve third parties or to demand the Vehicle outside of a court adjudication. The manner of interference – contacting unrelated third parties and portraying the Vehicle as subject to BMW FS's ownership – was inherently damaging and done in bad faith, as it ignored Gauge's documented title rights.

30.    As a direct and proximate result of Defendants' intentional interference, Gauge has suffered and continues to suffer harm. BMW FS's actions have clouded Gauge's title and made it more difficult for Gauge to enjoy the benefits of ownership. For instance, BMW FS's communications to Florida Performance Cars and others caused confusion and concern about the Vehicle's title, impeding Gauge's ability to market or resell the Vehicle in the ordinary course of business. Gauge has had to expend time and resources to address the allegations and to secure the Vehicle. Furthermore, Gauge's business relationships and reputation have been damaged by the implication that it dealt in a vehicle with a putatively encumbered title. Gauge has also been forced to incur legal expenses and other costs to protect its rights. The interference by BMW FS was willful and malicious, or at minimum in reckless disregard of Gauge's rights, entitling Gauge to recover all actual damages proximately caused by such conduct, in an amount to be proven at trial. Gauge also seeks any appropriate punitive or exemplary damages to deter such conduct, given the egregious nature of attempting to wrongfully dispossess an innocent owner of property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gauge Automotive, Inc. respectfully prays for judgment in its favor and against Defendants, granting the following relief:

1.      A declaration that Gauge Automotive, Inc. is the lawful owner of the 2023 Rolls-Royce Cullinan, VIN SLATV8C0XPU216487, free and clear of any lien, ownership interest, or claim of the Defendants (whether BMW Financial Services NA, LLC, Financial Services Vehicle Trust, or any related entity), and that Defendants have no valid interest in or right to the Vehicle.

2.      An order quieting title to the Vehicle in Gauge's name pursuant to Utah Code § 78B-6-1301, et seq., and barring Defendants and all persons acting in concert with them or claiming under them from asserting any adverse claim to the Vehicle. The Court's quiet title decree should confirm Gauge's exclusive title and ownership and direct that any Utah state title (or other state's title) be issued or updated to reflect Gauge's interest with no liens or encumbrances of Defendants.

3.      A permanent injunction restraining Defendants, their agents, employees, officers, and all persons in active concert or participation with them from: (a) attempting to repossess or seize the Vehicle from Gauge's possession; (b) contacting or persuading any third party to surrender the Vehicle or to assert control over it on Defendants' behalf; (c) otherwise interfering with Gauge's quiet enjoyment, use, or disposition of the Vehicle. This injunctive relief to remain in effect during the pendency of the action (preliminary injunction), and to be made permanent upon entry of judgment in Gauge's favor.

4.      An award of compensatory damages against Defendants for the tortious

interference with Gauge's possessory and ownership rights, in an amount to be determined at trial, including but not limited to losses from delayed or thwarted sales, loss of use of the Vehicle, harm to business reputation, and costs incurred in securing the Vehicle and mitigating Defendants' interference. In addition, Gauge seeks an award of punitive damages in an amount sufficient to punish Defendants and deter similar conduct, due to the willful and malicious nature of Defendants' interference.

5.     An award of Gauge's costs of court and such other and further relief as the Court deems just and equitable in the circumstances.

DATED this 6th day of August, 2025.

Respectfully submitted,

**KBA**

*/s/Chad S. Pehrson*
Chad S. Pehrson
Bryan B. Todd

*Attorneys for Plaintiff*

15