CHAD PEHRSON (12622)
KBA
50 West Broadway
Salt Lake City, UT 84101
(801) 994-4646
CPEHRSON@KBA.LAW

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and <br><br> FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | PLAINTIFF GAUGE'S ANSWER TO BMW'S COUNTERCLAIMS <br><br> Case No. 2:25-cv-00792 <br><br> Judge Ann Marie McIff Allen <br><br> Jury Demanded |

Plaintiff/Counter-Defendant Gauge Automotive, Inc. ("Gauge"), by and through undersigned counsel, respectfully submits this Answer to Defendants' Counterclaims. Unless expressly admitted, all allegations in the Counterclaim are denied.

**Admissions and Denials**

1. **Paragraph 1:** Gauge admits that it is a Utah corporation with its principal place of business in Salt Lake County, Utah. Gauge further admits that this Court has jurisdiction over the parties and the subject matter as alleged. Except as expressly admitted, Gauge denies any remaining allegations in paragraph 1.

2. **Paragraph 2:** Gauge lacks knowledge or information sufficient to form a belief as to the

truth of the allegations regarding the organizational status or citizenship of BMW Financial Services NA, LLC ("BMW FS") or Financial Services Vehicle Trust ("the Trust"), and on that basis denies those allegations. Gauge admits that BMW FS and the Trust have claimed an interest in the 2023 Rolls-Royce Cullinan, VIN SLATV8C0XPU216487 (the "Vehicle"), adverse to Gauge's claim of title. Any remaining allegations in paragraph 2 are denied.

3. **Paragraph 3:** Gauge admits, upon information and belief, that prior to August 2024 the Vehicle was subject to a retail installment contract or lease through BMW FS's financing program, under which the Trust or BMW FS may have been listed as a secured party. Gauge is without knowledge as to the precise terms of any such prior transaction, the identity of any lessee or borrower, or the status of payments or default, and therefore denies any allegations in paragraph 3 beyond the limited facts expressly admitted above.

4. **Paragraph 4:** Gauge admits that a New York State Certificate of Title for the Vehicle was issued in or about August 2024 listing Steven J. Calderon as the owner and showing no liens or encumbrances. Gauge further admits that Mr. Calderon later sold the Vehicle to Gauge. Gauge lacks knowledge of the exact method by which Mr. Calderon obtained the August 2024 New York title and therefore denies any allegations in paragraph 4 suggesting fraud or wrongdoing in the retitling process. Gauge specifically denies that it had any involvement in, or knowledge of, any alleged fraudulent title application by Mr. Calderon.

5. **Paragraph 5:** Gauge admits that it purchased the Vehicle from Steven J. Calderon in March 2025 for full fair market value. Gauge also admits that at the time of purchase, it reviewed the Vehicle's documentation and relied on the New York title showing Mr.

Calderon as owner with no liens. Gauge affirmatively states that it purchased the Vehicle in good faith, for value, and without notice of any adverse claim. To the extent paragraph 5 implies that Gauge knew or should have known of a prior interest claimed by Counterclaimants, or that Gauge's purchase was not bona fide, such allegations are expressly denied.

6. **Paragraph 6:** Gauge admits that at the time of its March 2025 purchase, BMW FS's claimed interest (if any) was not listed on the Vehicle's title. Gauge lacks knowledge or information sufficient to form a belief as to whether BMW FS or the Trust had authorized or received any payment or satisfaction of the prior financing/lease, and therefore denies any remaining allegations in paragraph 6. Gauge specifically denies any implication that it had knowledge of an outstanding BMW FS interest at the time of purchase.

7. **Paragraph 7:** Gauge admits that after Gauge's purchase of the Vehicle, BMW FS (directly or through agents or counsel) asserted a claim to the Vehicle and demanded that the Vehicle be surrendered to Counterclaimants. Gauge further admits that it did not accede to those demands, as Gauge asserts lawful ownership and right to possession. Gauge denies that Counterclaimants had any legal right to possess the Vehicle at the time of their demand, and denies any allegation in paragraph 7 that Gauge's refusal to turn over the Vehicle was wrongful.

8. **Paragraph 8:** Gauge denies the allegations in paragraph 8 to the extent they allege that the New York title issued to Mr. Calderon was "fraudulently procured" in a manner that leaves Counterclaimants' interest intact as against Gauge. Gauge is without knowledge of the exact representations made to New York authorities, but denies that any such fraud (if perpetrated by third parties) can be imputed to Gauge or used to invalidate Gauge's good-

faith title. Gauge further denies that Counterclaimants retained a perfected or enforceable security or ownership interest in the Vehicle after the issuance of the clean New York title and the lapse of the applicable statutory period for re-perfecting any prior lien.

9. **Paragraph 9:** Gauge denies the allegations in paragraph 9 insofar as they assert that Counterclaimants' rights in the Vehicle were not extinguished or subordinated. Gauge affirmatively avers that under New York Vehicle and Traffic Law and the Uniform Commercial Code, any prior security interest held by BMW FS became unperfected when it was not noted on the August 2024 New York title and was not re-perfected within the statutory grace period. As a result, by operation of law, Counterclaimants' alleged lien was ineffective against a purchaser such as Gauge after December 2024. Furthermore, to the extent Counterclaimants claim a lessor ownership interest, Gauge asserts that their failure to promptly remedy the fraudulent retitling and their entrustment of the Vehicle to a lessee estop them from reclaiming the Vehicle from an innocent purchaser. All contrary allegations in paragraph 9 are denied.

10. **Paragraph 10:** To the extent paragraph 10 alleges legal conclusions or interpretations of law (including assertions about title being "void" or rights of ownership), no response is required. To the extent a response is required, Gauge denies that Counterclaimants have superior title or rights to the Vehicle as against Gauge. Gauge denies that it has wrongfully detained the Vehicle; rather, Gauge lawfully holds title free and clear of Counterclaimants' unperfected or void interest. Any allegation that Gauge's title is invalid or subordinate is expressly denied.

11. **Paragraph 11:** Gauge incorporates its responses to all preceding paragraphs as if fully set forth herein. To the extent paragraph 11 of the Counterclaim purports to incorporate

prior allegations by reference, Gauge likewise incorporates its above admissions and denials in response.

12. **Paragraph 12:** Gauge denies that Counterclaimants are entitled to any of the relief requested in their Counterclaim, including but not limited to possession of the Vehicle, declaratory judgment in their favor, damages, or any injunctive order. Gauge specifically denies that Counterclaimants have stated any valid claim for relief against Gauge. Gauge further denies any allegation of paragraph 12 (or any "Wherefore" paragraph of the Counterclaim) to the extent it suggests Counterclaimants have a right to relief or that Gauge has any liability or wrongdoing in this matter.

13. **Paragraph 13:** Gauge denies each and every allegation of the Counterclaim not specifically admitted above. Gauge further denies that Counterclaimants have suffered any damage or are entitled to any remedy as a result of Gauge's actions, and denies that Counterclaimants have any legal or equitable right in the Vehicle superior to Gauge's rights.

## Affirmative Defenses

Without assuming any burden of proof that would otherwise rest with Counterclaimants, Gauge asserts the following affirmative defenses. Each defense is stated in the alternative and does not concede the truth of any allegation not otherwise admitted. Gauge reserves the right to amend or supplement these defenses as discovery progresses.

1. **Failure to State a Claim:** The Counterclaim, in whole or in part, fails to state a claim upon which relief can be granted. Counterclaimants have not pled facts sufficient to establish a legally cognizable claim for relief against Gauge, whether for declaratory judgment, replevin, conversion, or otherwise.

2. **Estoppel:** Counterclaimants' claims are barred by the doctrine of estoppel. Through their own actions and inaction, Counterclaimants allowed a third party to obtain an apparently clean title and induce an innocent purchaser (Gauge) to buy the Vehicle. Counterclaimants knew or should have known of the fraudulent retitling and failed to promptly notify authorities or the public. As a result, Counterclaimants are estopped from asserting an adverse interest in the Vehicle against Gauge, who relied on the state-issued title.

3. **Waiver:** Counterclaimants, by their conduct, waived any right to enforce an interest in the Vehicle as against Gauge. This includes but is not limited to Counterclaimants' failure to re-perfect or preserve any lien in New York and their delay in taking action once learning of the retitling. Such conduct is inconsistent with an intent to enforce their alleged rights, constituting a waiver of any such rights.

4. **Laches:** Counterclaimants' claims are barred (in whole or in part) by the doctrine of laches. Counterclaimants unreasonably delayed in pursuing their claims or protecting their interest after the Vehicle was retitled in August 2024. That delay prejudiced Gauge, who in the interim purchased the Vehicle in good faith and has incurred expense and risk in reliance on owning the Vehicle free of adverse claims.

5. **Unclean Hands:** The equitable relief sought by Counterclaimants is barred by the doctrine of unclean hands. Counterclaimants' own omissions and business practices contributed to the situation they now complain of. By entrusting the Vehicle to a customer/lessee and failing to safeguard their title or promptly report the fraudulent title issuance, Counterclaimants enabled the circumstances that led to Gauge's purchase. It would be inequitable to reward Counterclaimants with relief when their own lack of

    diligence and self-help tactics (such as attempting extrajudicial repossession through third parties) have been improper.

6. **Good Faith Purchaser Without Notice:** Gauge was a bona fide purchaser for value without notice of any prior lien or claim. Under applicable law, including the Uniform Commercial Code and state title laws, Gauge's rights in the Vehicle are superior to any unperfected or undisclosed interest that Counterclaimants may have had. Gauge acquired the Vehicle in good faith reliance on an official title showing no encumbrances. Counterclaimants cannot recover the Vehicle from a good faith purchaser who had no knowledge of any defect in title.

7. **Preemption of Claims by Title Laws:** Counterclaimants' claims are precluded or limited by governing title statutes and the Uniform Commercial Code. The priority and validity of any security interest in the Vehicle are governed by New York Vehicle & Traffic Law and UCC Article 9, which supersede any common-law claims to the contrary. Because Counterclaimants failed to comply with those laws (such as the requirement to perfect or re-perfect a lien on the New York title), their unperfected interest is invalid against Gauge. To the extent Counterclaimants assert a claim based on an ownership theory, that claim is displaced by the statutory protections afforded to good faith purchasers of vehicles under state law.

### Prayer for Relief

WHEREFORE, having fully answered the Counterclaim, Gauge Automotive, Inc. respectfully requests that the Court enter judgment in its favor and grant the following relief:

- **Dismissal of Counterclaim:** Dismiss Counterclaimants' Counterclaim in its entirety, with prejudice, and deny all relief sought by Counterclaimants therein.

- **Judgment on the Merits:** Enter judgment declaring that Counterclaimants have no valid claim, right, or interest in the Vehicle as against Gauge, consistent with Gauge's status as lawful owner of the Vehicle free and clear of Counterclaimants' claims.

- **Attorney's Fees and Costs:** Award Gauge its reasonable attorneys' fees and costs incurred in defending against the Counterclaim, to the extent permitted by law, and as otherwise justified by Counterclaimants' conduct in this matter.

- **Further Relief:** Grant such other and further relief as the Court deems just and proper under the circumstances, including any relief necessary to fully vindicate Gauge's rights and to deter any future improper claims against Gauge's title.

Dated: October 29, 2025                         Respectfully Submitted,

                                                By: /s/ Chad Pehrson

                                                Chad Pehrson Esq.
                                                Counsel for Plaintiffs