Chad Pehrson (12622)
**KNH LLP**
50 West Broadway 9th Floor
Salt Lake City, UT 84101
(801) 994-4646
cpehrso@knh.law

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | **PLAINTIFF GAUGE AUTOMOTIVE INC.'S OPPOSITION TO BMW'S REQUEST FOR RULE 41 DISMISSAL** <br><br> Case No. 2:25-cv-00792 <br><br> Judge Ann Marie McIff Allen <br><br> Jury Demanded |

## INTRODUCTION

Plaintiff and Counter-Defendant Gauge Automotive, Inc. ("**Gauge**") opposes BMW's "Conditional" Rule 41 Motion (Dkt. 43). Rule 41(a)(2) vests the Court with discretion to deny voluntary dismissal where it would cause the opposing party "plain legal prejudice." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). This standard prevents exactly what BMW seeks to do: use voluntary dismissal as a tactical weapon, imposing litigation costs in one forum only to abandon it and start over in another. *See id.* (courts should consider "the opposing party's effort and expense in preparing for trial").

The procedural history is straightforward. Gauge, a small Utah business, filed suit in Utah

KNH LLP | cpehrson@knh.law

to determine its rights. *See* Hirahara Decl. ¶ 2. BMW removed the case to this Court, then moved to dismiss or transfer to Florida. After briefing and oral argument, BMW withdrew that motion—making a calculated decision to litigate here, stating it intended to prosecute its counterclaims in this action. Dkt. 24.  BMW then did exactly that: it filed counterclaims for replevin, conversion, unjust enrichment, breach of contract, and trespass to chattels; moved for a TRO and preliminary injunction; sought expedited disclosure; and issued third-party subpoenas under this Court's authority. Each filing forced Gauge to expend significant time and resources. *Id.* ¶¶ 3, 7.

Now, after driving aggressive litigation in this Court, BMW wants to walk away without prejudice to pursue the same claims against Gauge in Florida. Conditional dismissal is the opposite of "equity" and the opposite of "proper terms."  This is forum shopping, not Rule 41. The Court should deny BMW's motion.

## RELEVANT PROCEDURAL HISTORY

On August 6, 2025, Gauge filed its Complaint in Utah state court seeking a declaratory judgment establishing its rights as a bona fide purchaser of the Vehicle. Dkt. 2. Two days later, BMW filed the "BMW Lawsuit" in Florida state court (Case No. 50-2025-CA-008048), asserting claims against Gauge and others—choosing from the outset to pursue claims against Gauge in two forums simultaneously. Dkt. 11-1.

BMW removed Gauge's Utah action to this Court on September 11, 2025 (Dkt. 2), then on September 30 filed a Motion to Dismiss or, in the Alternative, Transfer Venue to Florida (Dkt. 11). The Court set BMW's Motion for an in-person hearing. Dkt. 17.

Meanwhile, on October 10, BMW filed a Motion for TRO and Preliminary Injunction (Dkt. 19) and a status report seeking immediate relief in this Court (Dkt. 20)—actions

inconsistent with its pending motion to leave this forum. After Gauge filed its Opposition to BMW's Motion to Dismiss (Dkt. 22), the Court held the in-person hearing on October 16. Following argument and a recess, BMW reversed course, orally moving to withdraw its Motion to Dismiss. The Court's Minute Entry states: "After a recess, court resumes with Defendants orally moving to withdraw [11] Defendants' MOTION to Dismiss . . . . The Court will make no ruling on the motion." Dkt. 23.

On October 17, BMW filed its formal Notice of Withdrawal, stating it was withdrawing the motion "as it intends to prosecute its counterclaims in this action." Dkt. 24. BMW then aggressively litigated here, filing a Supplement to its TRO Motion (Dkt. 26), a Motion for Ex Parte Order Requesting Expedited Disclosure (Dkt. 28), and multiple transcript requests (Dkts. 25, 27). Gauge was forced to file a comprehensive 19-page opposition to BMW's TRO motion. Dkt. 33; Hirahara Decl. ¶ 4.

On October 28, this Court denied BMW's Supplement (Dkt. 37), expressing concern that BMW's "simultaneous invitations to this Court and the court in Florida, to address its claims against Gauge, could result in inconsistent rulings and other judicial inefficiencies." Dkt. 37 at 3. The Court cited the claim-splitting doctrine and judicial estoppel, warning that "BMW must decide where it intends to pursue its claims against Gauge." *Id.* at 2–3; *see also Katz v. Gerardi*, 655 F.3d 1212, 1218–19 (10th Cir. 2011) ("the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation").

Now, after all of this, BMW seeks to dismiss its counterclaims without prejudice to pursue those same claims in Florida—precisely the conduct Rule 41(a)(2) is designed to prevent.

## ARGUMENT

### I. LEGAL STANDARD

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The Tenth Circuit evaluates four factors: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay and lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of litigation. *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996). While voluntary dismissal is generally favored, it should be denied where it would result in "legal prejudice" to the nonmoving party. *Ohlander*, 114 F.3d at 1537. The Court must "consider the equities not only facing the defendant, but also those facing the plaintiff." *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 998 (10th Cir. 2021). The analysis is not mechanical; the Court retains broad discretion to evaluate the totality of the circumstances. *Brown v. Baeke*, 413 F.3d 1121, 1126 (10th Cir. 2005).

### II. GAUGE HAS INCURRED SIGNIFICANT EFFORT AND EXPENSE

The first factor weighs heavily against dismissal. Gauge has spent tens of thousands of dollars in attorneys' fees defending BMW's counterclaims and related motions in this Court. Hirahara Decl. ¶ 3. For a small business, that has been an enormous sum. *Id.* ¶ 2.

Specifically, Gauge has: (a) answered BMW's counterclaims; (b) briefed and opposed BMW's Motion to Dismiss or Transfer, requiring extensive research and a full opposition memorandum (Dkt. 22); (c) prepared for and attended two in-person hearings (Hirahara Decl. ¶ 5); (d) briefed and opposed BMW's TRO motion with a 19-page opposition (Dkt. 33; Hirahara Decl. ¶ 4); (e) responded to BMW's Motion for Expedited Disclosure (Dkt. 28); and (f)

participated in multiple status conferences. Each required substantial attorney time and expense that Gauge's CEO had to divert from running the business. Hirahara Decl. ¶¶ 3, 7.

BMW tries to minimize this by noting it did not propound "discovery on Gauge." But the effort-and-expense factor encompasses the totality of litigation costs, not merely discovery costs. *See Phillips*, 77 F.3d at 358 (affirming denial of voluntary dismissal where opposing party incurred significant expense through motion practice and hearing preparation). Gauge has been forced to respond to BMW's motion practice, attend hearings, and defend through multiple rounds of briefing—all of which constitute significant effort and expense.

BMW's suggestion that Gauge's costs are "not recoverable even if Gauge prevails" (Dkt. 43 at 7) misses the point. The question is not whether Gauge could recover costs if it wins, but whether Gauge will be forced to incur those same costs *again* if BMW dismisses without prejudice.

### III.  BMW'S CONDUCT DEMONSTRATES EXCESSIVE DELAY AND STRATEGIC MANIPULATION

The second factor also weighs against BMW. This motion is not a product of newly discovered circumstances—it is the latest move in a pattern of forum manipulation.

BMW has known since August 2025 that it was simultaneously litigating against Gauge in both Utah and Florida. At every turn, BMW could have elected not to assert counterclaims here. Instead, it affirmatively chose to do so. The timeline is telling:

BMW moved to dismiss or transfer this case to Florida. When the Court indicated it would deny that motion, BMW withdrew it—not because it agreed Utah was the right forum, but because it saw an opportunity to expand the litigation by filing counterclaims. Dkt. 24. Having committed to this forum, BMW litigated aggressively for months—filing counterclaims, a TRO

motion, a motion for expedited disclosure, and multiple supplemental filings. Hirahara Decl. ¶ 7.

Only after this Court denied BMW's requests for relief does BMW reverse course and seek to flee this jurisdiction. This is not diligence; it is gamesmanship. The delay between BMW's decision to litigate here (October 2025) and its motion to dismiss (February 2026) reflects not new information, but a strategic recalculation after things did not go BMW's way. *See Phillips*, 77 F.3d at 358 (delay and lack of diligence weigh against dismissal where movant's conduct reflects tactical maneuvering rather than good-faith litigation).

### IV. BMW'S EXPLANATION FOR DISMISSAL IS INSUFFICIENT AND PRETEXTUAL

The third factor favors Gauge. BMW offers two justifications: (1) "judicial economy" because the issues are being litigated in Florida; and (2) Gauge's alleged "lack of candor." Neither withstands scrutiny.

#### *A. The "Judicial Economy" Argument Is Undermined by BMW's Own Conduct*

BMW argues dismissal is warranted because the Florida action will resolve all claims. But BMW itself created the duplicative litigation it now invokes. BMW could have pursued its claims exclusively in Florida from the beginning. Instead, it chose to file counterclaims in Utah, forcing Gauge to defend in two forums.

Moreover, the Florida action does not subsume this case. Gauge's affirmative claims—for a declaratory judgment establishing its bona fide purchaser status—remain pending before this Court regardless of what happens with the counterclaims. The issues raised by Gauge's claims and BMW's counterclaims are inextricably intertwined. Dismissing the counterclaims while Gauge's claims remain would not promote judicial economy—it would require two courts to adjudicate overlapping legal and factual issues. Hirahara Decl. ¶ 10.

This Court has already recognized the risks. In its October 28, 2025 Order, the Court expressed concern that BMW's "simultaneous invitations to this Court and the court in Florida . . . could result in inconsistent rulings and other judicial inefficiencies." Dkt. 37 at 3. The Court specifically cited the claim-splitting doctrine, noting it "exists to allow district courts to manage their docket and dispense with duplicative litigation." *Id.* at 2 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218–19 (10th Cir. 2011)). Dismissing the counterclaims without prejudice would realize precisely those concerns.

### B. The "Lack of Candor" Allegations Are Inaccurate, but Irrelevant

BMW dedicates much of its motion to allegations about Gauge's purported dishonesty regarding the sale of the Vehicle. These allegations are disputed and, in any event, irrelevant to the Rule 41(a)(2) analysis.

The factors focus on legal prejudice to the nonmoving party, the movant's diligence, the sufficiency of the explanation for dismissal, and the stage of litigation. BMW's "lack of candor" narrative is an attempt to inject merits arguments into a procedural motion. BMW's core argument—that it "would not have brought [its] counterclaims in this Court at all" had Gauge been more forthcoming (Dkt. 43 at 3)—is self-defeating. If BMW's counterclaims were brought solely to secure the Vehicle and the Vehicle is no longer available, that underscores that BMW's counterclaims should be resolved on the merits in this Court, not withdrawn and recycled in another forum.

Furthermore, BMW's characterization of the vehicle sale timeline omits relevant context. The wholesale agreement between Gauge and Secured Auto Group was dated September 16, 2025, but vehicle transactions of this nature involve multiple steps—paperwork, title transfers,

payment processing, and delivery. These are factual disputes for the merits, not a pretext for procedural maneuvering.

## V. THE STAGE OF LITIGATION WEIGHS AGAINST DISMISSAL

The fourth factor also favors Gauge. BMW characterizes this case as being in its "early stages," but the reality is that the parties have engaged in substantial litigation. The Court has held multiple in-person hearings. The parties have briefed a motion to dismiss, a TRO motion, an expedited disclosure motion, and have filed multiple status reports. Gauge has answered BMW's counterclaims. The Court has issued multiple substantive orders. Significant judicial resources have been invested.

BMW tries to minimize this by noting it has not propounded formal discovery on Gauge. First, this is inaccurate—BMW served third-party discovery under this Court's subpoena authority. Hirahara Decl. ¶ 4. Regardless, the absence of formal interrogatories reflects BMW's strategic choices, not the case's immaturity. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (courts properly consider the stage of litigation, including motion practice and judicial involvement, not just discovery progress).

## VI. DISMISSAL WITHOUT PREJUDICE WOULD CAUSE GAUGE SUBSTANTIAL\ LEGAL PREJUDICE

Beyond the four factors, the overarching question is whether dismissal would cause Gauge "legal prejudice." *Ohlander*, 114 F.3d at 1537. It would.

### A. *Gauge Would Be Forced to Litigate the Same Dispute in Two Courts Simultaneously*

Dismissing BMW's counterclaims without prejudice would not simplify this case—it would double it. Gauge's declaratory judgment claims remain pending before this Court. BMW

has not moved to dismiss those claims, nor could it. And Gauge's claims raise the same core questions that BMW's counterclaims raise: whether Gauge is a bona fide purchaser, whether BMW holds a superior interest in the Vehicle, and what rights flow from the New York title. If BMW dismisses its counterclaims here and pursues them in Florida, two courts will be asked to resolve those overlapping questions at the same time, with no mechanism to ensure consistent results. Gauge would be litigating the title dispute in Utah on its affirmative claims while simultaneously defending the mirror image of that dispute in Florida on BMW's counterclaims. Hirahara Decl. ¶ 11.

BMW argues that "the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice." Dkt. 43 at 6. But the prejudice here is not inconvenience—it is the concrete risk that two courts applying potentially different legal standards will reach contradictory conclusions about the same vehicle, the same title, and the same parties. For a small business already spending tens of thousands of dollars on this litigation (Hirahara Decl. ¶¶ 3, 13), funding parallel proceedings in two states is not a theoretical burden—it threatens the company's ability to continue operating. The Tenth Circuit has recognized that "legal prejudice" must be evaluated in context, considering "the equities not only facing the defendant, but also those facing the plaintiff." *Frank*, 992 F.3d at 998. Those equities weigh decisively against allowing BMW to split this dispute across two forums.

### B. BMW Would Gain an Improper Tactical Advantage

BMW's motion is expressly "conditional"—it seeks dismissal only without prejudice. If the Court will not dismiss without prejudice, BMW states it "does not desire to dismiss the counterclaims" and will "prosecute [them] in this action." Dkt. 43 at 7. This reveals BMW's true

KNH LLP | cpehrson@knh.law

objective: not judicial economy, but preserving the option to pursue its claims in whichever forum provides the greatest leverage.

Through its litigation in this Court, BMW has gained informational advantages. Its counsel attended hearings and observed this Court's reactions. BMW obtained discovery from third parties. If BMW is allowed to walk away, it takes that knowledge while Gauge's investment is wasted; Gauge's sunk costs cannot be recouped, and BMW would externalize those costs while retaining strategic advantage. These are precisely the tactical advantages Rule 41(a)(2) is designed to prevent. *See Phillips*, 77 F.3d at 357–58 (Rule 41 is designed "primarily to prevent voluntary dismissals which unfairly affect the other side").

### *C. BMW's Pattern of Forum Manipulation Supports a Finding of Legal Prejudice*

Courts evaluating Rule 41(a)(2) motions consider the movant's overall conduct. Here, BMW's litigation history speaks for itself: BMW filed suit against Gauge in Florida while removing Gauge's Utah case to federal court. BMW moved to dismiss the Utah case, then withdrew that motion and elected to prosecute counterclaims here. BMW filed a TRO motion, an expedited disclosure motion, and a supplemental filing invoking both this Court and the Florida court simultaneously. Now BMW reverses course again. Hirahara Decl. ¶ 13 (from Gauge's perspective, BMW's conduct "looks like it is designed to wear Gauge down").

A party that has engaged in this pattern of forum manipulation should not be permitted to dismiss without prejudice. To allow it would signal that a well-resourced litigant can force a smaller opponent to defend on multiple fronts, exhaust its resources through aggressive motion practice, and abandon the forum when it becomes inconvenient—all without consequence. *Cf. Katz*, 655 F.3d at 1218–19 (claim-splitting doctrine prevents parties from pursuing duplicative

litigation across forums).

## VII. BMW'S FOOTNOTE THAT GAUGE LACKS STANDING IS MERITLESS

In a footnote, BMW suggests that "Gauge's sale of the vehicle likely precludes Gauge's standing to pursue its claim in this case." Dkt. 43 at 7 n.2. This drive-by standing challenge reveals BMW's strategy: dismiss the counterclaims, challenge Gauge's standing to maintain its affirmative claims, and leave Gauge with no forum and no remedy.

Gauge's standing is unaffected by any subsequent sale of the Vehicle. Gauge has a concrete interest in obtaining a declaration of its rights as a bona fide purchaser. The title dispute directly affects Gauge's legal rights, its business reputation, and its potential liability to downstream purchasers. Hirahara Decl. ¶ 13. BMW's continued pursuit of claims against Gauge—in both this case and in Florida—demonstrates the existence of an active controversy. BMW cannot simultaneously claim that Gauge has no standing while suing Gauge in two jurisdictions.

## VIII. MOTION SHOULD BE DENIED; ALTERNATIVELY, CONDITIONS ARE APPROPRIATE

BMW seeks dismissal only after the Court denied its interim relief; Rule 41(a)(2) is not meant to give a litigant a reset button. Gauge's primary position is that the motion should be denied and BMW should be required to prosecute its counterclaims in this Court. BMW made its choice when it withdrew its motion to dismiss and committed to litigate here. However, if the Court is inclined to grant BMW's motion in any form, Gauge requests that the Court dismiss BMW's counterclaims with prejudice. The Tenth Circuit has recognized that conditions are appropriate to "alleviate any prejudice a defendant might otherwise suffer upon refiling." *Am. Nat'l Bank & Tr. Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991).

If the Court is inclined to allow BMW to change course, any dismissal should be conditioned on: (i) BMW stipulates it will withdraw counterclaims against Gauge in Florida on the dismissed counterclaims / same nucleus of facts; (ii) BMW pays Gauge's fees incurred litigating the counterclaims and TRO practice; and/or (iii) BMW consents to Utah as exclusive forum for claims against Gauge.

## CONCLUSION

BMW brought this fight to this Court. BMW then expressly chose to stay, informing the Court and Plaintiff about that decision, and then filing counterclaims, a TRO motion, and multiple other filings. This forced Gauge to spend tens of thousands of dollars in attorneys' fees. Having made that choice, BMW should not be permitted to abandon this forum without consequence.

For the foregoing reasons, Gauge respectfully requests that the Court DENY BMW's Conditional Motion.

Dated: February 17, 2026                    Respectfully Submitted,

                                                                     **KNH LLP**

                                                                     By: */s/ Chad Pehrson*
                                                                           Chad Pehrson Esq.
                                                                           *Attorney for Plaintiff*

## CERTIFICATION OF COMPLIANCE WITH DUCivR 7-1(q)

I certify that this memorandum complies with the applicable length requirements of DUCivR 7-1(q). According to the word-processing system used to prepare this filing, this memorandum contains 3,070 words, excluding the caption, table of contents, table of authorities, signature block, certificate of service, and any exhibits or attachments.

/s/Chad Pehrson
Chad Pehrson

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF GAUGE AUTOMOTIVE INC.'S OPPOSITION TO BMW'S REQUEST FOR RULE 41 DISMISSAL** to be electronically filed through the Court's CM/ECF system, which effectuated service on all parties of record.

*/s/Chad Pehrson*