Chad Pehrson (12622)   cpehrson@knh.law
Nathan Gardner (19537)   ngardner@knh.law
**KNH LLP**
50 West Broadway, Ste. 900
Salt Lake City, UT 84101
(801) 994-4646
*Attorneys for Plaintiff Gauge Automotive, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GAUGE AUTOMOTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST, <br><br> Defendants. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)1) MOTION TO DISMISS (ECF NO. 52)** <br><br> Case No. 2:25-cv-00792-AMA-JCB <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Jared C. Bennett <br><br> **Jury Demanded** |

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

Plaintiff Gauge Automotive, Inc. ("Gauge") respectfully requests that the Court deny Defendants' Rule 12(b)(1) Motion to Dismiss (ECF No. 52) (the "Motion"). The Motion fails on four grounds, and it seeks the wrong disposition in any event. First, Gauge had a concrete stake when it filed this action and—critically for Article III—when Defendants removed it: Gauge possessed the Vehicle, asserted ownership, and faced Defendants' adverse claim. The later transfer therefore raises a question of mootness, not a defect in standing at removal, and Defendants bear the burden of showing that no effectual relief remains. Second, Gauge's

1

plausible tortious-interference claim seeks compensatory damages for completed conduct, so the action is not wholly moot even if a particular form of equitable relief is no longer available. Third, Rule 25(c) forecloses the Motion's premise that the post-filing transfer automatically terminated the action; the case may continue in Gauge's name unless the Court orders substitution or joinder, and any question whether the present titleholder must participate ordinarily concerns substitution, joinder, or the scope of relief—it does not by itself establish an Article III defect. Fourth, to the extent Defendants' jurisdictional theory requires the Court to determine the validity or legal effect of the parties' competing title interests, the issue is intertwined with the merits and must be addressed under Rule 12(b)(6) or Rule 56, not as an ordinary Rule 12(b)(1) factual attack. Finally, because Defendants removed the action, if the Court concluded that it lacked subject-matter jurisdiction over the action as a whole, 28 U.S.C. § 1447(c) would require remand—not the dismissal Defendants request.

**INTRODUCTION**

Defendants' Motion rests on one event and one inference. The event is Gauge's September-October 2025 sale of the Rolls-Royce Cullinan at the center of this case. The inference is that, because Gauge sold the Vehicle, nothing remains for this Court to decide. Defendants' own authorities refute that inference. The "sale-moots-the-case" decisions Defendants cite either found no live claim for money damages or, as with *Melot* discussed below, addressed the mootness of the property-related claims separately from a surviving damages claim. Here, a damages claim remains: Gauge alleges that Defendants' assertion of an interest they could not enforce against Gauge tortiously interfered with Gauge's property rights and business relations and caused

quantifiable monetary loss. From *Powell v. McCormack*, 395 U.S. 486 (1969), through *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370 (2019), and *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), the rule has been constant: a live claim for money damages preserves a case or controversy no matter what becomes of the underlying property.

The rest of the Motion mislabels both its own theory and Gauge's claims. The Motion is styled as an attack on Gauge's "standing." Gauge had a concrete stake when it filed in state court and—critically for Article III—when Defendants removed the action. At removal, Gauge possessed the Vehicle, held the Utah certificate of title, faced Defendants' adverse claim of ownership, and alleged concrete injury from that claim. *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). The subsequent sale therefore presents a question of mootness, not a defect in Article III standing when the action entered federal court. "[T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946).

Two further points independently defeat the Motion. First, the Federal Rules already supply the answer to the only procedural event on which the Motion relies. Rule 25(c) provides that when "an interest is transferred, the action may be continued by or against the original party" unless the Court orders substitution or joinder. Fed. R. Civ. P. 25(c). Continuation is the default; substitution is discretionary; and neither is a condition of Article III jurisdiction. The Motion does not cite Rule 25(c), or Rule 17(a)(3), or acknowledge the settled distinction between standing and real-party-in-interest principles.

Second, the relief Defendants request is not available to them. Defendants removed this case. If a federal court concludes that a removed action lies outside its subject-matter jurisdiction, 28 U.S.C. § 1447(c) directs that "the case shall be remanded." The statute leaves "no discretion to dismiss rather than remand." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991). Defendants' own premise thus leads not to the judgment they seek, but back to the Utah court from which they removed.

## BACKGROUND

In 2025, Gauge purchased the 2023 Rolls-Royce Black Badge Cullinan, VIN SLATV8C0XPU216487 (the "Vehicle"), for value and in good faith, relying on a New York certificate of title that named the seller and showed no liens, and took possession of it. (Compl. ¶¶ 1, 6.) Gauge applied for a Utah certificate of title in July 2025 (Compl. ¶ 11), and one was issued to Gauge on August 22, 2025. (Hirahara Decl. ¶ 6 & Ex. 1.)

Defendants claim a competing interest in the Vehicle arising out of a prior lease or financing transaction and contend the Vehicle's New York title was procured by fraud. (Compl. ¶¶ 2, 7.) On July 25, 2025, before this action was filed, Defendants' counsel wrote to Gauge asserting that "BMW FS is the owner of the Vehicle," demanding "immediate return of the Vehicle," and demanding that Gauge "refrain from selling or otherwise disposing of" it. (Hirahara Decl. ¶ 7 & Ex. 2.) Defendants asserted the same claimed interest to third parties as well. (Compl. ¶¶ 7, 10; ECF No. 45 ¶ 12.)

Defendants' pre-suit conduct had already cost Gauge money by the time this action was filed. Gauge had sold the Vehicle to a Florida dealer earlier in 2025; after Defendants communicated their claimed interest to that dealer, the transaction was unwound, Gauge refunded

the purchase price and reacquired the Vehicle, and the dealer tendered a demand that Gauge defend and indemnify it against Defendants' claims—a demand Gauge accepted and continues to honor. (Hirahara Decl. ¶¶ 8–10; Tr. at 7:20–8:5.) Gauge then lost a further sale when a franchised Utah dealer declined to complete a purchase because of the cloud Defendants had placed on the Vehicle's title, and Gauge was able to complete a sale only by extending a written indemnity to its buyer. (Hirahara Decl. ¶¶ 11–12.) Gauge's counsel described that history to the Court at the outset: Gauge "has taken steps to sell the vehicle; and, obviously, it's difficult to sell a vehicle that has a clouded title of any kind, but it has offered indemnities and anything appropriate to the buyers of the vehicle. So there is an attempt to mitigate any harm that would exist or mitigate any damages here." (Tr. at 6:12–18.)

On August 6, 2025, Gauge filed this action in Utah state court, asserting claims for declaratory judgment, quiet title, injunctive relief, and tortious interference, the last of which seeks money damages. (ECF No. 2-1 [Compl.].) On September 11, 2025, Defendants removed the action to this Court. (ECF No. 2.) Gauge subsequently sold the Vehicle to Secured Auto Group, a Utah dealer, for $324,000. The invoice for that sale is dated September 16, 2025, but Gauge was not paid until on or about October 7, 2025. (Hirahara Decl. ¶¶ 13–14; ECF No. 31 at PageID.304; ECF No. 43-1.) Secured Auto Group resold the Vehicle on October 2, 2025 to Luxury Auto Collection, LLC, an Arizona dealer, for $327,000. (ECF No. 43-1 at 11–15.) The Vehicle is located outside Utah and is not in the possession of any party to this lawsuit.

Defendants answered and counterclaimed (ECF No. 16) and moved for a temporary restraining order and preliminary injunction (ECF Nos. 19, 26). The Court ordered expedited disclosure concerning the sale (ECF No. 30) and denied Defendants' request for a temporary

5

restraining order (ECF No. 37). In February 2026, Defendants moved to voluntarily dismiss their own counterclaims (ECF No. 43). Over Gauge's opposition (ECF No. 44), the Court dismissed the counterclaims without prejudice and denied the pending injunction motion as moot, observing that "BMW's claims are already proceeding in Florida." (ECF No. 48 at 3.) The Court did not dismiss any of Gauge's claims, did not hold that Gauge's damages claim was moot, and did not decide the parties' competing title positions.

Defendants continue to prosecute an action against Gauge in Florida state court asserting claims arising from the same Vehicle and the same claimed interest, including claims for damages and, "to the extent necessary," replevin against Gauge. *See Fin. Servs. Vehicle Tr. v. JR Auto Collection, LLC*, No. 50-2025-CA-008048-XXXAMB (Fla. 15th Jud. Cir., Palm Beach Cnty.). Gauge also remains obligated to defend and indemnify its Florida buyer in that litigation. (Hirahara Decl. ¶ 10.)

Defendants' Motion devotes the bulk of its factual statement to insinuations concerning the timing of Gauge's disclosure of the sale. (Mot. ¶¶ 3–10.) Those characterizations are incomplete and disputed. Gauge's counsel advised the Court at the October 3, 2025 conference that Gauge had "taken steps to sell the vehicle" and had "offered indemnities . . . to the buyers of the vehicle" (Tr. at 6:12–18), and Gauge's October 22, 2025 disclosure reported that the sale occurred "on or about October 7, 2025"—the date Gauge was paid. (ECF No. 31 at PageID.304; Hirahara Decl. ¶ 14.) The Motion treats the September 16 invoice date as though it conclusively fixed the moment Gauge's interest passed, and then labels any other date a falsehood. (Mot. ¶¶ 7–9.) The Court need not resolve these characterizations. The Motion seeks no relief based on them, and subject-matter jurisdiction turns on the legal effect of the sale, not on when it was discussed. Indeed, Defendants'

6

counsel told the Court that a supervised sale "is actually in the best interest of all parties, however it works out, because we're preserving the highest value of the vehicle. And converting that to cash, I can't imagine would be an issue for my client." (Tr. at 25:12–17.)

On June 30, 2026, Defendants filed the Motion. (ECF No. 52.)

## LEGAL STANDARD

Rule 12(b)(1) motions take two forms. A facial attack questions the sufficiency of the complaint's jurisdictional allegations, which the Court must accept as true. *Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995)*. A factual attack goes beyond the pleadings, but "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* at 1003; *see Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987)*. "The underlying issue . . . is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

Standing and mootness address distinct temporal questions. Standing ordinarily asks whether the plaintiff possessed the requisite personal stake when the litigation commenced; where, as here, the action began in state court, federal jurisdiction is assessed as the case stood upon removal. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Whether subsequent events have eliminated the plaintiff's concrete stake in a particular form of relief presents a question of mootness, not original standing. *Laidlaw, 528 U.S. at 189*. A case

7

becomes moot only when those events make it "impossible for a court to grant any effectual relief whatever to the prevailing party"; "[a]s long as the parties have a concrete interest, however small, in the outcome," a live controversy remains. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307–08 (2012)). The inquiry is remedy-specific: courts assess mootness "separately for each form of relief sought." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (quoting *Laidlaw*, 528 U.S. at 185). Defendants, as the parties asserting mootness, bear the burden of establishing it. See *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Separately, Rule 25(c) governs the procedural consequences of a transfer of interest during the pendency of an action. It expressly permits the action to continue in the original party's name unless, on motion, the court orders the transferee substituted or joined. Fed. R. Civ. P. 25(c); *see Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978). A post-filing transfer therefore does not automatically abate the action, although Rule 25(c) does not itself resolve the distinct Article III inquiry. To the extent Defendants instead raise a real-party-in-interest objection under Rule 17, that objection ordinarily is nonjurisdictional. *See Esposito v. United States*, 368 F.3d 1271, 1274 n.1 (10th Cir. 2004). And Rule 17(a)(3) provides that a court may not dismiss on that ground until, after objection, a reasonable time has been allowed for the

real party in interest to ratify, join, or be substituted into the action. Fed. R. Civ. P. 17(a)(3); see

Esposito, 368 F.3d at 1275–78.

**ARGUMENT**

**I. GAUGE HAD A CONCRETE STAKE WHEN IT FILED AND WHEN DEFENDANTS REMOVED; THE POST-REMOVAL SALE PRESENTS A QUESTION OF MOOTNESS, NOT ORIGINAL STANDING.**

The Motion asks the Court to dismiss "for lack of standing." (Mot. at 1.) But standing is assessed at the commencement of the action, *Laidlaw*, 528 U.S. at 189, and federal jurisdiction is assessed as the case stood upon removal. When Gauge filed suit on August 6, 2025, Gauge possessed the Vehicle, asserted ownership based on its purchase and chain of title, and faced Defendants' adverse claim and demand for possession. (Compl. ¶¶ 1, 6–10; Hirahara Decl. ¶¶ 4, 7.) Those allegations describe a concrete injury fairly traceable to Defendants and redressable by judicial relief. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The same was true on September 11, 2025, when Defendants removed the case: the Motion itself alleges that the sale occurred on September 16, 2025, "just five days after the case was removed to the federal district court." (Mot. ¶ 11.) Gauge therefore had the requisite concrete stake when the action entered federal court.

That timing defeats the Motion's framing and its authorities alike. The two decisions Defendants cite for their "standing" theory both involved plaintiffs who never established any interest of their own. The *Commonwealth* plaintiff failed even to plead a prima facie claim of title, and the court dismissed its quiet-title claim for lack of standing because it had "no legally cognizable interest in the property." *Commonwealth Prop. Advocates, LLC v. Saxon Mortg. Servs., Inc.*, No. 10-cv-01347-PAB-KMT, 2011 WL 2600987, at *3 (D. Colo. June 30, 2011). The

9

Gallegos plaintiffs, in turn, took their deeds from grantors whose title had been extinguished eighteen years earlier, leaving them "no title or interest in the property" at all. *Gallegos v. Quinlan, 611 P.2d 1099, 1101 (N.M. 1980)*. Neither decision addresses a plaintiff—like Gauge—who possessed the property and asserted a present claim of title when suit commenced and upon removal, but transferred its interest later.

Nor can Defendants defeat original standing by assuming the answer to the merits. At the jurisdictional threshold the question is whether Gauge alleged an invasion of a legally protected interest, not whether Gauge will ultimately prove every element of its title theory. *Bell, 327 U.S. at 682–83*. Defendants' denial of Gauge's title created this controversy; it did not eliminate Gauge's standing to have the controversy adjudicated.

Defendants are correct that subject-matter jurisdiction may be examined "at any stage" of the proceeding. (Mot. ¶ 12.) But that principle concerns when the Court may conduct the jurisdictional inquiry; it does not change the temporal facts relevant to that inquiry. In a removed action, Article III standing is assessed as the case stood at removal. *See Freeport-McMoRan Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)*. Because Gauge had a concrete stake when Defendants removed the action, the subsequent sale cannot retroactively eliminate standing. It can raise only the distinct question whether later events rendered some or all requested relief moot. Defendants therefore must show that the sale made it impossible for the Court to grant Gauge any effectual relief. See *Chafin, 568 U.S. at 172*. They cannot do so because Gauge retains a live claim for compensatory damages arising from completed conduct, although the Court must assess separately whether each additional form of relief remains available. See *Uzuegbunam, 592 U.S. at 291*.

10

## II. GAUGE'S CLAIM FOR TORTIOUS-INTERFERENCE DAMAGES PREVENTS DISMISSAL OF THE ACTION AS MOOT.

### A. A plausible claim for monetary relief preserves a live case or controversy.

The Supreme Court has settled the controlling principle:

> For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents. See 13C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3, p. 2 (3d ed. 2008) (Wright & Miller) ("[A] case is not moot so long as a claim for monetary relief survives").

*Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019). In *Powell v. McCormack*, for example, expiration of the relevant congressional term mooted the plaintiff's claim to be seated, but his claim for back pay preserved the controversy: "Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." 395 U.S. 486, 497 (1969). The rule extends even to nominal damages for a completed violation. In *Uzuegbunam v. Preczewski*, the plaintiffs' claims for prospective relief were conceded moot, but their claim for nominal damages remained live because, "[i]f there is any chance of money changing hands, [the] suit remains live." 592 U.S. 279, 291 (2021) (quoting *Mission Product*, 587 U.S. at 377).

Gauge asserts a plausible claim for compensatory damages arising from completed conduct. It alleges that Defendants asserted an interest in the Vehicle that was unenforceable against Gauge, communicated that assertion to Gauge and its counterparties, interfered with Gauge's property rights and business relationships, and caused Gauge economic loss. (Compl. ¶¶ 26–30; *id.* Prayer ¶ 4.) The claim does not seek recovery of the Vehicle, restraint of a future sale, or any other relief that Gauge's subsequent transfer could make impossible. It seeks damages for

injury allegedly suffered by Gauge before and in connection with that transfer. If Gauge proves its claim, the Court can order Defendants to compensate Gauge—relief that remains fully available. Accordingly, whatever effect the transfer may have on a particular equitable remedy, it did not render the action wholly moot.

### B. Defendants' own authorities carve out claims for damages.

Defendants' cited cases confirm the point, because each found mootness only in the absence of a damages claim. In *Commonwealth*, 2011 WL 2600987, at *3*, the court dismissed declaratory claims as moot precisely because the plaintiff brought no claim for monetary relief, observing that the "appropriate remedy would not be declaratory relief, but an action for damages." Indeed, Commonwealth itself acknowledged that retrospective declaratory relief remains appropriate where it is "intertwined with a claim for monetary damages that requires [a court] to declare whether a past . . . violation occurred." *Id.* (quoting *PETA v. Rasmussen,* 298 F.3d 1198, 1202 n.2 (10th Cir. 2002)). In *Jordan v. Sosa,* 654 F.3d 1012, 1024 & n.16 (10th Cir. 2011), the Tenth Circuit's mootness analysis was expressly confined to claims for injunctive and declaratory relief and recognized that claims for retrospective relief—damages—stand on different footing. And *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10 (10th Cir. 2010), on which the Motion relies for its "effect in the real world" formulation (Mot. ¶ 13), likewise addressed only whether prospective declaratory and injunctive relief would alter the defendants' future conduct. None of these decisions holds that the disposition of property moots damages for a completed wrong.

*Schell v. OXY USA Inc.*, 814 F.3d 1107 (10th Cir. 2016), is likewise distinguishable. There, the defendant lessee sold all of its interests in the underlying leases while its appeal of a declaratory

judgment was pending, and the Tenth Circuit held the appeal moot because "its conduct cannot be affected by a declaratory judgment concerning these same oil and gas leases." *Id.* at 1113. The plaintiff class, meanwhile, had amended its complaint to eliminate its damages claim. *Id. Schell* involved no surviving claim for damages and says nothing about one.

Most striking is *Melot v. Roberson*, 653 F. App'x 570 (10th Cir. 2016), the source of the Motion's "cannot reverse the sale" quotation (Mot. ¶ 16). Two features of *Melot* defeat the use Defendants make of it. First, sequencing: the sale in *Melot* preceded the lawsuit, and the Tenth Circuit emphasized that the plaintiff held no interest in the property when he initiated the suit—so his claims were moot before he filed. *Id.* at 572–73. Gauge sued six weeks *before* the sale, while it held both title and the Vehicle. *Melot* thus turns on the very sequencing that distinguishes this case, and the Motion quotes around it. Second, the surviving claim: after holding that the claims seeking to invalidate the sale were moot, the panel held that the plaintiff's claim for emotional-distress damages arising from the same events "survives the foregoing mootness analysis," and rejected it only because sovereign immunity barred damages against the federal defendants. *Id.* at 573. These Defendants are private entities and assert no immunity. Defendants' authorities thus establish Gauge's point: a sale may moot claims *to the property*, but it does not moot a claim *for damages*.

**C. Gauge's interference injury was complete before the sale, and the Motion's one-sentence answer is no answer at all.**

The Motion's entire treatment of the damages claim is this: "Gauge alleges that Defendants tortiously interfered with its ability to market and resell the Vehicle, but Gauge has sold the Vehicle." (Mot. ¶ 15.) That is not an argument; it is a restatement of the fact from which the claim

13

arises. Interference with Gauge's "ability to market and resell" describes a *completed* injury—and on this record the interference was largely complete before Gauge ever sold the Vehicle to Secured Auto Group. Defendants' July 25, 2025 letter did not merely assert ownership; it demanded that Gauge "refrain from selling or otherwise disposing of the Vehicle." (Hirahara Decl. ¶ 7 & Ex. 2.) Defendants made the same assertion to Gauge's counterparties. One completed sale was unwound and the purchase price refunded; Gauge reacquired a vehicle it had already sold and assumed an indemnity obligation that it is still funding in Florida; a subsequent buyer walked away over the title cloud; and Gauge could close a sale at last only by indemnifying its buyer. (Hirahara Decl. ¶¶ 8–12.) The eventual sale may have mitigated Gauge's losses, but it did not erase the delay, the indemnity obligation Gauge had to undertake to complete the transaction, or the related costs it incurred. (Compl. ¶ 30; *id.* Prayer ¶ 4.)

Whether Gauge can ultimately prove intentional interference by improper means, causation, and the amount of its damages—and whether any privilege defense applies—are merits questions. *Mission Product*, 587 U.S. at 378 (whether a defendant "did anything to [the claimant] amounting to a legal wrong is a prototypical merits question"); *Powell, 395 U.S. at 500*. Defendants did not move under Rule 12(b)(6), did not address the elements of the tort, and did not present a Rule 56 record. And because mootness is evaluated "separately for each form of relief sought," *Uzuegbunam*, 592 U.S. at 291 (quoting *Laidlaw*, 528 U.S. at 185), the live damages claim defeats the Motion's request to dismiss the action even if some form of equitable relief were moot—which, as shown below, it is not. *See Powell*, 395 U.S. at 496–97; *Paper, Allied-Indus., 428 F.3d at 1300* (the Clean Water Act's bar on civil-penalty citizen suits during a diligently

prosecuted enforcement action did not foreclose an action for injunctive or declaratory relief arising from the same violation).

### III. RULE 25(C) PERMITS THIS ACTION TO CONTINUE AFTER A TRANSFER OF INTEREST, AND ANY REAL-PARTY-IN-INTEREST QUESTION IS NOT JURISDICTIONAL.

#### A. Federal procedure rejects automatic abatement upon a transfer of interest.

The Motion's unstated premise is that a transfer of interest during litigation terminates the transferor's ability to litigate. Rule 25(c) says the opposite. It addresses the precise procedural event on which the Motion relies: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Continuation in the original party's name is the default. Substitution or joinder is discretionary and exists to facilitate the conduct of the litigation; it is not a precondition of Article III jurisdiction. *See Prop-Jets, Inc. v. Chandler,* 575 F.2d 1322, 1324 (10th Cir. 1978).

Rule 25(c) matters especially here because the transfer occurred after the action began and after Defendants removed it. The Rule permits Gauge to continue litigating unless and until the Court orders otherwise, and it leaves Gauge unquestionably able to prosecute its own damages claim for injury to Gauge—an interest Gauge did not transfer to anyone. The Motion neither cites Rule 25(c) nor explains why it would not apply.

Utah law reflects the same principle in the closest analogous setting. In *Meagher v. Uintah Gas Co.,* 123 Utah 123, 255 P.2d 989 (1953), the plaintiff in a quiet-title action transferred his interest by quitclaim deed during the litigation, reserving a royalty interest. The Utah Supreme Court rejected the argument that the transfer displaced him, holding that "Meagher's transfer of

interest during pendency of the action does not deny him a continued role as plaintiff," because the governing provisions—including Utah's Rule 25(c)—allow prosecution "in the name of either grantor or grantee." *Id.* at 129–30. *Meagher* construes the Utah rule and is not controlling on a question of federal procedure, but it is closely analogous and persuasive: it involved a transfer of the very property interest at issue during a pending quiet-title suit, and it held that the original plaintiff could continue. Federal Rule 25(c) now supplies the rule of decision in this Court, and its language is materially the same.

### B. If participation by a successor is necessary, the Rules require joinder, substitution, or ratification—not dismissal.

A court may conclude that a successor should be joined or substituted to ensure complete relief or to bind the current holder of an interest. Rule 25(c) supplies that mechanism, and Rule 17(a)(3) supplies an additional safeguard: the Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Tenth Circuit has reversed a dismissal where the district court failed to afford that opportunity. *Esposito*, 368 F.3d at 1274–78.

Critically, real-party-in-interest principles are not jurisdictional. *Id.* at 1274 n.1. Defendants' Motion conflates the two. Even if the Court were to conclude that the present titleholder should participate in the declaratory or quiet-title portions of this case, the Rules require a reasonable opportunity to address party alignment—not dismissal of the entire action, and certainly not dismissal of Gauge's independent damages claim. Defendants have not moved under Rule 19, have not shown that any party cannot be joined, and have not sought Rule 25(c)

16

substitution or joinder. The Court should decline to convert their narrow jurisdictional motion into an unbriefed adjudication of indispensability.

## IV. DEFENDANTS' ATTACK ON GAUGE'S TITLE IS A MERITS ARGUMENT, NOT A JURISDICTIONAL ONE.

Stripped of its jurisdictional label, the Motion argues that Gauge cannot succeed: that because Gauge conveyed the Vehicle, it holds no "legally cognizable interest" and cannot establish the ownership its claims require. (Mot. ¶¶ 14–15.) That contention addresses the viability of Gauge's claims on the merits and provides no basis for jurisdictional dismissal. "[T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction," and whether the complaint states a claim "must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell*, 327 U.S. at 682. In the federal-question setting, *Bell* recognized a narrow exception for claims that are wholly insubstantial, frivolous, or asserted solely to manufacture federal jurisdiction. Defendants do not invoke that exception here.

The Supreme Court has repeatedly rejected precisely this maneuver. In *Powell*, the argument that the plaintiff could not recover the salary he sought "confuse[d] mootness with whether [he] has established a right to recover . . . a question which it is inappropriate to treat at this stage of the litigation." 395 U.S. at 500. In *Mission Product*, the Court explained that whether the defendant "did anything to [the claimant] amounting to a legal wrong is a prototypical merits question," not a jurisdictional one. 587 U.S. at 378. Defendants' own quiet-title authority proceeded the same way: it resolved the effect of divested title on the plaintiff's claims under Rule 12(b)(6), on the merits, after finding jurisdiction. *Wessler v. Colonial Nat'l Mortg.*, No. 11-cv-

17

02683-RBJ-KMT, 2012 WL 5949730 (D. Colo. Aug. 21, 2012) (magistrate judge's recommendation), *adopted*, 2012 WL 5949581 (D. Colo. Nov. 28, 2012).

To the extent Defendants frame their Motion as a factual attack under Rule 12(b)(1), the result is the same. The "jurisdictional" fact on which the Motion rests—whether and when the sale extinguished any legally cognizable interest of Gauge—is inseparable from the merits of the parties' competing title claims. Whose interest was valid, whether Defendants' claimed interest was enforceable against Gauge, what legal effect Gauge's conveyance carried, and what Gauge conveyed are merits questions. So too is the antecedent question the Motion simply assumes: that Gauge's interest passed on the invoice date of September 16, 2025, notwithstanding that Gauge was not paid until on or about October 7, 2025. (Hirahara Decl. ¶¶ 13–14.) Where the jurisdictional question is intertwined with the merits, the Court must apply the Rule 12(b)(6) or Rule 56 standard, not resolve disputed questions against the plaintiff on a 12(b)(1) record. *See Holt*, 46 F.3d at 1003; *Wheeler, 825 F.2d at 259*. The Motion fails under either converted standard—well-pleaded allegations taken as true (Rule 12(b)(6)), or factual disputes resolved in Gauge's favor (Rule 56).

A Rule 12(b)(1) dismissal is without prejudice and does not reach the merits, *Wheeler, 825 F.2d at 259 n.5*, yet Defendants ask the Court to adjudicate, under a jurisdictional label, the very question of title this case exists to decide. However Defendants label it, the Motion asks whether Gauge can prevail on its claims, not whether this Court has power to decide them. That is a question the merits answer after jurisdiction attaches, not one Rule 12(b)(1) answers before. *See Bell, 327 U.S. at 682*.

18

## V. THE CLAIMS CONTINUE TO PRESENT A LIVE CONTROVERSY.

Gauge seeks retrospective declarations concerning the parties' legal rights in a completed transaction: that Gauge acquired title superior to Defendants' asserted interest, that Defendants' interest was unenforceable against Gauge, and that Gauge's subsequent sale violated no enforceable right of Defendants. (Compl. ¶¶ 13–16; id. Prayer ¶ 1.) Those issues remain concretely disputed between these parties. They bear directly on Gauge's live claim for damages arising from Defendants' alleged interference and on Gauge's continuing contractual exposure arising from the title it conveyed. A declaration resolving those issues would therefore alter the parties' legal relations and afford effectual relief. See Chafin v. Chafin, 568 U.S. 165, 172 (2013); *Powell v. McCormack*, 395 U.S. 486, 496–97 (1969).

Gauge's indemnity obligations make that continuing stake particularly concrete. Gauge alleges that it could complete the Vehicle's sale only by providing indemnity protection concerning the disputed title, and that it remains obligated to defend and indemnify its Florida buyer against Defendants' claims. (Hirahara Decl. ¶¶ 10, 12.) Thus, Defendants' continued assertion of their claimed ownership interest against Gauge, its buyer, or others in the chain of title may impose defense costs or indemnity liability on Gauge. A declaration that Gauge held valid title superior to Defendants' asserted interest could materially reduce or eliminate that exposure; a contrary determination could confirm or enlarge it. Gauge therefore seeks more than an advisory ruling about property it formerly possessed—it seeks resolution of a presently disputed legal issue that continues to affect its own financial and contractual obligations.

Defendants' own formulation confirms the existence of effectual relief. The Motion asks whether the requested declaration would have "some effect in the real world" and whether it

19

would settle a dispute affecting Defendants' behavior toward Gauge. (Mot. ¶ 13 (quotations omitted).) It would. Defendants dismissed their counterclaims in this action without prejudice (ECF No. 48), continue to assert the same claimed ownership interest against Gauge in the pending Florida action, and seek relief arising from the same Vehicle and title dispute. A declaration here would determine the parties' rights concerning Gauge's acquisition and transfer of the Vehicle, bear directly on Gauge's damages and indemnity exposure, and materially affect the parties' positions in their ongoing dispute. The requested relief therefore does not rest solely on a judgment's possible effect in some hypothetical future proceeding.

Schell v. OXY USA Inc., 814 F.3d 1107 (10th Cir. 2016), is materially different. By the time of the appeal, the plaintiffs had eliminated their damages demand, the district court had denied injunctive relief, and declaratory relief was the material surviving merits remedy. After the defendant conveyed all interests in the relevant leases, the Tenth Circuit concluded that a declaration concerning those leases could no longer affect that defendant's conduct. Id. at 1113. The only asserted continuing consequence was the judgment's possible preclusive effect in hypothetical, unfiled litigation, which the court deemed too speculative. Id. at 1115.

Here, by contrast, Defendants retain and actively assert the disputed interest against Gauge in pending litigation. Gauge also retains a live damages claim and continuing indemnity exposure arising from the title it conveyed. The requested declarations concern completed conduct and presently disputed legal obligations; their practical effect does not depend on a speculative future lawsuit. Unlike the circumstances in Schell, a declaration could alter the

20

parties' present legal relations and Gauge's existing economic exposure. Nothing about Gauge's transfer of the Vehicle made it impossible for such relief to matter. *See Chafin,* 568 U.S. at 172.

Gauge need not rely on an injunction against the Florida proceeding to defeat the Motion. Mootness must be assessed separately for Gauge's damages claim and each requested form of equitable relief. Gauge's damages claim remains live, and the retrospective declarations sought here independently concern a concrete dispute affecting Gauge's present legal and financial interests. Any request for an injunction affecting the pending Florida proceeding would separately have to satisfy 28 U.S.C. § 2283 and the ordinary requirements for equitable relief.

## VI. THE POST-FILING TRANSFER DOES NOT REQUIRE DISMISSAL OF THE QUIET-TITLE CLAIM.

The quiet-title claim illustrates the fundamental defect in the Motion's standing theory. When Gauge commenced this action—and, critically for Article III, when Defendants removed it—Gauge possessed the Vehicle, asserted ownership under a certificate-based chain of title, and faced Defendants' adverse demand for possession. (Compl. ¶¶ 1, 6–10; Hirahara Decl. ¶¶ 4–7.) Gauge therefore had a concrete stake in adjudicating the parties' competing claims when the action entered federal court. Defendants' authorities are materially different. The plaintiff in Commonwealth pleaded no cognizable basis for its own claim of title, and the plaintiffs in Gallegos derived their deeds from grantors whose interest had been extinguished years earlier. Neither case concerns a plaintiff that possessed and claimed title to the property when suit began but transferred that interest while the litigation was pending.

The subsequent transfer did not eliminate Gauge's concrete stake in the title dispute. Gauge could complete the sale only by providing its buyer a written indemnity against claims

relating to the Vehicle's title, and Gauge remains subject to that obligation. (Hirahara Decl. ¶ 12.) Thus, if Defendants pursue the buyer, the current owner, or another party in the chain of title based on the same alleged ownership interest, Gauge faces continuing contractual exposure arising directly from the validity of the title it conveyed. A determination that Gauge's title was valid and superior to Defendants' asserted interest could materially reduce or eliminate that exposure; the opposite determination could trigger or enlarge it. That is not an abstract interest in the treatment of property Gauge formerly owned. It is a present economic stake in the precise title controversy presented here. *See Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1332 (10th Cir. 2022) (recognizing that contingent liability may constitute an Article III injury where declaratory relief would determine the validity of a disputed transfer and affect the plaintiff's legal obligations).

Rule 25(c) separately defeats the Motion's premise that Gauge's transfer automatically terminated the pending claim. When an interest is transferred during litigation, "the action may be continued by or against the original party" unless the Court orders the transferee substituted or joined. Fed. R. Civ. P. 25(c). The Rule therefore permits this action to continue in Gauge's name while leaving the Court discretion to join or substitute a successor if necessary to afford complete title relief or bind the present owner. *See Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978). *Meagher* is analogous, although not identical: there, the plaintiff conveyed the fee during a quiet-title action while reserving a royalty interest, and the Utah

Supreme Court held that the transfer did not deny him a continued role as plaintiff. *Meagher v. Uintah Gas Co.*, 123 Utah 123, 129, 255 P.2d 989 (1953).

The Court may ultimately determine that the present owner must participate before the Court can enter a decree conclusively binding that owner, or that any title relief should be limited to the validity and priority of the title Gauge held and conveyed. Those are questions concerning joinder, substitution, and the permissible scope of relief—not grounds for dismissing the entire action under Rule 12(b)(1). At minimum, Defendants have not shown that the post-filing transfer made it impossible for the Court to grant Gauge effectual relief regarding the title it conveyed and the resulting indemnity exposure. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Nor may Defendants obtain an adjudication of the underlying title merits through an ordinary Rule 12(b)(1) factual attack. To the extent the jurisdictional inquiry requires the Court to determine whether Gauge acquired valid title, what interest Gauge conveyed, or whether Defendants' asserted interest remained enforceable against Gauge or its successors, those questions overlap with the substantive claims and must be addressed under the Rule 12(b)(6) or Rule 56 framework. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). The sale may affect the eventual form or scope of title relief, but it does not establish that the Court lacks jurisdiction over Gauge's remaining controversy with Defendants.

## VII. DEFENDANTS' COLLATERAL ACCUSATIONS ABOUT DISCLOSURE ARE NOT A JURISDICTIONAL ARGUMENT.

Paragraphs 3 through 10 of the Motion accuse Gauge and its counsel of inaccurate or dishonest statements about the sale. Gauge disputes those characterizations, and the record does not support them: the invoice date Defendants treat as dispositive preceded the date Gauge was

23

paid by three weeks, and Gauge's counsel told the Court on October 3, 2025 that Gauge had taken steps to sell the Vehicle and had offered indemnities to buyers. (Hirahara Decl. ¶¶ 13–14; Tr. at 6:12–18; ECF No. 31.)

The Court need not resolve any of it. Subject-matter jurisdiction is not a discretionary reward for litigation conduct, and it cannot be forfeited as a sanction. The date or wording of a disclosure does not change when this action was filed or removed, does not eliminate the damages Gauge pleaded, and does not make it impossible for the Court to award relief. If Defendants believe the record supports sanctions or some other remedy, the Rules require a properly noticed request identifying the standard and the relief sought. The present Motion asks only for dismissal under Rule 12(b)(1), and it should be decided on Article III principles.

## VIII. IF THE COURT WERE TO FIND JURISDICTION LACKING, § 1447(C) WOULD REQUIRE REMAND, NOT DISMISSAL.

Gauge does not concede any jurisdictional defect. But the Motion asks for the wrong relief in any event. Defendants removed this action from the Third Judicial District Court. When a district court determines that a removed case is outside its subject-matter jurisdiction, 28 U.S.C. § 1447(c) provides that "the case shall be remanded." That command is mandatory, and it leaves a district court "no discretion to dismiss rather than remand an action." *Int'l Primate Prot. League, 500 U.S. at 89*. So if Defendants were right that Article III no longer supports this case, the consequence would be a remand of Gauge's claims to the state court where Gauge filed them—not the dismissal Defendants request.

## CONCLUSION

Gauge had a concrete Article III stake when Defendants removed this action, and the subsequent transfer of the Vehicle did not eliminate Gauge's plausible claim for compensatory damages

24

arising from completed conduct. Rule 25(c) forecloses automatic abatement and permits the action to continue in Gauge's name unless the Court orders substitution or joinder. To the extent Defendants' remaining arguments require adjudication of the validity or legal effect of the competing title interests, those issues concern the merits and cannot be resolved through an ordinary Rule 12(b)(1) factual attack. Accordingly, Gauge respectfully requests that the Court deny Defendants' Motion

DATED this 28th day of July, 2026.

**KNH LLP**

*/s/ Chad Pehrson*
Chad Pehrson
Nathan Gardner
*Attorneys for Plaintiff Gauge Automotive, Inc.*